# UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHERN DIVISION

**In the Matter of:**

**BO MATTHEWS CENTER OF EXCELLENCE**

**Case No. 21-81371-CRJ-7**
**Chapter 7**

## MOTION TO DISMISS

COMES NOW the Bo Matthews Center of Excellence, pursuant to Rule 12(b)(6) of the *Federal Rules of Civil Procedure*, Rule 1011(b) of the *Federal Rules of Bankruptcy Procedure*, and 11 U.S.C. § 707, and respectfully moves to dismiss the involuntary bankruptcy petition filed by Paulette Edwards and her business, Just 4 the Kids Daycare, LLC ("Petitioners').

## INTRODUCTION

This involuntary bankruptcy is merely the latest in a series of legal filings by Petitioners against their former landlord, Bo Matthews, and his Alabama non-profit corporation, the Bo Matthews Center of Excellence ("BMCE"). As explained below, the involuntary bankruptcy is due to be dismissed because it was filed for an improper purpose, and Petitioners are not eligible creditors with an undisputed claim against BMCE.[1]

---

[1] Additionally, BMCE has not been served. The filing of this motion dismiss is not an acceptance of service or a waiver thereof. *See* Fed. R. Civ. P. 12(b)(5).

1

Paulette Edwards and her business, Just 4 the Kids Daycare, LLC, are the former tenants of a property owned by BMCE. On October 14, 2020, Mr. Matthews notified Petitioners that their lease was being terminated for non-payment of rent.[2] However, Petitioners refused to surrender possession of the property back to Mr. Matthews. On October 26, 2020, Mr. Matthews filed an unlawful detainer action against Petitioners in Madison County District Court, Case No. 47-DV-2020-901758.[3] A copy of the unlawful detainer complaint is attached as Exhibit 1.

On November 30, 2020, following a trial of the unlawful detainer claim at which Petitioners were represented by counsel, the District Court awarded possession of the property to Mr. Matthews. A copy of the Final Order of Possession is attached as Exhibit 2.

Over the past eight months since the District Court awarded possession to Mr. Matthews, Petitioners have continued in their refusal to surrender possession of the

---

[2] Regardless of any previous non-payment of rent issues, the lease signed by Petitioners had a term that ended on July 31, 2021. At this time, there is no question is terminated.

[3] Although the property is owned by BMCE, the unlawful detainer action was filed in the name of Mr. Matthews because Mr. Matthews is the person who signed the lease with Ms. Edwards, and because he is named in the lease as the "Lessor." This is permissible under Alabama law, which does not require an unlawful detainer action to be brought by the holder of title to the property. *See* Ala. Code § 6-6-310(2) (defining unlawful detainer as failing to surrender possession to "anyone lawfully entitled or his or her agent); and *Jackson v. Davis*, 153 So. 820, 827 (Ala. Civ. App. 2014) (explaining the requirement of title as one of the differences between ejectment and unlawful detainer actions).

2

property and have instead launched an endless series of meritless legal attacks that have included (1) <u>two</u> cases in Madison County Circuit Court, (2) <u>two</u> appeals to the Supreme Court of Alabama, (3) a RICO lawsuit filed in federal district court, and (4) now, this involuntary bankruptcy.

On December 3, 2020, Petitioners appealed the unlawful detainer case to the Circuit Court of Madison County, Case No. 47-CV-2020-000096. However, Petitioners subsequently failed to pay rent into Court in a timely manner as was required to maintain possession of the property during such an appeal. *See* Ala. Code § 6-6-351. When the Circuit Court issued a writ of possession in favor of Mr. Matthews (as was required by the statute), Petitioners attempted to file an appeal to the Supreme Court of Alabama, Appeal No. 1200294. Their appeal was improper, however, and was dismissed on a motion filed by Mr. Matthews. A copy of the Supreme Court's dismissal order is attached as Exhibit 3.

After Petitioners' appeal was dismissed by the Supreme Court, the unlawful detainer case was returned to the Madison County Circuit Court. Upon returning to Circuit Court, Petitioners filed counterclaims against Mr. Matthews claiming that they are owed money for repairs made to the property during their tenancy.[4] A copy

---

[4] Petitioners claim that they are owned money for repairs even though their lease acknowledged receipt of the property in good repair, and even though that they agreed in the lease to be responsible for any repairs (subject to limited exceptions which do not apply to the work being claimed).

of Petitioners' Verified Amended Answer and Counterclaim is attached as Exhibit 4. On June 3, 2021, Mr. Matthews filed an answer denying Petitioners' counterclaims. A copy of the answer denying Petitioners' counterclaims in the unlawful detainer case is attached hereto as Exhibit 5.

<u>The disputed counterclaims that Petitioners filed against Mr. Matthews in the unlawful detainer case are the same claims that Petitioners now attempt assert as being undisputed in their involuntary bankruptcy against BMCE.</u> Those disputed claims have not been resolved and are still pending in Madison County Circuit Court.

Petitioners' unusual filings have not stopped at the unlawful detainer case. On March 5, 2021, Petitioners filed a RICO case against Mr. Matthews' daughter, Brandi Matthews Ellis, and her father-in-law, Ronnie Ellis, in the United States District Court for the Northern District of Alabama. *See Paulette Edwards and Just 4 Kids Daycare v. Ronnie Ellis, Suite Elements, LLC, and Brandi Matthews Ellis*, Case No. 5:21-cv-00349. A copy of the RICO complaint is attached as Exhibit 6. In the RICO case, Petitioners accuse members of the Matthews family of stealing COVID-19 rental aid funds that she claims she was due to receive from the federal government. A motion to dismiss has been filed and is pending in that case.

On June 30, 2021, the Court in the unlawful detainer case issued an order finding that, notwithstanding any monetary disputes between the parties, Petitioners'

4

lease was due to expire at the end of July. A copy of the order is attached hereto as Exhibit 7.

On July 7, 2021, faced with an imminent eviction from the property at the end of month, Petitioners tried to file a second lawsuit in Madison County Circuit Court, naming BMCE as the defendant. A copy of Petitioners' complaint against BMCE is attached hereto as Exhibit 8. In the second case, Petitioners sought to enjoin their eviction by the Circuit Court in the unlawful detainer case, and they also sought to assert the same claims for repairs against BMCE that they had asserted against Mr. Matthews in the unlawful detainer case. These again are the same disputed claims that Petitioners contend form the basis of their involuntary bankruptcy petition. BMCE disputed Petitioners' claims and filed a motion to dismiss them. A copy of BMCE's motion to dismiss is attached as Exhibit 9.

On July 17, 2021, Petitioners filed a petition for writ of mandamus with the Supreme Court of Alabama, Appeal No. 1200722, requesting that the Supreme Court order dismissal of the unlawful detainer case against them. The Supreme Court has not done so and has not issued any ruling on that petition.

Despite the Circuit Court's order that the lease would be expired by its terms at the end of July, Ms. Edwards again refused to surrender the property at the end of the month. So, on August 2, 2021, Mr. Matthews filed a motion for partial summary judgment, writ of possession, and disbursement of funds in the unlawful detainer

5

case (the first case, where Mr. Matthews is the plaintiff). A copy of the motion filed by Mr. Matthews is attached as Exhibit 10. The Court scheduled that motion to be heard on the morning of August 13, 2021. A copy of the hearing order is attached as Exhibit 11.

On August 11, 2021, the Court in the second case that Petitioners filed against BMCE granted BMCE's motion to dismiss, without prejudice. A copy of the dismissal order in the case against BMCE is attached as Exhibit 12.

On August 12, 2021, the day after the Court dismissed Petitioners' second lawsuit against BCME, and the day before the Court in the unlawful detainer case was scheduled to hold a summary judgment hearing on the issue of possession, Petitioners attempted to file this involuntary bankruptcy against BMCE. Petitioners then filed a Suggestion of Bankruptcy in the unlawful detainer case, asserting that their filing of the involuntary bankruptcy against BMCE meant that Mr. Matthews could not proceed with his claim for possession of the property.[5] A copy of the Suggestion of Bankruptcy filed by Petitioners is attached as Exhibit 13.

---

[5] Petitioners cited no authority and were incorrect as a matter of law as their assertion that this involuntary bankruptcy precludes Mr. Matthews from continuing to prosecute his claim for possession. *See* 11 U.S.C. § 303(f) ("until an order for relief in the case, any business of the debtor may continue to operate, and the debtor may continue to use, acquire, or dispose of property as if an involuntary case concerning the debtor had not been commenced."); *In re Mitchell*, 206 B.R. 204, 212 (Bankr. C.D. Cal. 1997) ("The Section 362 stay does not apply where, as here, the debtor is the plaintiff in a lawsuit."); and 11 U.S.C. § 362(b)(10) (providing an exception to

This involuntary bankruptcy case is merely the latest of Petitioners' filings aimed at trying to frustrate their eviction from the property owned by BMCE. As explained below, the petition should be dismissed because it was filed in bad faith, without and legal basis, and because Petitioners are not eligible creditors with an undisputed claim against BMCE.

## **ARGUMENT**

### I. **Petitioners Are Not Eligible Creditors With an Undisputed Claim Against BMCE.**

An involuntary bankruptcy is not a collections method for a single creditor. *See In re Murray,* 900 F.3d 53, 60 (2d Cir. 2018). "[I]nvoluntary bankruptcy petitions have serious consequences for the alleged debtor, such as loss of credit standing, inability to transfer assets and carry on business affairs, and public embarrassment." *Id.* "A creditor does not have a special need for bankruptcy relief if it can go to state court to collect a debt." *In re Nordbrock*, 772 F.2d 397, 400 (8th Cir. 1985).

"In part because of the unusual nature of involuntary petitions, Congress provided bankruptcy courts with a variety of tools with which to police their use." *In re Murray*, 900 F.3d at 60. "To begin, a petition must meet the statutory requirements for filing under Section 303." *Id.* "Even if a petition meets the

---

the automatic stay for actions to recover possession of nonresidential real property based upon expiration of lease prior to the commencement of the bankruptcy).

statutory requirements of Section 303, however, a bankruptcy court may dismiss it for cause under Section 707(a) after notice and a hearing." *Id.* "Cause is a fact-specific inquiry as to which a variety of factors may be relevant, including the purpose for which the petition was filed and whether state proceedings adequately protect the parties' interests." *Id.* "Inappropriate use of the Bankruptcy Code may constitute cause to dismiss, and courts that consider bad faith to be cause to dismiss often classify such inappropriate use as evidence of bad faith." *Id.*

The requirements to commence an involuntary bankruptcy case are governed by 11 U.S.C. § 303(b):

An involuntary case against a person is commenced by the filing with the bankruptcy court of a petition under chapter 7 or 11 of this title—

(1) by three or more entities, each of which is either a holder of a claim against such person that is <u>not contingent as to liability or the subject of a bona fide dispute as to liability or amount</u>, or an indenture trustee representing such a holder, if such noncontingent, undisputed claims aggregate at least $16,750 more than the value of any lien on property of the debtor securing such claims held by the holders of such claims;

(2) if there are fewer than 12 such holders, excluding any employee or insider of such person and any transferee of a transfer that is voidable under section 544, 545, 547, 548, 549, or 724(a) of this title, by one or more of such holders that hold in the aggregate at least at least $16,750 of such claims; ….

In general, the filing of an involuntary bankruptcy requires at least three creditors who hold claims that are "not contingent as to liability or the subject of a

8

bona fide dispute as to liability or amount ….” 11 U.S.C. § 303(b)(1).  When there are fewer than 12 creditors, 11 U.S.C § 303(b)(2) permits the case to be commenced by a single creditor; however, the single creditor’s claims must still “be not contingent as to liability or the subject of a bona fide dispute as to liability or amount ….”  *See In re Manhattan Indus., Inc.*, 224 B.R. 195, 199 (Bankr. M.D. Fla. 1997) (granting motion to dismiss involuntary bankruptcy filed by a single creditor).

“In determining whether a creditor’s claims [are] subject to a ‘bona fide dispute’ within the meaning of § 303(b)(1) and (2), courts have adopted an objective standard.”  *In re Manhattan Indus., Inc.*, 224 B.R. at 199.  “The outcome of a dispute need not be resolved, only its presence or absence and the Court need engage only in a limited analysis of the claims at issue.”  *Id.*  Stated differently, “[t]he court need not determine the probable outcome of the dispute, but merely whether one exists.”  *In re Gen. Aeronautics Corp.*, 594 B.R. 442, 466 (Bankr. D. Utah 2018).

In the present case, Petitioners do not hold any claim against BMCE that is “not contingent as to liability or the subject of a bona fide dispute as to liability or amount ….”  11 U.S.C. § 303(b).  As outlined above, all of Petitioners’ claims against BMCE are contingent and disputed in their entirety as to both liability and amount.

Petitioners clearly knew that their claims against BMCE were disputed when they filed this involuntary bankruptcy.  They knew this because they have been

parties to at least two cases in Madison County Circuit Court where Mr. Matthews and BMCE have disputed their claims. No judgments have been entered in favor of Petitioners in any of the pending cases. Rather, the courts that have heard Petitioners' claims have consistently rejected them. Petitioners admit in their petition that they "unsuccessfully [have] sought to obtain judicial liens" on the property. (Doc. 1-1, ₽ 10) (emphasis added). Indeed, the Circuit Court had entered an order dismissing Petitioners' claims against BMCE, without prejudice, the day before they filed this action. Despite knowing that their claims are entirely disputed, Petitioners nonetheless filed this involuntary proceeding alleging that their claims are not subject to any dispute.

Petitioners filed this involuntary proceeding as a tactical effort to adversely affect the unlawful detainer case that is pending in Madison County Circuit Court. This is the very definition of a bad faith filing that warrants dismissal for cause. In *In re Manhattan Industries, Inc.,* 224 B.R. 195, 201 (Bankr. M.D. Fla. 1997), the court was confronted with a similar situation where a creditor filed an involuntary bankruptcy in an attempt to prevent the debtor from being heard on claims against the creditor in a state court lawsuit. The court dismissed the involuntary petition, explaining as follows:

> Faced with a potential monetary judgment against it, MBC has tactically decided to take on the offensive by filing an involuntary against the Debtor.

10

Using the bankruptcy process as a means to promote MBC's individual interest is not consistent with the Bankruptcy Code as it will allow MBC to use bankruptcy laws as a sword rather than as a shield. *Shell Oil Co. v. Waldron (In re Waldron)*, 785 F.2d 936, 940 (11th Cir.1986). The fundamental requirement that bankruptcy petitions be filed in good faith will be undermined by allowing MBC to proceed with its petition. Unscrupulous creditors should not be allowed to change the outcome of an existing lawsuit by filing for refuge in the bankruptcy courts. The parties have chosen the New Jersey proceedings to litigate their dispute. MBC has answered the Debtor's complaint and is extensively engaged in the course of discovery into the merits of the Debtor's claims.

An inquiry is appropriate to determine the legitimate purpose of the parties who have sought to invoke the jurisdiction of bankruptcy and it is within the Court's discretion to take appropriate steps to prevent the abuse of the bankruptcy process pursuant to 11 U.S.C. § 105(a). There is no legitimate purpose for this involuntary petition. MBC's motivation in filing for involuntary relief is inconsistent with the policy behind involuntary bankruptcies. MBC thus lacked good faith due to its improper purpose in filing its involuntary petition even if it had standing to file under § 303(b)(2).

The Debtor's Motion to Dismiss the involuntary petition is due to be granted on two basis. The judgment claim obtained by MBC is subject to a "bona fide dispute" and MBC filed for involuntary relief with the intent to frustrate the Debtor's New Jersey proceedings, thereby lacking good faith. Accordingly, the petition filed by MBC on August 12, 1997, seeking the Court to enter an order for involuntary relief pursuant to § 303 is due to be dismissed.

*Id.* at 201.

As in *Manhattan Industries*, Petitioners filed this involuntary bankruptcy, in bad faith, despite the fact that they are not eligible creditors, in an attempt to gain a tactical advantage in the state court litigation.  As in that case, this involuntary bankruptcy should be dismissed.

11

Additionally, when a bankruptcy court dismisses an involuntary petition in favor of the debtor, the Court is authorized to award costs and reasonable attorney's fees against the petitioner. 11 U.S.C. § 303(i)(1). If the Court finds that the petition was filed in bad faith, the court may also award compensatory and punitive damages to the debtor. 11 U.S.C § 303(i)(2). Because this action was filed for an improper purpose and without a valid legal basis, BMCE respectfully requests an award of costs and attorneys' fees against Petitioners.

## CONCLUSION

BMCE respectfully requests that this Court dismiss the involuntary bankruptcy petition. BMCE further requests that the Court award costs and reasonable attorney's fees against Petitioners pursuant 11 U.S.C. § 303(i).

Respectfully submitted this 18th day of August, 2021.

By: /s/ S. Dagnal Rowe, Sr.
  S. Dagnal Rowe, Sr.
  ASB-4298-E66S

By: /s/ Richard J.R. Raleigh, Jr.
  Richard J.R. Raleigh, Jr.
  ASB-5704-H67R

By: /s/ Christopher L. Lockwood
  Christopher L. Lockwood
  ASB-4426-R71L

12

*Counsel for The Bo Matthews Center of Excellence*
WILMER & LEE, P.A.
100 Washington Street, Suite 100
Huntsville, Alabama 35801
(256) 533-0202 – Telephone
(256) 533-0302 – Facsimile
drowe@wilmerlee.com
rraleigh@wilmerlee.com
clockwood@wilmerlee.com

## **CERTIFICATE OF SERVICE**

I hereby certify that on August 18, 2021, a copy of the foregoing was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. Parties may access this filing through the Court's electronic filing system.

/s/ Richard J.R. Raleigh, Jr.
OF COUNSEL

13

**UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF ALABAMA**
**NORTHERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | |
| **BO MATTHEWS CENTER OF** | ) | **Case No. 21-81371-CRJ-7** |
| **EXCELLENCE** | ) | |
| | ) | **Chapter 7** |
| | ) | |
| | ) | |

# <u>EXHIBIT 1</u>

<table>
<tr><td>

State of Alabama

Unified Judicial System

Form C-59 (front)  Rev. 03/14

</td><td>

**STATEMENT OF CLAIM**

**EVICTION/UNLAWFUL DETAINER**

Sections 35-9A-101, et seq., and 6-6-310, et seq., Ala. Code 1975

</td><td>

ELECTRONICALLY FILED
10/26/2020 3:59 PM
47-DV-2020-901758.00
CIRCUIT COURT OF
MADISON COUNTY, ALABAMA
DEBRA KIZER, CLERK

</td></tr>
</table>

## IN THE DISTRICT COURT OF MADISON COUNTY, ALABAMA

## WILLIAM P. MATTHEWS v. JUST 4 THE KIDS DAYCARE ET AL

PLAINTIFF(S)

WILLIAM P. MATTHEWS
P.O.BOX 17167
HUNTSVILLE, AL 35810

DEFENDANT(S)

JUST 4 THE KIDS DAYCARE
4000 PULASKI PIKE NW
HUNTSVILLE, AL 35810

PAULETTE EDWARDS
4000 PULASKI PIKE NW
HUNTSVILLE, AL 35810

PLAINTIFF'S ATTORNEY
SARAH LEOPOLD TAGGART
Post Office Box 18862
HUNTSVILLE, AL 35804

## COMPLAINT

1. Plaintiff(s) demands the right to possession from the defendant(s) of the following described residential, commercial or other real property located at:
   4000 PULASKI PIKE NW, HUNTSVILLE, AL 35810

2. Defendant(s) no longer has the right to possession because:
   Defendant has failed to remedy breach of a Commercial Lease Agreement by failing to pay rent. Defendants have also failed to vacate after being served a 10 Day Notice of Termination of Lease Agreement. Amount due is due as of 10/14/20. Plaintiff also claims future rent and late charges through the date Plaintiff obtains possession of the above-described property, as well as any termination penalties provided for by the Lease Agreement and damages, if any, to be determined by the court. "Sarah Taggart, P.C." is acting as a debt collector and attempting to collect a debt. Any information obtained will be used for that purpose.

3. Defendant(s) right of possession has been lawfully terminated by written notice.

4. Plaintiff also claims the sum of $ _20000.00_ plus court costs from the Defendant(s) consisting of: unpaid rent and late charges, plus attorney's fees (if applicable) and other charges.

5. Plaintiff(s) also claims future rent and late charges, plus attorney's fees (if applicable) and other charges accruing through the date Plaintiff(s) obtains possession of the above described property.

| | |
|---|---|
| DEBRA KIZER | /s/ SARAH LEOPOLD TAGGART |
| Clerk | Plaintiff or Attorney Signature |
| Address: MADISON COUNTY, ALABAMA | Phone Number: (256) 562-1999 |
| 100 NORTHSIDE SQUARE | Attorney Code: TAG002 |
| HUNTSVILLE, AL 35801 | |
| Phone Number: 256-532-3622 | |

## NOTICE TO DEFENDANT(S) - READ CAREFULLY

This eviction or unlawful detainer complaint must be answered by you within seven (7) days after these papers were either served or posted at the leased premises as provided by law. Your answer must be received by the Court Clerk at the above address within the above seven (7) days. A copy of the answer must be sent to the Plaintiff(s) or Plaintiff(s)' Attorney at the above address. If you file an answer, a notice of trial will be mailed to you; otherwise, a judgment may be entered against you.

**DOCUMENT 1**



ELECTRONICALLY FILED
10/26/2020 3:59 PM
47-DV-2020-901758.00
CIRCUIT COURT OF
MADISON COUNTY, ALABAMA
DEBRA KIZER, CLERK



| Landlord Name | Mr. and Mrs. William Matthews |
| Property Address | 4000 Pulaski Pike NE, Huntsville, AL 35810 |
| Tenant Name | Just 4 the Kids Daycare and Paulette Edwards |

## 10-DAY DEMAND LETTER FOR POSSESSION (COMMERCIAL LEASE)

Date: October 13th, 2020

YOU ARE HEREBY NOTIFIED that in consequence of your default in

Non Payment of rent in the amount of $ 26, 700.°°

In certified funds only

of the premises now occupied by you, being

4000 Pulaski Pike NE, Huntsville, AL 35810 , the landlord has elected to terminate your lease, and you are hereby notified to quit and deliver up possession of the same to the landlord within 10 days of this date.

Dated this 14th day of Oct, 2020 *Barbara Matthews*

*William P. Matth*
Property Manager/ Landlord

I, the undersigned, hereby certify that I have served a copy of this 10-Day Demand Letter for Possession to the tenant named herein by (check all that apply):
X affixing it to the dwelling unit AND sending it regular U.S. mail
___ hand delivery to a person residing in the leased premises

this the 14th day of October, 2020

*[Signature]*
Affiant

Updated August 26, 2011                    Copyright 2011 by Sarah Taggart, P.C.

UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION

In re:                          )
BO MATTHEWS CENTER OF           )       Case No. 21-81371-CRJ-7
EXCELLENCE                      )
                                )       Chapter 7
                                )
                                )

# EXHIBIT 2



ELECTRONICALLY FILED
11/30/2020 11:36 AM
47-DV-2020-901758.00
CIRCUIT COURT OF
MADISON COUNTY, ALABAMA
DEBRA KIZER, CLERK

## IN THE DISTRICT COURT OF MADISON COUNTY, ALABAMA

| | |
|---|---|
| MATTHEWS WILLIAM P., | ) |
| Plaintiff, | ) |
| | ) |
| V. | ) Case No.:     DV-2020-901758.00 |
| | ) |
| JUST 4 THE KIDS DAYCARE, | ) |
| EDWARDS PAULETTE, | ) |
| Defendants. | ) |

### FINAL ORDER OF POSSESSION

This case came before the Court on November 30, 2020 on the possession count of the petition for unlawful detainer. All parties were present and represented by counsel. The Plaintiff was represented by Sarah Taggart, Esquire. The Defendants were represented by Katrina Brown, Esquire. Based upon careful consideration of the sworn testimony and the evidence presented, the Court finds in favor of the Plaintiff, William P. Matthews, and against the Defendants, Just for the Kids Daycare and Paulette Edwards, on the possession count of the unlawful detainer. It is therefore,

**ORDERED, ADJUDGED** and **DECREED** that the Plaintiff shall have and recover possession of these premises sued for and described in the Complaint, to wit:

4000 Pulaski Pike, Huntsville, AL  35810

All other issues or claims not addressed herein pertaining to the claim of possession are **DENIED.**

For the purposes of establishing an appeal bond, the Court sets the past due rent at $10,000.00. This amount is not dispositive of the issue of past due rent. The dollar amount of the past due rent is contested, and is set for further testimony at a later time. If the case is appealed on the issue of possession, the past due rent for the purposes of appeal, and for no other

purpose is set at $10,000.00. The monthly rental amount is determined to be $3,800.00 per month, due on the first day of each month.

Pursuant to Rule 54(b) and in order to make this a final order, the Court specifically finds that there is no just reason for delay and specifically directs the immediate entry of judgment as to the Defendant for the property made the basis of this action.

The monetary issues are continued to March 1, 2021 at 1:30 p.m. in Courtroom #306, Madison County Courthouse, 100 North Side Square, Huntsville, AL  35801.

**DONE this 30th day of November, 2020.**

**/s/ LINDA F. COATS**
**DISTRICT JUDGE**

UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION

In re:                                )
BO MATTHEWS CENTER OF                  )      Case No. 21-81371-CRJ-7
EXCELLENCE                             )
                                       )      Chapter 7
                                       )
                                       )

# EXHIBIT 3



# IN THE SUPREME COURT OF ALABAMA

## May 5, 2021

1200294

Just 4 The Kids Daycare and Paulette Edwards v. William P. Matthews (Appeal from Madison Circuit Court: CV-20-96).

## **ORDER**

The "Appellee's Motion to Dismiss Appeal" filed by William P. Matthews on April 12, 2021, having been submitted to this Court,

IT IS ORDERED that the Motion is GRANTED and the above-styled appeal is DISMISSED as being taken from a non-final judgment.

IT IS FURTHER ORDERED that this Court's Order dated February 8, 2021, staying the Writ of Possession is hereby VACATED.

IT IS FURTHER ORDERED that the Motion to Strike filed by Appellants Just 4 The Kids Daycare and Paulette Edwards on April 20, 2021, is DISMISSED as MOOT.

**Parker, C.J., and Bolin, Shaw, Wise, Bryan, Sellers, Mendheim, Stewart, and Mitchell, JJ., concur.**

**Witness my hand this 5th day of May, 2021.**

**Clerk of Court,
Supreme Court of Alabama**

<div style="border:1px solid red; color:red; text-align:center;">

**FILED
May 5, 2021
3:01 PM**

**Clerk
Supreme Court of Alabama**

</div>



# IN THE SUPREME COURT OF ALABAMA

## May 5, 2021

cc:
Hon. Claude E. Hundley III
Madison County Circuit Clerk's Office
Mari Morrison
Christopher Lockwood
Richard J.R. Raleigh, Jr.

In re:                                        )
BO MATTHEWS CENTER OF          )          Case No. 21-81371-CRJ-7
EXCELLENCE                               )
                                              )          Chapter 7
                                              )
                                              )

# EXHIBIT 4



AlaFile E-Notice

47-CV-2020-000096.00

To: LOCKWOOD CHRISTOPHER LEA
clockwood@wilmerlee.com

# NOTICE OF ELECTRONIC FILING

IN THE CIRCUIT COURT OF MADISON COUNTY, ALABAMA

WILLIAM P MATTHEWS V JUST 4 THE KIDS DAYCARE ET AL
47-CV-2020-000096.00

The following answer was FILED on 5/15/2021 7:11:02 PM

Notice Date:     5/15/2021 7:11:02 PM

DEBRA KIZER
CIRCUIT COURT CLERK
MADISON COUNTY, ALABAMA
MADISON COUNTY, ALABAMA
100 NORTHSIDE SQUARE
HUNTSVILLE, AL, 35801

256-532-3390

ELECTRONICALLY FILED
5/15/2021 7:11 PM
47-CV-2020-000096.00
CIRCUIT COURT OF
MADISON COUNTY, ALABAMA
DEBRA KIZER, CLERK

**IN THE CIRCUIT COURT FOR MADISON COUNTY**

| | |
|---|---|
| **MATTHEWS, WILLIAM P.,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | )    **CASE NO.**    **CV2020-000096.00** |
| | ) |
| **JUST 4 THE KIDS DAYCARE,** | ) |
| **EDWARDS, PAULETTE,** | ) |
| | ) |
| **Defendants.** | ) |

<u>**VERIFIED AMENDED ANSWER AND COUNTERCLAIM**</u>

      COME NOW the Defendants, JUST 4 THE KIDS DAYCARE (hereinafter "Daycare") and PAULETTED EDWARDS (hereinafter "Edwards"), and in conjunction with their appeal from the Madison County District Court to the Circuit Court, submit their Amended Answer and Counterclaims as to the cause of action filed by WILLIAM P. MATTHEWS (hereinafter "Matthews"), and state as follows:

<div align="center">AMENDED ANSWER</div>

1.    On October 26, 2020, Matthews filed an Eviction/Unlawful Detainer action against the Daycare and Edwards alleging a breach of lease terms "by failing to pay rent" and failing to vacate after a 10 Day Notice of Termination of Lease Agreement. Matthews claimed a sum of $20,000.00 owed plus attorney costs and fees, in addition future rents, late fees, interest and other charges accruing while Daycare and Edwards remained in possession.

2.    Edwards, *pro se*, filed an Answer on behalf of Daycare and Edwards on October 30, 2020. Edwards *pro se* Answer included the following defenses:

    a.  **<u>Unaccounted payments</u>** made in May and June, 2018 in the amount of $9,700 which were paid before the lease was to begin August 1, 2018. Payments were made by Edwards direct to Matthews for monthly amount of $3,800 from September through December of 2018 without possession being given to Edwards and Daycare by Matthews. None of these payments were credited where the lease specified in number 14 a <u>Security Deposit</u> may be applied by the lessor to cure any default in the lease. (Ex. 1 and 2).

    b.  **<u>Occupancy and Unclean Hands</u>** - Occupancy of building could not be accomplished until January, 2019 due to building not being up to code requirement for the City of Huntsville and State of Alabama; and, Matthews occupied the building using the premises for his personal storage until October, 2018. An email from Barbara Matthews to Edwards and the Daycare, dated January 6, 2019 acknowledged the

occupancy issue and an agreement to extend the lease period an additional 6 months. (Ex. 3).

Additional occupancy issues occurred in March, 2020 when Barbara Matthews sought another business relationship with Edwards using the same building leased to Edwards and the Daycare for an Alabama K1 program. Two classrooms and another large room were taken over by Barbara Matthews without consent of Edwards and the Daycare. Edwards declined participation in this business relationship yet the large room was made a conference room and in the absence of Edwards from the premises, Barbara Matthews brought in State of Alabama officials to see the facility as part of her application for the Alabama K1 program. Edwards, upon learning of the visit, contacted these officials and made known her dissent from any participation. The furniture brought into the large room and made into a conference room has remained in the building as of this date. No monthly rental adjustment was made in the lease with Edwards and the Daycare for this "commandeering" of space without authorization.

c. **<u>Promissory estoppel</u>** based upon Matthews statements regarding compensation for repairs to the building to bring the building up to code prior to occupancy which were never credited after Edwards and the Daycare paid out over $122,000 using the authorized contractor and his agents as specified in the lease. As well as applies the payment of $1900 monthly rental adjustment beginning in March 2020 until relief from pandemic (Covid 19).

Edwards also relied upon Matthews agreement to apply for Covid 19 Business rental relief payments following a meeting with Matthews, Brandi Matthews (Matthews daughter and former official with City of Huntsville that assisted with the relief program) and Kevin Matthews (Matthews brother) in June, 2020 where an application would be made by Matthews for the monthly rents of $3,800 to be paid through a forgiveable loan for a defined period. It has been discovered such a loan was made in the name of a business (Suite Elements LLC, which Brandi Matthews is an agent) unauthorized by Edwards and Daycare and no payments were made from these loan proceeds to Matthews on behalf of Edwards and Daycare. An investigation is in progress by Federal law officials as to a fraud. (Ex. 4).

<p align="center">*AMENDED ADDITIONAL DEFENSES*</p>

d. **<u>Equitable Lien</u>** – Edwards paid over $122,000 in repairs as of the date of original Answer to the Unlawful Possession lawsuit by Matthews. That amount has since increased as a result of the heating and air conditioner failure, leaking roofing, inside

and outside plumbing issues and termites and termite damages to the building itself, and multiple other issues.

Terms of the lease were Matthews was to pay for all heating and air conditioner repairs over $500 – Matthews has failed to reimburse or pay for any of these. Matthews was to be responsible for repair to the roof and has failed to perform and at all times was informed of the damages and the specified contractor named by Matthews was used to perform the services or his agent. Matthews was responsible for the exterior of the building, including fences, grass, concrete, plumbing and other defaults for which Edwards and the Daycare had to maintain and/or bring up to code in order to be accomplish the purpose of the lease which was for a daycare. Matthew's contractor required payment for services performed before performing any new services. Edwards had to pay the contractor because she could not employ her own without Matthew's consent – which he would not grant when requested.

e. **Unjust Enrichment and Equitable Interest**; **Equitable Estoppel**– currently, over $200,000 has been spend by Edwards and the Daycare just for repairs associated with the premises. Edwards is due an equitable interest in the real property at issue and the Unlawful Detainer is due to be denied and dismissed with prejudice. Edwards was advised by Matthews prior to signing the lease on the building that the building was in move in condition and would not need any repairs. For Edwards and the Daycare to now be removed after having expended such extensive work and money would render an unjust enrichment to Matthews. This is in addition to the security deposit and monthly rent that has been paid since April, 2018. It would be inequitable to expect to leave the building in a significantly improved state substantially over when leased and to the benefit of the lessor – which is disputed as to the authority and rights of Matthews.

Matthews does not own the building and it is disputable as to whether Matthews has a legal right to lease the building and collect rents in his name. The building is owned by a former non-profit registered Alabama corporation, Bo Matthews Center of Excellence; that has since lost its non-profit status and no longer is registered. There are issues of property tax due to the State of Alabama, Madison County and the City of Huntsville; as well as existing tax liens of the Federal Government from as far back as 2012 for unpaid employer taxes. Under Alabama business law, the nonprofit corporation is nonexistent and due to be dissolved. Property (real and personal) is due to be sold and debts paid; or may be given to another nonprofit. But, no property may be taken or returned to an individual – and does not belong to Matthews.

Thus Matthews is not entitled to claim the property, nor is he entitled to claim any authority to dispose of the property in any way inconsistent with nonprofit corporate law – nor may he take assets and use for his personal profit.

## AMENDED COUNTERCLAIM

The District Court provides a form for filing an Answer to an Unlawful Detainer, PS-01 Answer to Landlord's Claim, which was completed *pro se* by Barbara Edwards and included her typed and signed Answer with a final paragraph stating she "wished" to file a Counterclaim for $122,000 plus interest and an exhibit itemizing expenses rendered toward the repair to the building. This was not heard in District Court, but the District Court issued an Order denying all requested relief.

Edwards herein incorporates the counterclaim for the $122,000 plus is amending to include additional counts as follows:

1. **Unjust Enrichment** - $122,000 plus interest and additional expenses paid for the repair to the building since October, 2020.

   The building leased to Edwards has been increased in value as a direct and proximate result of the repairs made by Edwards and paid for by Edwards that were required for certification of occupancy and licensing. Edwards was required under terms of lease to use Matthews named contractor. The building had a leaking roof that resulted in structural damage to the interior; and has been recommended to be replaced rather than repaired and which was under terms of the lease the responsibility of Matthews. The exterior plumbing and interior plumbing did not function when Edwards took possession and had to be put in working order. Interior doors where used for exterior ingress and egress and did not meet code. Windows were broken and hidden by curtains and stored objects. The heating and air conditioners were broken and in some instances parts were removed and were not functional. Exterior concrete was broken. Fences and gates were rusted to non-functional and had to be replaced. Walls were infested with termites. Hot water heater did not function. Electrical wires were improper as was the electrical main box. There was no telephone service nor internet. Appliances did not operate and had to be replaced in kitchen.

   Matthews was always made aware of problems and eventually refused to make the repairs. Edwards was stuck with a lease and monthly payments which she had to pay and could not get a occupancy license due to the condition of the building. Edwards was forced to make the repairs as a result of Matthews failure to provide

the necessary repairs; and after Matthews assurance the building was in move in condition and ready to open as a daycare.

WHEREFORE, Edwards respectfully requests this Honorable Court to cause Matthews and Barbara Matthews to respond to this Countercomplaint and for a trial by jury, with afterwards a judgment rendered in Edwards favor as to the unjust enrichment.  And, that Edwards be awarded compensatory damages to include the $122,000 requested in the original Answer filed in District Court and additional damages which have been incurred since October, 2020; and that Edwards be awarded reasonable attorney fees and costs in conjunction with this cause of action.

2.    **Fraud, Promissory Fraud, and Fraud in the Inducement** – Edwards alleges Matthews knew the building was in a state of disrepair when he leased the building to Edwards and the Daycare and he represented that the building was move in condition.  Matthews handpicked repairman, Willie W. Peavy, gave an Affidavit to Edwards and the Daycare, stating he was present when Matthews made the statement that the building was in move in condition; and that Matthews knew the roof leaked, the plumbing and toilets did not function properly, air conditioning and heating did not work,  termites were in the walls and damages were covered up at Matthews instruction, electrical failures, and multiple other issues which otherwise prevented the building from being licensed for occupancy; and certainly unable to provide daycare services.  (Ex. 5).

Matthews leased the building in his name and not that of Bo Matthews Center of Excellence – the legal owner.  Barbara Matthews, agent for Bo Matthews Center of Excellence and wife of Matthews, represented an adjustment of the monthly rent in email to Edwards.  And represented an extension of the term of the lease by six months in an email to Edwards.  Barbara Matthews represented in email to Edwards that rent would be adjusted for the repairs paid for by Edwards and failed to allocate against rent owed.

In reliance on the representations of Matthews and Barbara Matthews, Edwards signed a lease obligating her to occupancy and payment of $3,800 per month.  Edwards could have leased premises without these issues had she known of the issues with the property.  As a result of her reliance, Edwards signed the lease and later paid for extensive repairs, lost income during the period in which she was unable to open the daycare, and has suffered time, mentally and emotionally and legal expenses of the Unlawful Detainer.

WHEREFORE, Edwards respectfully requests this Honorable Court for a trial by jury and upon a verdict in her failure, that Edwards be awarded compensatory and punitive damages against Matthews and Barbara Matthews in the amount of $1,000,000.00; as well as a reasonable attorney fee and costs associated with this cause of action.

Respectfully,

_____
Paulette Edwards
President, Just 4 The Kids

_____
Paulette Edwards


STATE OF ALABAMA )

MADISON COUNTY    )


Before me, on this the 14th day of May, 2021, Paulette Edwards, in her official capacity as President of Just 4 the Kinds, and Paulette Edwards, in her capacity as an individual, after having been sworn unto oath and properly identified, affixed her signature to this document as having been truthful to the best of her knowledge.

_____
NOTARY PUBLIC
My Commission Expires: 9/19/2023

/s/ Mari    Morrison
MARI MORRISON (MOR099) (ASB-4396-I67M)
ATTORNEY FOR DEFENDANTS
430 RONNY LANE
SPRINGVILLE, AL  35146
(205) 837-2771
marimorrison1@gmail.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify on this the 15th day of May, 2021, I have caused to be served a copy of the foregoing Verified Amended Answer and Amended Counterclaim on the attorney for the Plaintiff using the electronic filing system authorized by the State of Alabama, AlaFile.

<u>/s/ Mari Morrison</u>
Mari Morrison

IN THE CIRCUIT COURT FOR MADISON COUNTY

ELECTRONICALLY FILED
5/15/2021 7:11 PM
47-CV-2020-000096.00
CIRCUIT COURT OF
MADISON COUNTY, ALABAMA
DEBRA KIZER, CLERK

MATTHEWS, WILLIAM P.,  )
             )
   Plaintiff,     )
             )
v.           ) **CASE NO. CV2020-000096.00**
             )
JUST 4 THE KIDS DAYCARE,  )
EDWARDS, PAULETTE,   )
             )
   Defendants.    )

## MOTION TO ADD INDISPENCIBLE THIRD PARTY

   COME NOW the Defendants, JUST 4 THE KIDS DAYCARE (hereinafter "Daycare") and PAULETTE EDWARDS (hereinafter "Edwards") and move to add BARBARA MATTHEWS as a necessary party in the above-styled cause of action, and in support thereof states as follows:

1. Barbara Matthews is the wife of Plaintiff William P. Matthews (hereinafter "Matthews").

2. Barbara Matthews name is listed on the lease made the subject matter of a lawsuit filed by Matthews against the Daycare and Edwards.

3. The property that is the subject matter of this lawsuit is legally owned by the Bo Matthews Center for Excellence, a defunct Alabama nonprofit organization.

4. Barbara Matthews conducted business on behalf of Matthews and herself with the Daycare and Edwards, and in doing so made numerous representations to the Daycare and Edwards in conjunction with the real property that is the subject matter of this lawsuit.

6. Barbara Matthews held herself out to the Daycare and Edwards as being the authorized agent of Matthews and conducted a business relationship with the Daycare and Edwards at all times during the relevant period considered in this cause of action.

7. Matthews instructed the Daycare and Edwards to contact Barbara Matthews regarding relevant issues involving the real property made the subject matter of this lawsuit.

WHEREFORE, the Daycare and Edwards respectfully requests this Honorable Court to cause Barbara Matthews to become a Plaintiff as a necessary party in the lawsuit and to respond by Answer to the Countercomplaint as separately filed with this cause of action.

   Respectfully,

/s/ *Mari Morrison*
Mari Morrison  (MOR099)
Attorney for Defendants

Mari Morrison, Attorney at Law
430 Ronny Lane
Springville, AL 35146
Telephone: (205) 837-2771
Email: marimorrison1@gmail.com

## CERTIFICATE OF SERVICE

I hereby certify that on May 15, 2021, the foregoing was filed with the clerk of the
Circuit court, and concurrently, the same was served on the attorney for William P. Matthews
using the electronic filing system, Alafile.

/s/ *Mari Morrison*

# Exhibit 1

ELECTRONICALLY FILED
5/15/2021 7:11 PM
47-CV-2020-000096.00
CIRCUIT COURT OF
MADISON COUNTY, ALABAMA
DEBRA KIZER, CLERK

10/28/2020

Exhibit 22 

**RE: RECEIPTS**

From: justfourkidz11@yahoo.com (justfourkidz11@yahoo.com)

To: barbaramatthews044@gmail.com

Date: Monday, June 4, 2018, 03:20 PM CDT

Hello Mrs. Barbara,

I hope this email finds you well. I was just checking with you to see when were either you or Mr. Matthews was going to bring me a receipt for the first & last month rent deposit. It should be one for 5/3/18 for $1900.00 and 6/1/18 for $1600.00.

I do thank you for you time and please have a wonderful day.

Paulette

On Wednesday, June 6, 2018, 10:47 PM CDT, Barbara Matthews <barbaramatthews044@gmail.com > wrote:

Hi Paulette,

I do apologize for the inconvenience Mr. Matthews will be out some time next week with the receipts.

Sincerely,
Bo & Barbara Matthews

Exhibit 23

October 29, 2020

The affiant, <u>Janice Hughes</u>, fully capacitated at this present time to give sworn written testimony, hereby acknowledges the following to be true.

(1) I was born on 10/02/1974 and I am currently a resident within the state of Alabama. I standby all facts herein stated within this written instrument to be true.

(2) The following testimony is an accurate account, both true and correct, of my personal knowledge.

This affidavit is made for the purposes of witnessing cash money payments being made.

I, <u>Janice Hughes</u>, the affiant, testify under oath to the following written statement:

<u>On August 23, 2018, Mr. Bo Matthews came to the daycare at 2084 Washington Street around lunch time, 12:00, noon looking for Mrs. Edwards. I called Mrs. Edwards several times because he wanted to wait. Mr. Matthews sat in the foyer for about an hour. He then walked outside; he was only outside for about 15 minutes then Mrs. Edwards pulled up. Mrs. Edwards came into the building and asked me to give her a envelope that was in her desk. I saw that it was full of money. She counted it in front of me it was $2400.00 and then she said I hope he gives me a receipt this time. Mrs. Edwards then went outside to talk to him, they were outside talking for about 10 minutes and I observed Mrs. Edwards give Bo Matthews the envelope with $2400.00 in it and he started smiling and laughing and then he left. Mrs. Edwards still did not get a receipt, she told me that he said Barbara, his wife would take care of it.</u>

Dated this 20 day of October, 2020

Sworn (or affirmed) before me at 401 Franklin St, Huntsville, AL 35758

Signature of Affiant ___Janice Hughes___

Signature of Notary Public ___Mabinty Wilshusen___

SEAL

My Commission Expires: ___

My Commission Expires November 28, 2020

# Exhibit 3

Exhibit 46

## RE: Updates

From:  Barbara Matthews (barbaramatthews074@gmail.com)

To:    justfourkidz11@yahoo.com

Date:  Sunday, January 6, 2019, 10:40 PM CDT

Hi Paulette,

How are things going for you? ~~It is my understanding that you are now open and keeping children. I just want to reach from our meeting in December you did lease parts of the lease due to repairs to the building. If you agree I am willing to extend the lease period for an additional 6 months. Just let me know if there is anything else you need.~~ My prayers are continually going up for you.
God Bless,
Barbara Matthews

*[Handwritten note:]* shows this is when I took possession of the building & she gave an extention on the lease

Exhibit 496

## Re: Updates

From:  barbara matthews (barbaramatthews044@gmail.com)

To:    justfourkidz11@yahoo.com

Date:  Thursday, December 6, 2018, 07:38 PM CST

Hi , yes, the trash can will be picked up, they just had some delays with their trucks. Not sure what number to change, is that yours?, Also, for this first check Mr.Matthews will pick up from you and all info will be on the next invoice. How are things going for you. Please,, if you have any questions or need anything let us know. can you let me know when and where he can meet you to pick up the check. I will check on the utility bill tomorrow..
Thanks

On Wed, Dec 5, 2018 at 7:01 PM P Edwards <justfourkidz11@yahoo.com> wrote:

The trash can will be picked up for sure next week, I have had to tell the health dept that i is not mine so I hope I can pass the health inspection. Has the address been changed on the Utility Bill and can the phone number be changed to 256-361-5367 please. The invoice does not show where to send the payment or where to deposit.

Thanks,
Paulette
On Wednesday, December 5, 2018, 4:17:23 PM CST, barbara matthews <barbaramatthews044@gmail.com> wrote:

Hi Paulette,

Just wanted to recap from our meeting on November 27, 2018. We per our conversation, due to the amount of the work that you had to do according to the city inspectors to meet requirements for opening, that December rent would be waved by half. You agreed to pay $1900.00 for December, along with starting to pay the utilities. We look forward to your opening the Daycare soon.  Please let us know if there is anything else needed. Attached is an invoice for December.

Sincerely,
Bo &Barbara Matthews

*Proves they Knew I was fixing the repairs they were supposed to fix.*

# Exhibit 4

# Alabama Secretary of State

| Silly Elements LLC | |
|---|---|
| Entity ID Number | 518 ~ 808 |
| Entity Type | Domestic Limited Liability Company |
| Principal Address | Not Provided |
| Principal Mailing Address | Not Provided |
| Status | Exists |
| Place of Formation | Madison County |
| Formation Date | 5-16-2018 |
| Registered Agent Name | MATTHEWS, BRANDI |
| Registered Office Street Address | 4000 PULASKI PIKE HUNTSVILLE, AL 35810 |
| Registered Office Mailing Address | 11208 MOUNTAINCREST DRIVE SE HUNTSVILLE, AL 35803 |
| Nature of Business | |
| Organizers | |
| Organizer Name | ELLIS, RONNIE |
| Organizer Street Address | 4000 PULASKI PIKE HUNTSVILLE, AL 35810 |
| Organizer Mailing Address | 4000 PULASKI PIKE HUNTSVILLE, AL 35810 |
| Scanned Documents | |
| Document Date / Type / Pages | 5-21-2018    Certificate of Formation   4 pgs. |

Browse Results          New Search

Bo and Barbara Matthews
P.O. Box 17167
Huntsville, Alabama 35653

December 7, 2020

**Via Hand Delivery and First Class Certified Mail**
Ms. Paulette Edwards
4000 Pulaski Pike
Huntsville, Alabama 35810

and

409 Baites Road
Toney, Alabama 35773

Re:    4000 Pulaski Pike

Dear Ms. Edwards:

We are writing to you in response to your request for a 1099 and information related to payments related to the Commercial Lease you signed on May 29, 2018. Both in your letters and your emails, and in response to the unlawful detainer/eviction action we filed as a result of your non-payment of rent and other issues, you raised questions about the ownership of the real property and regarding where your payments may go. We do not know that you are entitled to all of the information you are asking for simply by virtue of being a tenant in possession of the property under the lease, but, we want to correct some misunderstandings you have.

You complain that the property that you are leasing is owned by someone other than Bo and Barbara Matthews who are listed on your lease agreement. But do you not realize that the only right you had to possession of the property was by virtue of the lease that you are in essence arguing is invalid? (We note that now the judge has entered an Order with respect to the unlawful detainer action awarding us possession of the property.).

As we have told you previously, and as we reaffirm again now, you breached the attached Commercial Lease (the "Lease") in a number of ways and remain in breach presently, including: (1) non-payment of rent; (2) failure to maintain insurance as required under the Lease; (3) subleasing portions of the property without approval (and

*Exhibit 2*

without even requesting approval); (4) allowing other tenants without approval (and without even requesting approval), such as Power of Mind, Inc.; (5) building structures on common areas of the property outside without approval (and without even requesting approval); and (6) changing the building structure inside without approval (and without even requesting approval). You were previously notified of these breaches of the Lease, which continue. But we again place you on notice, particularly with respect to the matters that were not specifically raised in the unlawful detainer action – such as failure to maintain insurance as required under the Lease; subleasing portions of the property without approval (and without even requesting approval); allowing other tenants without approval (and without even requesting approval), such as Power of Mind, Inc.; building structures on common areas of the property outside without approval (and without even requesting approval); and changing the building structure inside without approval (and without even requesting approval).[1]

With respect to the owner of the property, the property is owned by Bo Matthews Center for Excellence, Inc. ("BMCE"). We are agents and representatives of BMCE and entered into the Lease with you as agents and representatives of BMCE. You never objected to entering into the Lease on any grounds related to any lack of capacity of Bo or Barbara Matthews to enter into the Lease.

With respect to whether you should be issued 1099s, a demand you have been making, you are incorrect with regard to your understanding of the forms. For your benefit, we attach hereto a W-9 from BMCE so that you can prepare and issue 1099s to BMCE for the Lease payment amounts that were made.

With respect to your questioning whether we have used the payments you made for personal gain rather than them going to the owner Bo Matthews Center for Excellence, Inc., you are absolutely incorrect. Although we signed the Lease on behalf of the Bo Matthews Center for Excellence, Inc., and received the partial payments[2] on behalf of Bo Matthews Center for Excellence, Inc., we assure you that we have paid more than your rent payments to Bo Matthews Center for Excellence, Inc. For quite some time, we have personally been paying all of the expenses of Bo Matthews Center for Excellence, Inc. (most significantly all of the mortgage payments). In short, we are not profiting personally from monies intended for BMCE. Instead, we have been paying BMCE's expenses out of our pockets personally.

---

[1] If not otherwise abundantly clear, this is additional notice under the Lease of termination for violating each of these provisions, including specifically but not limited to violation of paragraph 6 related to subletting the premises.

[2] As one example of how your partial payments fall woefully short of the expenses of BMCE, and how Bo and Barbara Matthews have and continue to personally pay expenses of BMCE (rather than profiting personally from some monies of BMCE as you suggest), in May 2019, you tried to make a partial payment of $1,000 on the $3,800 rent payment, and that check bounced. Thus, for that period, as well as all other periods you made partial or no payments, we paid BMCE's mortgage, as we had for years before you entered into the Lease.

Without regard to, and without waiver of, our earlier notices of termination of the Lease, and without waiver of our rights under the Court's Order granting possession of the property to us, this is additional notice under the terms of the Lease of your multiple breaches.

Very sincerely yours,

Bo Matthews

Barbara Matthews

Enclosures:   1.  Commercial Lease
              2.  W-9

# EXHIBIT A

### Affidavit of Facts

Date: January 19, 2021

The affiant, <u>Paulette Edwards</u>, fully capacitated at this present time to give sworn written testimony, hereby acknowledges the following to be true. I standby all facts herein stated within this written instrument to be true. (2) The following testimony is an accurate account, both true and correct, of my personal knowledge.

This affidavit is made for the purposes of:

Mr. Ronnie Ellis forged an application perpetrating that Suite Elements LLC and Just 4 The Kids Daycare are both doing business at 4000 Pulaski Pike NW, Huntsville, AL 35810.

Ms. Brandi Matthews **ADMITTED** to me on 10/7/20 at 3:45pm in front of Mrs. Townsend that she executed a fraudulent application to the government using the daycares business address for aid.

The Office of Attorney General flagged the application executed by Mr. Ronni Ellis with permission from Brandi Matthews, William P. Matthews daughter, on Dec. 4, 2020. I made a formal request to the FOIA for the information to be sent to me. Mr. Wedgewood in the Fraud Dept. 800-366-6303 assured me that it is set-up for apprehension, prosecution and incarceration of the individual who signed the application. They are also checking the IP Address that was used online to fill out the application.

I also received an email on Dec 22 @ 8:50am from Mr. Fearn the License Insp. Supervisor (256) 427-5093, he started an investigation with the Tax Administration, he also verified that Suite Elements does not have a license to operate legally in the city of Huntsville. That information has also been transferred to the Fraud Dept. I was told be Mr. Lee S. Leggett Magistrate to file a police report because William P. Matthews, Barbara Matthews, Brandi Matthews and Ronnie Ellis is stealing my business identity to get government money with companies that do not legally exist. He believes that it is a money laundering scheme. The police report was filed on Jan 1, 2021 Case Number 2021-00389.

Investigator James Rucker of the Criminal Investigations Division, phone 256-746-4127 called at 9:35 am today he stated to me that the CIA is taking over the investigation on the Federal Level with Special Agent Tory Green. They found several applications that were funded using my legal business address/ information. He then asked me if I gave anyone permission to use any information pertaining to the daycare or the address. I stated NO. Mr. Rucker said they are looking to prosecute all parties involved because they think this is some kind of money laundering scam. I asked him if I can get something in hand to show the court and he stated that I need to advise the court that a Federal Investigation is going on because the Plaintiff and members have illegally filled

for and received Federal Aid Monies. Mr. Rucker also said that if the court needs further information, they can contact him or Special Agent Tory Green of the CIA.

I, _Paulette Edwards_ the affiant, testify under oath to the following written statement:

_____

Dated this 19th day of _January_, 20 21

Sworn (or affirmed) before me at

_____

Signature of Affiant _____

Signature of Notary Public _____

WHEREFORE, Edwards respectfully requests this Honorable Court for a trial by jury and upon a verdict in her failure, that Edwards be awarded compensatory and punitive damages against Matthews and Barbara Matthews in the amount of $1,000,000.00; as well as a reasonable attorney fee and costs associated with this cause of action.

Respectfully,

_____
Paulette Edwards
President, Just 4 The Kids

_____
Paulette Edwards

STATE OF ALABAMA )
MADISON COUNTY    )

Before me, on this the 14th day of May, 2021, Paulette Edwards, in her official capacity as President of Just 4 the Kinds, and Paulette Edwards, in her capacity as an individual, after having been sworn unto oath and properly identified, affixed her signature to this document as having been truthful to the best of her knowledge.

_____
NOTARY PUBLIC
My Commission Expires: 9/19/2023

/s/ Mari Morrison
MARI MORRISON (MOR099) (ASB-4396-167M)
ATTORNEY FOR DEFENDANTS
430 RONNY LANE
SPRINGVILLE, AL 35146
(205) 837-2771
marimorrison1@gmail.com

# Exhibit 5

## (No Subject)

From: Barbara Matthews (barbaramatthews044@gmail.com)

To: justfourkidz11@yahoo.com

Date: Sunday, December 9, 2018, 11:18 PM CDT

Hi Paulette,

Mr. Matthews can meet you at 4:00 tomorrow at the center to pick up the check. Please make it out to William Matthews. Please let me know if time needs to be changed. As per our conversation, I do understand your frustration concerning all the repairs and work that you are doing to the building. If you remember that we agreed to waive December rent. I do understand that you stated you would like compensation for repairs, we will discuss some type of compensation and get back with you. We look forward to your opening.

Thanks,
Bo & Barbara Matthews

*Proves she said I would be compensated.*

Exhibit 37

# Re: April Rent

From: barbara matthews (barbaramatthews044@gmail.com)

To: justfourkidz11@yahoo.com

Date: Monday, March 30, 2020, 04:34 PM CDT

Hi, I will be in touch with you tomorrow.

thanks

On Sun, Mar 29, 2020 at 4:14 PM justfourkidz11@yahoo.com <justfourkidz11@yahoo.com> wrote:

Hello,
I hope this finds both of you well, I am writing in regards to the April Rent. Due to this awful Pandemic of the
Coronavirus the center has been closed causing a issue with funds. I am asking if you are willing to work with me
some kind of way for April.
Your consideration in this matter would be grately appreciated.
Thanks,
Paulette

On Mon, Mar 30, 2020 at 10:05 PM, barbara matthews
<barbaramatthews044@gmail.com>wrote:

Hi Ms. Edwards,
I hope all is well and things start to turn around for you. If you could pay at least half the rent
of (1,900) that will be fine. I do understand that these hard and trying times for everyone.
Again, I hope these accommodations are helpful to you until you are able to resume regular
payments.
Please call me if you have any questions.

Be Blessed,
Barbara Matthews

## Affidavit of Maintenance and Repairs

I, Willie W. Peavy _____, personally appeared before the undersigned notary public, and under oath or affirmation make the following statements:

I, Willie Walter Peavy do hereby attest that William P. Matthews did tell Mrs. Paulette Edwards that the building located at 4000 Pulaski Pike was in perfect condition and move in ready. William P. Matthews also told me not to divulge that the building was actually in very poor shape due to the fact that the roof was leaking allover the building, 75% of the lights did not work, out of the 4 toilets in the building only 1 worked because the plumbing is messed up, the wiring was in bad condition, the kitchen window was broken, the kitchen oven hood was not working, out of the 3 units on top of the build for heating and cooling only 2 worked and 1 just went out September 2020; so now only one is working and it does not heat and cool the entire building; the building was also riddled with termites. When Mrs. Edwards moved in the building it was not up to code at all and William P. Matthews wanted this information kept secret. William P. Matthews introduced me to Mrs. Edwards in August 2018. He stated to Mrs. Edwards that he used me as his Contractor and Maintenance guy for the building and if she needed anything, she could come to me. Mrs. Edwards was very upset because she could not believe all the work that had to be done to the building. William P. Matthews and Barbara Matthews refused to do repairs and bring the building up to code as the owners of the building so Mrs. Edwards had no choice but to hire me in September 2018. I did some of the work, hired people to do some of the work and I also called other companies to do some of the work. ALL maintenance and repairs that were and are the responsibility of the owners was paid for and done my Mrs. Edwards. William P. Matthews was also responsible for keeping the grass cut but He refused to pay for that as well. I have been making repairs and doing maintenance for Mrs. Edwards for September 2018 to present day.

DATED this the 16th day of October, 20 20

Signature of Affiant: _____     Date 10-16-20

SWORN to and subscribed before me this 16th day of October, 20 20

_____
Notary Public                                      (SEAL)

My Commission Expires: 9/19/2023

LA TOYA WHITE
My Commission Expires
NOTARY
PUBLIC
08-19-2023
ALABAMA STATE AT LARGE

# ITEMIZED LIST OF REPAIRS

## Table of Contents

| Number | Date | Repair Name | Amount |
|--------|------|-------------|--------|
| 1 | 4/3/18 | Roof & Electrical | 450.00 |
| 2 | 6/14/18 | Koorsen inspection of fire equipment in building | 1010.45 |
| 3 | 6/14/18 | Koorsen replace & repair | 4022.76 |
| 4 | 6/16/18 | Concrete break up & clean up | 1775.00 |
| 4 a | 6/14/18 | Pictures of messed up concrete per DHR | |
| 5 | 7/23/18 | Koorsen Wireless Monitor power replacement | 385.00 |
| 6 | 7/24/18 | Architect plans of building | 650.00 |
| 7 | 8/7/18 | Koorsen complete hook up & connection | 919.87 |
| 8 | 8/13/18 | Comcast (paid to have service in a no service area on 8/16) | 1075.00 |
| 9 | 9/12/18 | Architect revised restroom plans | 325.00 |
| 9 a | 8/30/18 | Architect revised restrooms | |
| 10 | 9/14/18 | Fence & gate repair & replace | 685.00 |
| 11 | 9/22/18 | Roof repair | 2546.42 |
| 12 | 10/27/18 | Trash clean up | 280.00 |
| 13 | 10/27/18 | Electrical repair & window replace | 9690.00 |
| 14 | 11/7/18 | Installed support beams on wall | 329.00 |
| 15 | 11/20/18 | Water heater replace, repair holes in ceiling, fix locks | 883.44 |
| 16 | 11/30/18 | Exit & room light repair, ventilator kit, window glass, replace faucet | 1069.38 |
| 17 | 12/4/18 | Architect plans for ramp & safety rails | 650.00 |
| 18 | 12/11/18 | Replace emergency light, rebuilt valve for water heater, replace hood fan and wiring | 1042.89 |
| 19 | 12/13/18 | Replace grease trap, 2 commodes, rebuilt 2 flush valves, repaired kitchen drain | 1273.00 |
| 20 | 12/17/18 | Add hot water heater, fix bathroom lights, kitchen pipes and wire with switches | 1024.38 |
| 21 | 12/18/18 | Connect light including wiring and fix water damage to center floors | 605.00 |
| 22 | 12/22/18 | Fix fence and add fence | 2651.47 |
| 23 | 12/27/18 | Rewired & rebuilt on used water heater, snaked main drain 100ft. unclogged roof drain | 1200.00 |
| | | **2018 TOTAL** | **$34,543.06** |
| 24 | 3/15/19 | Light repair, replace balances and wires | 770.49 |
| 25 | 3/19/19 | Snake front bathroom drain & replace pipe, Sprayed fire ants | 1470.13 |
| 26 | 4/10/19 | Repair plumbing toilet drain was leaking & snaked | 839.00 |
| 27 | 5/2/19 | Fix outside building light & put freon in A/C unit 2 | 355.58 |

CONTENUED

| Number | Date | Repair Name | Amount |
|--------|------|-------------|--------|
| 28 | 5/18/19 | Roof repair | 2278.45 |
| 29 | 5/21/19 | Water line busted, termites, walls | 1770.00 |
| 30 | 6/19/19 | Koorsen inspection & repair | 385.00 |
| 31 | 6/29/19 | Roof Repair | 2359.38 |
| 32 | 8/21/19 | Handwashing sink, pipes, fixtures renting block saw | 1344.91 |
| 33 | 11/2/19 | Make bathroom ADA compliant | 2785.00 |
| 34 | 11/16/19 | Busted water line under concrete outside in back | 1445.30 |
| 35 | 11/18/19 | A/C repair unit 2 and water line | 1783.00 |
| | | **2019 TOTAL** | **$17,586.24** |
| 36 | 1/6/20 | Plumbing dug up main line snaked from building to tap | 145.00 |
| 37 | 1/11/20 | Concrete fixed poured, smoothed & edged | 9500.00 |
| 38 | 1/17/20 | Fix supply room, repair shower drain, build cover for pipes & wires, repair washer & dryer connections | 1515.00 |
| 39 | 1/20/20 | Roof repair | 1507.84 |
| 40 | 1/23/20 | Owner cut trees-removal of debris | 1550.00 |
| 41 | 3/19/20 | Fix A/C unit 1 and unstop roof drain | 1490.00 |
| 42 | 3/7/20 | Asbestos Removal | 8913.60 |
| 43 | 3/16/20 | Termite Inspection report | |
| 43 a | 3/16/20 | Termite Treatment record | |
| 43 b | 1/8/10 & 4/25/20 | Termites and pest control | 2645.00 |
| 43 c | 9/12/20 & 10/15/20 | Termites and pest control | 490.00 |
| 43 d | 11/14/20 | Termites and pest control | 445.00 |
| 44 | 5/16/20 | Termite damage removal and repair | 2935.50 |
| 45 | 6/6/20 | Roof Repair | 1696.72 |
| 46 | 7/7/20 to 10/26/20 | Lawn service 8 cuts at 175 | 1400.00 |
| 47 | 7/9/20 | Koorsen inspection | 150.00 |
| 48 | 8/17/20 | A/C unit, installed and repaired used unit | 2275.00 |
| 49 | 8/22/20 | Roof repair | 1583.28 |
| 50 | 9/25/20 | A/C unit replaced dampers and flex duct on used unit | 1114.00 |
| | | | |
| 51 | 8/18 to 2/19 | Loss of Income | $77,965.00 |
| | | | |
| | | | |

| Number | Date | Repair Name | Amount |
|---|---|---|---|
| 52 | 10/17/20 | Roof Repair | 501.00 |
| 53 | 11/9/20 | Plumbing Repair | 480.00 |
| 54 | 11/27/20 | A/C Unit Repair | 422.00 |
| | | **2020 TOTAL** | **40,758.94** |
| 55 | 1/9/21 | Fix Drain Issues with Plumbing | 245.00 |
| 56 | 3/6/21 & 3/8/21 | Roof and Plumbing Repair | 1169.00 |
| | | **2021 TOTAL** | **1414.00** |
| | | **GRAND TOTAL** | **172,267.14** |
| | | | |

UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION

In re:                              )
BO MATTHEWS CENTER OF    )        Case No. 21-81371-CRJ-7
EXCELLENCE                      )
                                    )        Chapter 7
                                    )
                                    )

# EXHIBIT 5



AlaFile E-Notice

47-CV-2020-000096.00

To: LOCKWOOD CHRISTOPHER LEA
clockwood@wilmerlee.com

# NOTICE OF ELECTRONIC FILING

IN THE CIRCUIT COURT OF MADISON COUNTY, ALABAMA

WILLIAM P MATTHEWS V JUST 4 THE KIDS DAYCARE ET AL
47-CV-2020-000096.00

The following answer was FILED on 6/3/2021 12:01:17 PM

Notice Date:        6/3/2021 12:01:17 PM

DEBRA KIZER
CIRCUIT COURT CLERK
MADISON COUNTY, ALABAMA
MADISON COUNTY, ALABAMA
100 NORTHSIDE SQUARE
HUNTSVILLE, AL, 35801

256-532-3390



ELECTRONICALLY FILED
6/3/2021 12:01 PM
47-CV-2020-000096.00
CIRCUIT COURT OF
MADISON COUNTY, ALABAMA
DEBRA KIZER, CLERK

## IN THE CIRCUIT COURT OF MADISON COUNTY, ALABAMA

| | |
|---|---|
| **WILLIAM P. MATTHEWS,** | ) |
| | ) |
| *Plaintiff,* | ) |
| | ) |
| **v.** | ) **Case No.    47-CV-2020-000096.00** |
| | ) |
| | ) |
| **JUST 4 THE KIDS DAYCARE,** | ) |
| **and** | ) |
| **PAULETTE EDWARDS,** | ) |
| | ) |
| *Defendants.* | ) |

### PLAINTIFF'S ANSWER TO PAULETTE EDWARDS' COUNTERCLAIM

COMES NOW Plaintiff William P. Matthews ("Matthews" or "Plaintiff") and for Answer to the Counterclaim of Defendant Paulette Edwards ("Edwards" or "Defendant") responds as follows:

1.      Plaintiff denies Edwards' "counterclaim for compensation in the amount of $122,000 plus interest" as stated in her Amended Answer and incorporated by reference in Doc. 103 at page 4.  Plaintiff also denies Edwards' claims and assertions regarding some alleged increase in value of the property that is the subject of the Commercial Lease signed by Edwards in August 2018 that Edwards asserts are related to repairs allegedly made by Edwards.  Plaintiff denies Edwards' allegations about repairs.  Plaintiff denies Edwards' allegations of the property's supposed unsatisfactory condition.  Plaintiff denies that he refused to make needed repairs to the property at 4000 Pulaski Pike.  Plaintiff denies all remaining allegations in Paragraph 1 of the Counterclaim, entitled "Unjust Enrichment," and Plaintiff demands strict proof thereof.

2.      In response to Edwards' Counterclaims, Plaintiff responds further that:

a.     Paulette Edwards and her business, Just 4 The Kids Daycare, entered into a written commercial business lease in 2018 to use commercial property to operate Ms. Edwards' business.  (Exhibit 1).

b.     The only right to possession that Edwards or Just 4 The Kids Daycare had or has to the premises at Pulaski Pike arises out of that Commercial Lease that Ms. Edwards signed on May 28, 2018 (the "Commercial Lease").

c.     Edwards applied for Paycheck Protection Protection loans to help pay her twelve employees and an Emergency Economic Injury Disaster Loan for rental assistance, and she was approved for and received a PPP loan for $19,000 in April of 2020 and another loan in January, up to 25% of which she could have used for rent, in addition to her for payroll.

d.     Edwards did not timely pay the full amount of the rent payments that the Commercial Lease called to be made when they were called to be paid.

e.     Despite the fact that all the full amount of the rent payments that the Commercial Lease called to be made were not made when they were called to be paid, and despite the fact that the Commercial Lease was properly and lawfully terminated pursuant to the Commercial Lease provisions as a result of the Defendants' breach of the Commercial Lease provisions, Defendants still occupy the premises where they operate a business.

f.     Defendants do not live at the premises, and the Commercial Lease is not a residential lease; instead it is a lease of commercial property for commercial use by Edwards' business.  Specifically the Commercial Lease provides:

> 2.  USE.  Lessee shall use and occupy the premises for child care facility. The premises shall be used for no other purpose. Lessor represents that the premises may lawfully be used for such purpose.

2

(Exhibit 1, Commercial Lease, para. 2).

g.    Defendants do not have the authority under the Commercial Lease to sublease to others.  Defendants do not have the authority under the Commercial Lease to let other companies or persons occupy or use the premises.  Specifically, in addition to the provisions of paragraph 2 of the Commercial Lease above, the Commercial Lease also provides:

> 6. ASSIGNMENT AND SUBLETTING.  Lessee shall not assign this lease or sublet any portion of the premises without prior written consent of the Lessor.  Any such assignment or subletting without consent shall be void and, at the option of the Lessor, may terminate this lease.

(Exhibit 1, Commercial Lease, para. 6).

h.    However, Defendants have permitted others to occupy the premises in violation of the Commercial Lease.

i.    After Defendants' default with respect to terms of the Commercial Lease, including but not limited to failure to pay the full amount of the rent payments that the Commercial Lease called to be made when they were called to be paid, Plaintiff served Defendants with and Defendants received a 10-day demand letter in October 2020 for possession of the premises.

j.    From October 2020 until today Defendants have continued to occupy the premises described in the Commercial Lease and operate their business there.

k.    The Commercial Lease Defendants signed says it will terminate "on July 31st 2021."  (Exhibit 1, Commercial Lease, para. 1).  Specifically, the Commercial Lease provides:

3

> 1. TERM AND RENT. Lessor demises the above premises for a term of **Thirty Six** months, commencing August 1st 2018, and terminating on July 31st 2021, for a total amount of One Hundred Thirty Six Thousand Eight Hundred Dollars ($136,800.00) payable in installments of Thirty Eight Hundred Dollars_
> ($3800) Dollars in advance on the first day of each month for that month's rental during the term of this lease.
>
> All rental payments shall be made to Lessor at the address specified above.
>
> A penalty or late charge of ten percent (10%) will be due if rent is unpaid for the period of ten (10) days from due date. A penalty or late charge of twenty percent (20%) will be due if rent is unpaid for a period of thirty (30) days from due date.

(Exhibit 1, Commercial Lease, para. 1).

   l.  Edwards Counterclaims make reference to persons applying for SBA loans or grants – PPP loans or grants, or EIDL loans or grants, or both. Neither Bo Matthews, nor Barbara Matthews, nor the Bo Matthews Center of Excellence applied for or received any PPP loan or grant or EIDL loan or grant.

   m.  Specifically, Plaintiff William P. "Bo" Matthews never applied for and he never received a PPP or EIDL loan or grant, whether using the Pulaski Pike address or not. He did not apply for or receive any such loan or grant. Nor did Barbara Matthews or the Bo Matthews Center of Excellence.

   3.  Among other things, Edwards' claim of "unjust enrichment" is due to be dismissed because Matthews was not unjustly enriched at Edwards' expense. Unjust enrichment occurs when "retention of a benefit would be unjust [because] '(1) the donor of the benefit... acted under a mistake of fact or in misreliance on a right or duty, or (2) the recipient of the benefit ... engaged in some unconscionable conduct, such as fraud, coercion, or abuse of a confidential relationship. In the absence of mistake or misreliance by the donor or wrongful conduct by the recipient, the recipient may have been enriched, but he is not deemed to have been unjust1y enriched.'" *Wyeth, Inc. v. Blue Cross & Blue Shield of Alabama*, 42 So. 3d 1216, 1223 (Ala. 2010) (quoting *Mantiply v. Mantiply*, 951 So. 2d 638, 655 (Ala. 2006)).

Here Edwards did not act under a mistake of fact or in misreliance on a right or duty. The parties had a written contract that governed their relationship. Edwards agreed in the Commercial Lease that parties signed on May 29, 2018 that "the premises [were] in good order and repair, unless otherwise indicated herein." (Exhibit 1, para. 3). The Commercial Lease provides that Defendants will maintain the premises in good and safe condition at their own expense. (*Id.*). Edwards could not have acted under a mistake of fact or misreliance on a right or duty because in signing the Commercial Lease she acknowledged that the premises were in good order and repair and she failed to contemporaneously indicate otherwise. Moreover, Edwards also agreed to maintain the premises at her own expense.

Additionally, at no point did Matthews engage in unconscionable conduct. Any repairs Edwards made to the building were made freely and willingly of her own accord, as agreed to in the Commercial Lease, and not induced, encouraged, or endorsed by Matthews. Even if Matthews was enriched by Edwards' repairs to the building, he cannot be deemed "unjustly enriched" because Edwards did not act under a mistake of fact or reliance on a right or duty and Matthews never engaged in unconscionable conduct. Edwards knew that any lessee repairs or changes would become part of the leased property under the terms of the Commercial Lease.

Further, Edwards fails to assert a valid claim for damages. "[N]o ... restitutionary award may be had unless there has been some unjust enrichment.... [I]n order to recover, it is incumbent upon the plaintiff, not only to establish the existence of the unjust enrichment, but to establish also the reasonable value of the services rendered." *Autery v. Pope*, 260 So. 3d 846, 850–51 (Ala. Civ. App. 2018) (quoting *Utah Foam Prods., Inc. v. Polytec, Inc.*,

584 So. 2d 1345, 1351 (Ala. 1991)). "'The amount of the recovery [on a claim of unjust enrichment] is limited to the value of the benefit gained by the defendant, regardless of the extent of the detriment to the plaintiff.'" *Autery v. Pope*, 260 So. 3d 846, 850–51 (Ala. Civ. App. 2018) (quoting *American Family Care, Inc. v. Fox*, 642 So. 2d 486, 488 (Ala. Civ. App. 1994).

Edwards fails to both establish the existence of unjust enrichment and assert the value of any benefit gained by Matthews. Edwards instead asserts the amount she alleges she spent on repairs to the building, when the correct amount of any restitution damages is limited to the value actually gained by Matthews, regardless of how much Edwards paid for repairs. Edwards cannot satisfy the elements of unjust enrichment and she fails to assert a valid amount for damages. Therefore, Edwards' unjust enrichment claim is due to be dismissed.

Finally, the Commercial Lease provides that it is the entire agreement of the parties regarding the subject matter of Edwards' leasing of the property:

> 22. ENTIRE AGREEMENT. The foregoing constitutes the entire agreement between the parties and may be modified only by a writing signed by both parties. The following Exhibits, if any, have been made a part of this lease before the parties' execution hereof:
>
> SIGNED the ___29th___ day of ___MAY___ , 20_18_
>
> By: _William P. Matthews_ , Lessor        By: _Pam Edwards_ , Lessee
>     Bo Mathews

(Exhibit 1, Commercial Lease, para. 22).

The Commercial Lease provides:

2. USE. Lessee shall use and occupy the premises for child care facility. The premises shall be used for no other purpose. Lessor represents that the premises may lawfully be used for such purpose.

3. CARE AND MAINTENANCE OF PREMISES. Lessee acknowledges that the premises are in good order and repair, unless otherwise indicated herein. Lessee shall, at his own expense and at all times, maintain the premises in good and safe condition including, plate glass, mirrors, windows, furnace filters, light bulbs, ballasts, and hardware. Lessee shall, at his own expense and at all times, also maintain the heating and cooling installations up to the sum of Five Hundred Dollars ($500.00) with Lessor paying the balance. Lessee agrees to change filters in the heating and cooling system in a timely manner. Lessee will use Lessor's choice of Repair Company for any work that may be required on HVAC system. Lessee shall surrender the same, at termination hereof, in as good condition as received, normal wear and tear accepted. Lessee shall be responsible for all repairs required, excepting the roof, exterior walls, structural foundations, and the parking lot, which shall be maintained by Lessor.

4. ALTERATIONS. Lessee shall not, without first obtaining the written consent of Lessor, make any alterations, additions, or improvements in, to or about the premises.

(Exhibit 1, Commercial Lease, paras. 2, 3, and 4).

Any allegations Edwards purports to make regarding what was to be done with respect to repairs and work on the property that are contrary to the terms of the Commercial Lease in that regard are barred by both the parole evidence rule and by the terms of the parties' contract.

4.    Plaintiff denies the material allegations of Paragraph 2 of Edwards' Counterclaim, entitled "Fraud, Promissory Fraud, and Fraud in the Inducement," and Plaintiff demands strict proof thereof. Edwards' fraud claims fail to state claims upon which relief can be granted. Moreover, they are time barred as they arise out of acts and omissions that occurred in 2018, more than two years ago.

5.    Among other things, Count Two of Edwards' Counterclaim fails because Edwards has failed to state allegations of Fraud with particularity as required by Rule 9(b). When a pleader claims any type of fraud, "the rule of generalized notice pleading is qualified by Rule 9(b)." *See generally Bethel v. Thorn*, 757 So. 2d 1154, 1158 (Ala. 1999). Rule 9(b) provides that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Ala. R. Civ. P. 9(b). Though the conditions of the mind of a person may be alleged generally, a pleader is required to state "[1] the time, [2] the place, and [3] the contents or substance of the false

7

representations, the facts misrepresented, and an identification of what has been obtained."

*Crum v. Johns Manville, Inc.*, 19 So. 3d 208, 218 (Ala. Civ. App. 2009) (quoting *Robinson*

*v. Allstate Ins. Co.,* 399 So. 2d 288, 290 (Ala.1981)).

Edwards' Counterclaim for "Fraud, Promissory Fraud, and Fraud in the Inducement" should be dismissed because they do not state the time and place of the false representations or the facts misrepresented, nor an identification of what has been obtained.

First, Edwards' generalized claims in Count 2 do not clearly state as to when or where the alleged fraud or misrepresentations were made. The Counterclaim merely alleges that Matthews knew of the building's condition, without stating a time or place where the alleged misrepresentation was made. Therefore, Edwards' Counterclaim does not satisfy Rule 9(b)'s particularity requirement, and it should be dismissed.

Second, Edwards does not identify what Matthews has obtained through the alleged fraudulent representations. Edwards asserts that Matthews leased the building under his name and not the Bo Matthews Center of Excellence but fails to assert how that has benefited Matthews. The Counterclaim merely alleges that Edwards has suffered damages as a result of the lawsuit without specifying how Matthews' alleged fraudulent misrepresentations injured her or what he has obtained. (Doc. 103). Because Edwards has not stated her claim with particularity pursuant to 9(b), the Edwards' Counterclaim should be dismissed.

Third, the Court should dismiss Edwards' promissory fraud claims pursuant to Rules 9(b), and 12(b)(6) for failure to plead the fraud with particularity. "Rule 9(b) is an exception to the rule set out in Rule 8(a) permitting generalized pleadings." *Phillips Colleges of Alabama, Inc. v. Lester*, 622 So. 2d 308, 311 (Ala. 1993). "[U]nder Rule 9, for

8

a pleading to state a claim of fraud, '[t]he pleading must show [the] time, [the] place, and the contents or substance of the false representations, the facts misrepresented, and an identification of what has been obtained.'" *Bethel v. Thorn*, 757 So. 2d 1154, 1158 (Ala. 1999), citing *Lester*, 622 So. 2d at 311 (quoting *Miller v. Mobile County Board of Health*, 409 So. 2d 420, 422 (Ala. 1981)). See also *Robinson v. Allstate Ins. Co.*, 399 So. 2d 288, 290 (Ala. 1981) ("The pleader must state the time, the place, the contents or substance of the false representations, the fact misrepresented, and an identification of what has been obtained."). Moreover, "[w]here the alleged fraud is 'predicated upon a promise, it is essential that the [pleader allege that the] promisor intended not to perform at the time of making the promise.'" *Robinson*, 399 So. 2d at 290.

As explained in *J & M Associates, Inc. v. Callahan*, No. 07-0883-CG-C, 2008 WL 11389385, at * 7 (S.D. Ala. Nov. 10, 2008), "Rule 9(b) 'serves an important purpose in fraud actions by alerting defendants to the precise misconduct with which they are charged and protecting defendants against spurious charges of immoral and fraudulent behavior.'" Citing *Durham v. Business Management Associates*, 847 F.2d 1505, 1511 (11th Cir. 1988) (internal quotations omitted), *Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001); *United States ex rel. Atkins v. McInteer*, 470 F.3d 1350, 1359 (11th Cir. 2006).

The six elements of promissory fraud are: (1) a false representation; (2) of a material existing fact; (3) reasonably relied upon by the plaintiff; (4) who suffered damage as a proximate consequence of the misrepresentation; (5) proof that at the time of the misrepresentation, the defendant had the intention not to perform the act promised; and (6)

9

proof that the defendant had an intent to deceive. *Southland Bank v. A & A Drywall Supply Co., Inc*., 21 So. 3d 1196 (Ala. 2008).

As to element (1), the count of the counterclaim does not inform Plaintiff as to the representation on which the claim is predicated and why the representation is false.

As to element (2), the count of the counterclaim does not inform Plaintiff as to the material existing fact (as opposed to future event) on which Edwards is alleging there was promissory fraud.

As to element (3), since the counterclaim does not identify the material fact on which the allegation of promissory fraud is based, it is likewise void of any explanation of how Edwards reasonably relied upon the misrepresented material fact.

As to element (4), the Counterclaim does not inform Plaintiff as to the damages suffered as a proximate consequence of the misrepresentation.

As to element (5), the Counterclaim does not identify any proof that, at the time of the misrepresentation, Plaintiff had the intention not to perform the act promised.

As to element (6), the Counterclaim does not identify any proof that Plaintiff had an intent to deceive. Therefore, the alleged fraud has not been pled with particularity.

6.　Further, with respect to her fraud claims, Edwards cannot rely on statements she alleges in her Counterclaims because the Commercial Lease that the parties signed on May 29, 2018 (3 years ago) provides, "Lessee acknowledges that the premises are in good order and repair, unless otherwise indicated herein." (Exhibit 1 hereto, para. 3). Edwards agreed in the Commercial Lease that the lessee would maintain the premises in good and safe condition at their own expense. (*Id*.). The executed document provides all the representations that Edwards could rely upon, per paragraph 22. Entire Agreement – "The

10

foregoing constitutes the entire agreement between the parties and may be modified only by a writing signed by both of the parties." (*Id*. at para. 22). Thus, the Commercial Lease precludes any suggestion of reasonable reliance by Edwards on statements made before the signing of the agreement. Plaintiff did not make the alleged representations set out in Edwards' fraud counterclaims. However, even if arguendo they were made, Edwards was not entitled to rely upon them and could not reasonably rely upon them given the terms of the parties' executed agreement. Regardless, the allegations do not state claims upon which relief can be granted, they fail to allege fraud with particularity, and they are barred by applicable statutes of limitations. Edwards' promissory fraud claims should be dismissed.

## **AFFIRMATIVE DEFENSES**

Plaintiff sets forth and asserts the following affirmative defenses to Edwards' Counterclaim:

1. Plaintiff denies the material allegations in Edwards' Counterclaims and demands strict proof thereof.

2. Plaintiff denies that Edwards is entitled to the relief requested.

3. Edwards' Counterclaims fail to state a claim upon which relief may be granted.

4. Edwards' Counterclaims fail to plead fraud with particularity.

5. Edwards has not suffered any injury by reason of any act or omission of Plaintiff and, thus, does not have any right or standing to assert the claims at issue.

6. The injuries and damages complained of by Edwards in this case were not caused by the actions of Plaintiff.

11

7. The actions of Plaintiff as alleged were not the proximate cause of the damages complained of by Edwards.

8. Edwards has not been damaged as alleged.

9. To the extend Edwards has been damaged, such damage was caused by and is the responsibility of Edwards or others who are not parties to this litigation.

10. To the extent Plaintiff is liable for any injuries suffered by Edwards, Plaintiff's liability must be reduced under principles of contributory negligence.

11. Plaintiff is not liable for any injury suffered by Edwards because Edwards assumed the risk when she knowingly and voluntarily entered the Commercial Lease.

12. Edwards' punitive damages claim does not comply with the requirements of applicable state law.

13. Edwards failed to mitigate her damages by failing to take all reasonable and necessary care to minimize their injuries and consequences therefrom.

14. Edwards' claims are barred by the applicable statutes of limitations and/or repose. Assuming that the building was in unsatisfactory condition, Edwards learned or should have learned of this issue prior to signing a lease in 2018 or performing any repairs.

15. Any contract by and between Plaintiff and Edwards was breached by Defendants.

16. Edwards' claims are barred, in whole or in part, by the applicable provisions of any agreements between Plaintiff and Defendants.

17. To the extent that Edwards have suffered any legally cognizable damage or injury, such damage or injury was caused by, and is the responsibility of, individuals and/or entities other than Plaintiff.

18. Plaintiff pleads the equitable defense of laches.

12

19. Plaintiff asserts the equitable defense of waiver.

20. Plaintiff asserts the equitable defense of estoppel.

21. Plaintiff asserts the equitable doctrine of unclean hands.

22. Plaintiff says that he has complied with any and all duties, obligations, and/or warranties under Alabama law.

23. Plaintiff pleads the doctrines of set-off and recoupment.

24. Plaintiff denies that Edwards is entitled to any award of fees, costs, or expenses from Plaintiff in this action.

25. Plaintiff denies any liability to Edwards because he acted in good faith in any and all dealings with Edwards.

26. To the extent that Plaintiff owed a duty to Edwards, such duty was not breached by Plaintiff.

27. Edwards' claims are barred by the doctrine of consent.

28. Edwards failed to give notice of breach as required.

29. Plaintiff pleads lack of cooperation.

30. Edwards' claims of fraud, promissory fraud, and fraud in the inducement must be dismissed for failure to make the claim within the two-year statute of limitations for fraud. The standard for granting a motion to dismiss based upon the expiration of the statute of limitations is whether the existence of the affirmative defense appears clearly on the face of the pleading. *Braggs v. Jim Skinner Ford, Inc.*, 396 So. 2d 1055, 1058 (Ala. 1981).

"A fraud action is subject to a two-year statute of limitations. Ala. Code 1975, § 6–2–38." *Bryant Bank v. Talmage Kirkland & Co.*, 155 So. 3d 231, 236 (Ala.

13

2014). The parties entered into the Commercial Lease on August 1, 2018. The claims of Count Two arise out of facts dating to on or before August 1, 2018. Edwards raises these claims for the first time on May 15, 2021. It is clear on the pleadings that the fraud claims are time-barred as a matter of law. In brief, Edwards alleges actions and omissions from 2018 and alleges conditions of the subject property at the time of her move in in 2018. Edwards knew or should have known of all facts set out in Count Two of Plaintiff's Counterclaim before August 31, 2018. Thus, Edwards' fraud claims are barred by applicable statutes of limitation.

31.     At the time this Answer is filed, discovery has not yet been completed and thus Plaintiff reserves the right to add such further or supplemental defenses as may be warranted by the information developed through discovery.

32.     To the extent that any of the foregoing allegations in Edwards' Counterclaims have not been expressly admitted or denied, they are hereby denied.

Respectfully submitted this the 3rd day of June 2021.

**WILMER & LEE, P.A.**

/s/ Richard J.R. Raleigh, Jr.
Richard J.R. Raleigh, Jr. (RAL003)

/s/ Christopher L. Lockwood
Christopher L. Lockwood (LOC018)

*Attorneys for William P. Matthews*
**WILMER & LEE, P.A.**
100 Washington Street
Huntsville, Alabama 35801
(256) 533-0202 - telephone
(256) 533-0302 – facsimile
email: rraleigh@wilmerlee.com
         clockwood@wilmerlee.com

14

## CERTIFICATE OF SERVICE

I hereby certify that on June 3, 2021, a copy of the foregoing was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. Parties may access this filing through the Court's electronic filing system.

/s/ Richard J.R. Raleigh, Jr.
**OF COUNSEL**

15

UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION

In re:                                    )
**BO MATTHEWS CENTER OF**                 )        **Case No. 21-81371-CRJ-7**
**EXCELLENCE**                            )
                                          )        **Chapter 7**
                                          )
                                          )

# <u>EXHIBIT 6</u>

FILED
2021 Mar-05  PM 04:27
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHERN DIVISION

| | | |
|---|---|---|
| Paulette Edwards and | ) | |
| Just 4 Kids Daycare | ) | |
| Plaintiffs, | ) | Case Number: |
| v. | ) | |
| | ) | |
| Ronnie Ellis, Suite Elements, LLC, | ) | |
| Brandi Matthews Ellis and | ) | |
| those persons or entities responsible | ) | |
| for the injuries sustained by the | ) | |
| Plaintiff as a result of the defalcations | ) | |
| described herein, who are yet | ) | |
| unidentified, but who will be | ) | |
| added within the time provided | ) | |
| by law, | ) | |
| Defendants. | ) | |

---

## COMPLAINT OF PAULETTE EDWARDS
## ALLEGING VIOLATIONS OF THE RACKETEER
## INFLUENCED AND CORRUPT ORGANIZATIONS ACT
## ("RICO")
## AND OTHER CLAIMS

---

Paulette Edwards and her daycare, Just 4 Kids Daycare, ("hereafter Ms. Edwards" or "Plaintiff") b and through her undersigned counsel, files this Complaint.  Ms. Edwards respectfully requests that this Court exercise ancillary question jurisdiction over certain state court claims involving the Plaintiff and the Defendants in which the claims derive from a common nucleus of operative facts and which would ordinarily be expected to be tried in the same judicial proceeding.  Ms. Edwards states as follows:

1

## JURISDICTION AND VENUE

1. This Court has jurisdiction of the claims herein pursuant to 18 USCA § 1964(c) and 28 USCA § 1331. This civil action arises under the laws of the United States and the State of Alabama. Plaintiffs are alleging, *inter alia,* a violation of their rights under Title IX of the Organized Crime Control Act of 1970, as amended, 18 USC §1961 *et seq.,* and various state statutes.

2. Venue herein is proper under 18 USC §1965(a) and 28 USC §139l(b).

## THE PARTIES

3. Plaintiff, Paulette Edwards owns and operates Just 4 Kids Daycare ("Just 4 Kids" or "the Daycare"), a minority-owned organization, which was established to provide supervision and care for children in the Huntsville, Alabama area. Ms. Edwards and her business are located at 4000 Pulaski Pike, Huntsville, Alabama 35810. Ms. Edwards and the Daycare are licensed and authorized to do business there.

4. Defendant, Ronnie Ellis, is an individual resident and citizen of the State of Alabama. He is the owner and incorporator of the following entity, which claims an address at 4000 Pulaski Pike, Huntsville, Alabama 35810:

    *Suite Elements, LLC, an Alabama limited liability company entity number 518-808

5. Defendant, Brandi Matthews Ellis, is an individual resident and citizen of the State of Alabama. She is the registered agent for the following entities, each of which claims an address at 4000 Pulaski Pike, Huntsville, Alabama 35810.

2

*Suite Elements, LLC, an Alabama limited liability company, entity number 518-808

*New Concept Enterprise LLC, an Alabama limited liability company, entity number 508-307

6. Defendant, Suite Elements, LLC is an Alabama limited liability company, and, on information and belief, is the entity used by the individual defendants to fraudulently take monies belonging to Ms. Edwards.

## FACTUAL BACKGROUND
## RACKETEER INFLUENCED CORRUPT ORGANIZATION ACT

7. Defendants Ronnie Ellis, Brandi Matthews Ellis and Suite Elements, LLC are "persons" under 18 U.S.C.A. §1961(3).

8. The Landlords who lease the premises at 4000 Pulaski Pike, Huntsville, Alabama, 35810, William P. ("Bo") Matthews and his wife, Barbara Matthews are "persons" under 18 U.S.C. § 1961(3).

## Enterprise

9. The relationship existing between Defendants Ronnie Ellis and Brandi Matthews Ellis constitutes an association-in-fact enterprise under 18 U.S.C. §1961(4). The persons controlling or directing the affairs of this enterprise have engaged in activities or a pattern or practice of conspiracy and racketeering activity in violation of 18 U.S.C. §1962 *et seq.*

10. The relationship existing between Defendants Ronnie Ellis and Brandi Matthews Ellis and Bo and Barbara Matthews constitutes an association-in-fact enterprise under 18 U.S.C. §1961(4). The persons controlling or directing the

3

affairs of this enterprise have engaged in activities or a pattern or practice of conspiracy and racketeering activity in violation of 18 U.S.C. §1962 *et seq.*

## Activity
## Overview.

11. Ms. Edwards and Just 4 Kids Daycare are the victims of a complex criminal-enterprise designed to steal money from her and from the federal government's COVID-19 relief programs. The mastermind and orchestrator of this criminal activity is Ronnie Ellis. During the relevant time-period, Ms. Edwards was operating the Just 4 Kids Daycare. The criminal activity consisted of two primary and interrelated categories: (1) defrauding Ms. Edwards and potentially other business owners, and (2) defrauding the federal government. Each of these fraudulent claims and their supporting activities are addressed below.

## The lease of the property.

12. Mr. Bo Matthews and his wife, Barbara Matthews, entered into a commercial lease agreement with Ms. Paulette Edwards on May 29, 2018, claiming to be the owners and landlords of the commercial property located at 4000 Pulaski Pike NE, Huntsville, Alabama 35810. Mr. Matthews claimed that the building on the property met the City of Huntsville building codes. Therefore, he could enter into a lease agreement with Ms. Edwards to: (1) operate the day care center and (2) pay rent each month.

13. The information Mr. Matthews told Ms. Edwards proved untrue. The building did not meet city building codes. Moreover, Mr. and Mrs. Matthews do not have a Huntsville City license to execute the lease

4

agreement. The Matthews do not have a business license under the name of "William P. Matthews" to legally operate. Finally, Ms. Edwards avers, on information and belief, that the Matthews did they pay city, state or federal taxes from 2018-2020.

14. The Matthews refused to give Ms. Edwards their residential or legitimate business address in the state of Alabama. They listed e-mail addresses and telephone a number (█████████) from the state of Colorado on the lease agreement as their place of business. The Matthews used 4000 Pulaski Pike, Huntsville, Alabama 35810 as their business address even after they leased the building to Ms. Edwards.[1]

15. Mr. and Mrs. Matthews asked Ms. Edwards to ensure that all rental payments or checks be issued to "William P. Matthews," which differed from the language of the lease. The lease was entered into between Ms. Edwards and "Bo and Barbara Matthews." The Matthews were aware that there was no City of Huntsville business license in the name of "William P. Matthews." On information and belief, Ms. Edwards believes that this name was used as the payee to avoid reporting income to the state of Alabama or the Internal Revenue Service ("IRS" or "Service").

### The fraud unfolds.

16. On February 24, 2020, Ms. Edwards was notified by the Internal Revenue Service that the Service was holding her 2019 tax refund until the review of her return was completed. (Exhibit 2.) The issue was not that Ms. Edwards had not paid her taxes, the issue was that the Matthews had not provided her the tax documentation she needed for her rent payments, nor had they declared those payments

---

[1] The lease directed that Edwards submit monthly rent payments to 4000 Pulaski Pike, to the "Bo Matthews Center of Excellence." (See Exhibit 1.) That entity did not operate at the time the lease was executed on May 29, 2018. On information and belief, the IRS had removed the Bo Matthews Center as a 501(c)(3) tax exempt organization because it had not functioned in 15 years or more.

as income.

17. Subsequently, Paulette Edwards was told by the Small Business Administration on July 11, 2020, that she could not collect the Covid-19 rent subsidy payment for her Daycare because the **"address has been used and funds issued."** (Exhibit 7.)

18. Ms. Edwards filed IRS Form 3949-A and Form 13909 on October 16, 2020, complaining that the Matthews had not paid federal income taxes on the rental payments. (Exhibit 3.)

19. Ms. Edwards then discovered that her Landlords received duplicative rent monies from the federal government through the Covid-19 Pandemic relief funds. She explained to the Department of Justice that her Landlords had "fraudulently filed for federal aid using the property located at 4000 Pulaski Pike, Huntsville, AL 35810 without my permission because they DO NOT operate a business here. . ." (Exhibit 4.) Ms. Edwards concluded, "William P. Matthews also told a family member that they got federal money using my business address and there is nothing I can do about it." (*Id.*) Ms. Edwards had to file amended returns "due to the circumstances." (Exhibit 5.)

20. On the recommendation of the federal investigators, Ms. Edwards filed a police report on January 5, 2021, explaining that when she applied for her Covid-19 monies, she was told that the funds for her address had been claimed—twenty-four thousand dollars ($24,000). Ms. Edwards named Ronnie Ellis as the key person in the fraudulent enterprise. She also explained that she thought Brandi Matthews Ellis, her Landlords' daughter, had participated in the enterprise. (Exhibit 6.)

21. Brandi Matthews Ellis has admitted that she received money from the federal government through the enterprise.

6

22. Ms. Edwards received confirmation in February 2021, that the fraud which had been flagged on December 4, 2020, was indeed directed by the Defendants.  She received correspondence from the SBA stating that: "SUITE ELEMENTS. LLC AND RONNIE ELLIS applied and received funds for the property owner that should have been disbursed to your business for aid." (emphasis in original.)

23. Ronnie Ellis and Brandi Matthews Ellis were required to include the authorization of the Landlord on the applications they submitted to the SBA for the Covid-19 monies.  As a result, the Defendants were required to, and did meet with Bo and Barbara Matthews to secure their signatures on the applications. including that application made for and on behalf of Ms. Edwards.  The actions were taken in furtherance of the goals of the Defendants to illegally secure monies from the federal government and deprive those persons in the position of Ms. Edwards.

24. Ronnie Ellis and Brandi Matthews Ellis and Bo and Barbara Matthews and perhaps others, submitted multiple applications, and received funding, each using the address of Ms. Edwards' business - 4000 Pulaski Pike, Huntsville, Alabama.  These entities may include:  Suite Elements, LLC; New Concept, Enterprises, LLC; Bo Matthews Center of Excellence, an Alabama non-profit corporation, entity number 555-731; and P41, LLC, an Alabama limited liability company listing Ms. Barbara Matthews as the registered agent and Mr. William P. Matthews as the organizer, entity number 521-060; and Salter Auto Group, LLC, listing Brandi L. Matthews as organizer and registered agent, entity number 582-444.

25. Each of these entities (except Salter Auto Group, LLC) includes 4000 Pulaski Pike, Huntsville, Alabama 35810 as the business street address in filings with the Alabama Secretary of State.  Ms. Edwards

gave none of these entities her permission to use the address or any information about her business in the submission of these fraudulent applications.

26. Each instance of the submission of a fraudulent application is a separate predicate act and the receipt of monies from each application is a separate predicate act and taken together, show a pattern of racketeering activity.

<div align="center">

**COUNT ONE**
**THEFT BY DECEPTION**

</div>

27. The Plaintiff hereby realleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if the same were fully set forth herein.

28. The Defendants deliberately and willfully, without authorization or permission, did submit fraudulent applications and received monies from the federal government Covid-19 relief programs which were to have been sent to others, including $24,000 due to be paid to Paulette Edwards, with the intent to permanently deprive Edwards of the funds. Because these applications were submitted via the internet, the Defendants have committed wire fraud, a predicate act for RICO.

29. During the submission of the fraudulent applications, the Defendants did deliberately and willfully, make fraudulent misrepresentations to the Small Business Administration including claiming that they were obtaining the monies for and on behalf of Ms. Edwards and her Daycare.

30. The Defendants were aided and abetted by Mr. Bo Matthews and Ms. Barbara Matthews, who executed the applications as

<div align="center">8</div>

Landlord, including the one submitted purportedly for and on behalf of Ms. Edwards' Daycare. Each of the applications was predicated on a fictitious address and/or fictitious claims that the business was located at 4000 Pulaski Pike, Huntsville, Alabama 35810. The Defendants, acting together in this conspiracy with the Matthews, committed fraud as against the United States and Ms. Edwards. Since the applications were transmitted electronically, the Defendants have committed an act of wire fraud, a predicate act for RICO.

31. As a direct and proximate result of the theft of the aforesaid $24,000, Ms. Edwards has been deprived of the use of funds, forcing her to defend against claims of failing to pay rent, ejection and unlawful detainer. Ms. Edwards has thereby been injured and suffered damages.

WHEREFORE, PREMISES CONSIDERED, the Plaintiff demands judgment against the Defendants for compensatory and punitive damages in an amount to be determined by the Court, together with interest and costs of this action, including reasonable attorney's fees, and the award of such other, further, or different relief to which the Plaintiff may be entitled.

## COUNT TWO
## GROSS NEGLIGENCE BY SUITE ELEMENTS, LLC

32. The Plaintiffs hereby reallege and incorporate by reference each and every allegation contained in the preceding paragraphs as if the same were fully set forth herein.

33. Ms. Edwards alleges that the Defendants owed a duty to her arising out of: (1) the laws of the State of Alabama; and (2) public policy to conduct their operations with a minimum

9

standard of care, competency, and honesty. Furthermore, the interests of justice require that submissions like those made by the Defendants be conducted with systematic integrity and fairness.

34. Instead, the Defendants, acting through agents and employees, and specifically Ronnie Ellis and Brandi Matthews Ellis, deliberately, knowingly, and willfully obtained fraudulent Covid-19 monies in the name of Edwards; doing so even knowing such constituted fraud as against the United States government and Ms. Edwards.

35. Suite Elements, LLC, by and through its Members, agents, and employees, acted negligently, fraudulently, wantonly, and willfully to procure rental payment subsidies in the name of Ms. Edwards, without any authorization, and by utilizing stolen individual identities, and making fraudulent misrepresentations in conjunction with suppression of material facts.

36. The Defendants made false statements and misrepresentations to the Small Business Administration regarding the ownership and or control of the daycare.

37. The actions of Suite Elements, LLC which were taken by and through its Members, agents, and employees were executed in direct support of Ronnie Ellis' and Brandi Matthews Ellis' fraudulent scheme to divest Ms. Edwards of her money.

38. As a direct and proximate result of the aforesaid actions, Paulette Edwards has been deprived of a significant amount of income and has thereby been injured and suffered damages, which include significant loss of income, and the resulting inability to compete in the daycare market.

WHEREFORE, PREMISES CONSIDERED, the Plaintiff demands judgment against the Defendants for compensatory and punitive damages in an amount to be determined by the Court, together with interest and costs of this action, including reasonable attorney's fees, and the award of such other, further, or different relief to which the Plaintiffs may be entitled.

## COUNT THREE
## OUTRAGE

39. The Plaintiffs hereby reallege and incorporate by reference each and every allegation contained in the preceding paragraphs as if the same were fully set forth herein.

40. The conduct of the Defendants in defrauding Ms. Edwards by stealing her funds which resulted in the loss of: (1) earned funds and (2) significant future income is so outrageous and unconscionable as to shock the social conscience of the community. Furthermore, the conduct deviates from the socially accepted norms and standards of the community as a whole.

41. Ronnie Ellis and Brandi Matthews Ellis willingly conspired with Bo and Barbara Matthews to conduct their fraudulent scheme. Ronnie Ellis used Suite Elements, LLC as an instrumentality of fraud to assist in the pursuit of their scheme to defraud both Ms. Edwards and the federal government. Suite Elements, LLC's conduct is so outrageous and unconscionable as to shock the social conscience of the community, as well as deviating from the socially accepted norms and standards of the community as a whole.

42. As a direct and proximate result of the outrageous actions of the Defendants, Ms. Edwards has been injured and damaged.

WHEREFORE, PREMISES CONSIDERED, the Plaintiffs demand

11

judgment against the Defendants for compensatory and punitive damages in an amount to be determined by the Court, together with interest and costs of this action, including reasonable attorney's fees, and the award of such other, further, or different relief to which the Plaintiffs may be entitled.

## COUNT FOUR
## ACTS OF FRAUD AND MISREPRESENTATION

43. The Plaintiffs hereby reallege and incorporate by reference each and every allegation contained in the preceding paragraphs as if the same were fully set forth herein.

44. The Defendants committed fraud when they misrepresented that they were submitting the application for and on behalf of Ms. Edwards and her daycare.

45. The Defendants committed fraud when they misrepresented that the address of the remaining applicants was, for each, 4000 Pulaski Pike, Huntsville, Alabama 35810.

46. The Defendants committed fraud when they suppressed and hid from Ms. Edwards that they had submitted the application for and on her behalf.

47. The Defendants committed fraud when they secured the signatures of Bo and Barbara Matthews, as Landlords of the property on every application apart from that made for and on behalf of Ms. Edwards.

48. As a direct and proximate result of the enumerated fraudulent activities committed by the above-named Defendants, Ms. Edwards has been caused to suffer injury and damages, including, but not limited to, the loss of substantial sources of income and other monetary damages and hardships which she will continue to suffer

12

in the future.

WHEREFORE, PREMISES CONSIDERED, Ms. Edwards demands judgment against the Defendants for compensatory and punitive damages in an amount to be determined, together with interest and costs of this action, including reasonable attorney's fees, and the award of such other, further, or different relief to which she may be entitled.

## COUNT FIVE
## IDENTITY THEFT

49. The Plaintiffs hereby reallege and incorporate by reference each and every allegation contained in the preceding paragraphs as if set forth herein.

50. The Defendants stole the identities of Ms. Edwards and her Daycare by appropriating their personal and business information. They then used this information to make the Plaintiff purport to give permission to make the application for and on her behalf. The Defendants' identity-theft action was executed for the purpose of obtaining the Covid-19 funds due to be paid the Plaintiff without the knowledge or permission of Ms. Edwards.

51. As a direct and proximate result of the various identity theft activities enumerated herein, the Defendants have caused injury to the Plaintiff, the extent of which may not be known for some time.

WHEREFORE, PREMISES CONSIDERED, Ms. Edwards demands judgment against the Defendants for compensatory and punitive damages in an amount to be determined, together with interest and costs of this action, including reasonable attorney's fees, and the award of such other, further, or

different relief to which she may be entitled.

## COUNT SIX
## VIOLATION OF 18 USCA § 1962 [CIVIL RICO]

52. The Plaintiffs hereby reallege and incorporate by reference each and every allegation contained in the preceding paragraphs as if set forth herein.

53. Suite Elements, LLC is an enterprise engaged in business and the activities of which affect interstate commerce, to wit:  a limited liability company organized under the laws of the State of Alabama.

54. The combination of Defendants and the Matthews constitutes an association in fact, through which the Defendants have operated in concert, both individually and in combination, in such a way as to constitute an enterprise, the activities of which affect interstate commerce, to wit: a group of individuals and limited liability companies associated in fact to pursue the common purposes of committing:  (1) identity theft; (2) fraud; (3) wire fraud; (4) mail fraud; (5) outrageous conduct.  All of the various fraudulent acts by one or more of the foregoing named Defendants were integral parts of the overall plan for the confiscation and taking of the Plaintiff's funds and property.

55. The individual Defendants as persons within the meaning of 18 USCA § 1961(3), received income which was derived directly or indirectly, from a pattern of racketeering activity; and, as persons employed by, or associated with, the above named enterprises, conducted and participated in, both directly and indirectly, in the activities and conduct of the affairs of the above named enterprises through a pattern of racketeering activity in violation of 18 USCA

Case 21-81371-CRJ7   Doc 12   Filed 08/18/21   Entered 08/18/21 15:32:00   Desc Main
Document      Page 86 of 239

1962(c).

56. The multiple predicate acts which constitute this pattern of racketeering activity are as follows: (1) mail fraud, (2) wire fraud, (3) common law fraud, (4) and identity theft.   The predicate acts are set forth in detail, at the respective counts, *supra*.

57. The multiple predicate acts of racketeering set forth above all occurred within ten (10) years of one another, thereby constituting a pattern of racketeering activity within the meaning of 18 USCA § 1961(5).

58. Ms. Edwards was injured in her business or property by reason of this violation of 18 USCA § 1962, in that, as a direct and proximate result of the Defendants' illicit acts, she suffered damages from the theft of her identity and the theft of funds designated to be issued to her.

59. By reason of the Defendants' violation of 18 USCA § 1962, Ms. Edwards is entitled, pursuant to 18 USCA § 1964(c), to treble the amount of damages sustained:  (1) from the loss of the income, (2) from the loss of the monies due to be paid by the federal government under the Covid 19 relief programs, (3) from the costs and expenses of being compelled to defend the ejection and unlawful detainer action; (4) interest on all of the foregoing sums calculated at six percent (6%) per annum; and (5) reasonable attorneys' fee in connection herewith.

WHEREFORE, PREMISES CONSIDERED, the Plaintiff prays for an Order granting judgment against the Defendants, and each of them as follows:

> (1) For threefold the damages actually sustained from the Plaintiff's injuries. including a reasonable attorneys' fee;

15

(2) For such other and further relief as the Court may
deem appropriate pursuant to 18 USCA § 1964 and
in light of premises.

### COUNT SEVEN
### <u>UNJUST ENRICHMENT</u>

60. The Plaintiffs hereby reallege and incorporate by reference each and
every allegation contained in the preceding paragraphs as if set forth
herein.

61. The Defendants have been unduly enriched, at the expense of Ms.
Edwards, through the theft of at least $24,000 due to Ms. Edwards.

62. WHEREFORE, PREMISES CONSIDERED, Ms. Edwards demands
judgment against the Defendants for compensatory and punitive
damages in an amount to be determined, together with interest and
costs of this action, including reasonable attorney's fees, and the
award of such other, further, or different relief to which she may be
entitled.

**PLAINTIFF DEMANDS A TRIAL BY STRUCK JURY**

16

THIS LEASE is made between Bo and Barbara Mathews, herein called Lessor and Paulette Edwards herein called the Lessee.

Lessee hereby offers to lease from Lessor the premises situated in the City of Huntsville, County of Madison, State of Alabama, described as **4000 Pulaski Pike** upon the following TERMS and CONDITIONS:

1. TERM AND RENT. Lessor demises the above premises for a term of Thirty Six months, commencing August 1st 2018, and terminating on July 31st 2021, for a total amount of One Hundred Thirty Six Thousand Eight Hundred Dollars ($136,800.00) payable in installments of Thirty Eight Hundred Dollars_
($3800) Dollars in advance on the first day of each month for that month's rental during the term of this lease.

All rental payments shall be made to Lessor at the address specified above.

A penalty or late charge of ten percent (10%) will be due if rent is unpaid for the period of ten (10) days from due date. A penalty or late charge of twenty percent (20%) will be due if rent is unpaid for a period of thirty (30) days from due date.

2. ~~Lessee shall use and occupy the premises for child care facility. The premises shall not be used for any other purpose. Lessor represents that the premises may lawfully be used for such purpose.~~

3. CARE AND MAINTENANCE OF PREMISES. Lessee acknowledges that the premises are in good order and repair, unless otherwise indicated herein. Lessee shall, at his own expense and at all times, maintain the premises in good and safe condition including, plate glass, mirrors, windows, furnace filters, light bulbs, ballasts, and hardware. Lessee shall, at his own expense and at all times, also maintain the heating and cooling installations up to the sum of Five Hundred Dollars ($500.00) with Lessor paying the balance. Lessee agrees to change filters in the heating and cooling system in a timely manner. Lessee will use Lessor's choice of Repair Company for any work that may be required on HVAC system. Lessee shall surrender the same, at termination hereof, in as good condition as received, normal wear and tear accepted. Lessee shall be responsible for all repairs required, excepting the roof, exterior walls, structural foundations, and the parking lot, which shall be maintained by Lessor.

4. ALTERATIONS. Lessee shall not, without first obtaining the written consent of Lessor, make any alterations, additions, or improvements in, to or about the premises.

5. ORDINANCES AND STATUTES. Lessee shall comply with all statutes, ordinances and requirements of all municipal, state and federal authorities now in force, or which may hereafter be in force, pertaining to the premises, occasioned by or affecting the use thereof.

6. ASSIGNMENT AND SUBLETTING. Lessee shall not assign this lease or sublet any portion of the premises without prior written consent of the Lessor. Any such assignment or subletting without consent shall be void and, at the option of the Lessor, may terminate this lease.

7. ENTRY AND INSPECTION. Lessee shall permit Lessor or Lessor's agents to enter upon the premises at reasonable times and upon reasonable notice, for the purpose of inspecting the same, and will permit Lessor at any time within sixty (60) days prior to the expiration of this lease, to place upon the premises any usual "To Let" or "For Lease" signs, and permit persons desiring to lease the same to inspect the premises thereafter.

8. POSSESSION. If Lessor is unable to deliver possession of the premises at the commencement hereof, Lessor shall not be liable for any damage caused thereby, nor shall this lease be void or voidable, but Lessee shall not be liable for any rent until possession is delivered. Lessee may terminate this lease if possession is not delivered with in fifteen (15) days of the commencement of the term hereof.

9. INDEMNIFICATION OF LESSOR. Lessor shall not be liable for any damage or injury to Lessee, or any other person, or to any property, occurring on the demised premises or any part thereof, and Lessee agrees to hold Lessor harmless from any claims for damages, no matter how caused.



EXHIBIT

1

a ten-day written notice to Lessor in the event of cancellation or material change of coverage. To the maximum extent permitted by insurance policies that may be owned by Lessor or Lessee, Lessee and Lessor, for the benefit of each other, waive any and all rights of subrogation that might otherwise exist.

11. EMINENT DOMAIN. If the premises or any part thereof or any estate therein, or any other part of the building materially affecting Lessee's use of the premises, shall be taken by eminent domain, this lease shall terminate on the date when title vests pursuant to such taking. The rent, and any additional rent, shall be apportioned as of the termination date, and any rent paid for any period beyond that date shall be repaid to Lessee. Lessee shall not be entitled to any part of the award for such taking or any payment in lieu thereof, but Lessee may file a claim for any taking of textures and improvements owned by Lessee.

12. DESTRUCTION OF PREMISES. In the event of a partial destruction of the premises during the term hereof, from any cause, Lessor shall forthwith repair the same, provided that such repairs can be made within sixty (60) days under existing governmental laws and regulations, but such partial destruction shall not terminate this lease, except that Lessee shall be entitled to a proportionate reduction of rent while such repairs are being made, based upon the extent to which the making of such repairs shall interfere with the business of Lessee on the premises. If such repairs cannot be made with said sixty (60) days, Lessor, at his option, may make the same within a reasonable time, this lease continuing in effect with the rent proportionably abated as aforesaid, and in the event the Lessor shall not elect to make such repairs which cannot be made within sixty (60) days, this lease may be terminated at the option of either party. In the event that the building in which the demised premises may be situated is destroyed to an extent of not less than one-third of the replacement costs thereof, Lessor may elect to terminate this lease whether the demised premises be injured or not. A total destruction of the building in which the premise may be situated shall terminate this lease.

13. LESSOR'S REMEDIES ON DEFAULT. If Lessee defaults in the payment of rent, or any additional rent or assessments, or defaults in the performance of any of the other covenants or conditions hereof, Lessor may give Lessee notice of such default and if Lessee does not cure any such default within fifteen (15) days, after the giving of such notice (or if such other default is of such nature that it cannot be completely cured within such period, if Lessee does not commence such curing within such fifteen (15) days and thereafter proceed with reasonable diligence and in good faith to cure such default), then Lessor may terminate this lease on not less than thirty (30) days' notice to Lessee. On the date specified in such notice the term of this lease shall terminate, and Lessee shall then quit and surrender the premises to Lessor, without extinguishing Lessee's liability. If this lease shall have been so terminated by Lessor, Lessor may at any time thereafter resume possession of the premises by any lawful means and remove Lessee or other occupants and their effects. No failure to enforce any term shall be deemed a waiver.

14. SECURITY DEPOSIT. Lessor shall retain the security deposit of Thirty Eight Hundred Dollars ($3800) paid by Lessee as security for the performance of Lessee's obligations under this lease, including without limitation the surrender of possession of the premises to Lessor as herein provided. If Lessor applies any part of the deposit to cure any default of Lessee, Lessee shall on demand deposit with Lessor the amount so applied so that Lessor shall have the full deposit on hand at all time during the term of this lease.

15. ATTORNEY'S FEE. In case suit should be brought for recovery of the premises or for any sum due hereunder, or because of any act which may arise out of the possession of the premises, by either party, the prevailing party shall be entitled to all costs incurred in connection with such action, including a reasonable attorney's fee.

16. WAIVER. No failure of Lessor to enforce any term hereof shall be deemed to be a waiver.

17. NOTICES. Any notice which either party may or is required to give shall be given by mailing the same, postage prepaid, to Lessee at the premises, or Lessor at the address specified above, or at such other places as may be designated in writing by the parties from time to time.

2

Case 3:21-cv-00349-HNJ   Document 1   Filed 03/05/21   Page 18 of 24

Case 21-81371-CRJ7   Doc 12   Filed 08/18/21   Entered 08/18/21 15:32:00   Desc Main
Document   Page 90 of 239

20. FIRE EXTINGUISHER. Lessee shall, at Lessee's expense, install and maintain Fire Extinguishers that satisfy local Fire Codes.

21. SUBORDINATION. This lease is and shall be subordinated to all existing and future liens and encumbrances against the property.

22. ENTIRE AGREEMENT. The foregoing constitutes the entire agreement between the parties and may be modified only by a writing signed by both parties. The following Exhibits, if any, have been made a part of this lease before the parties' execution hereof:

SIGNED the _29th_ day of _MAY_, 20__

By: _William C. Mathews_, Lessor
       Bo Mathews

By: _Dan B Edwards_, Lessee

Witness: _____

Witness: _____

Name of Principal _Paulette Edwards_

Tax ID Number or SSN of Principal ▓▓▓▓▓▓

Driver's License Number ▓▓▓▓▓▓

Former Business Address _2084 Washington Street_

Business References and phone numbers _____

Email Address _justfourkidz11@yahoo.com_

Home Address ▓▓ _Baites Road_ ▓▓ _35973_

Home and Cell Phone Numbers _256-_ ▓▓▓▓

Emergency contact _Broderick Edwards 205-_ ▓▓▓▓

3



003603.273994.448859.15754 1 MB 0.439 530

| | |
|---|---|
| Contact us | 800-829-1040 |
| Your Caller ID | |
| Page 1 of 3 | 29H |

PAULETTE R EDWARDS

HUNTSVILLE AL 35805-5504

003603

Message about your 2018 tax return

# We're holding your refund until we finish reviewing your tax return

We've received your 2018 tax return. We're holding your refund until we finish verifying the accuracy of your return.

We selected your return to verify one or more of the following you may have reported:

- Income
- Income tax withholding
- Tax credits
- Business income

## What you need to know

We'll contact you or your authorized representative if we have questions.

---

## What you need to do

### If you filed the tax return

You don't need to do anything at this time. We understand your tax refund is very important to you and we'll work to complete our review as quickly as possible.

We could take up to 60 days to complete this review. Please don't contact us prior to 60 days from the date of this notice since we won't be able to provide you any additional information.

You can check your refund status at www.irs.gov/refunds or the IRS2Go mobile app for smart phones.

Once we finish our review, we may send your refund, ask for additional information, or deny all or part of your refund. If you don't agree with the denial, you'll have an opportunity to appeal.

If you haven't received your refund or heard from us after 60 days, you can call us at the number listed above.

Continued on back...

PLAINTIFF'S EXHIBIT

2



| | |
|---|---|
| Notice | CP63 |
| Tax Year | 2019 |
| Notice date | February 24, 2020 |
| Social Security number | XXX-XX-0993 |
| To contact us | 866-897-3315 |
| Your Caller ID | |
| Page 1 of 2 | 18H |



Department of the Treasury
Internal Revenue Service
Austin, TX 78714-9338

IRS

211241.226659.303545.11833 1 AB 0.419 370





PAULETTE R EDWARDS

HUNTSVILLE AL 35805-5504

211241

We still haven't received your 2018 Form 1040

# We're holding your 2019 tax refund

Our records show that you didn't file your 2018 Form 1040. As a result, we're holding your 2019 tax refund until we can determine whether you owe additional taxes for 2018.

Please file your 2018 tax return, or we may determine your tax for you.

**What you need to do**

File your 2018 tax return, along with any supporting forms and schedules by March 05, 2020. Consider filing electronically though an e-file provider if it's within 2 years from the original due date of the return.

Mail your return to:

Internal Revenue Service
Stop 5501
P.O. Box 149338
Austin, TX 78714-9338

**If we don't hear from you**

If we don't receive your tax return or a valid reason for not filing by March 05, 2020, we may determine your tax for you based on information we've received from third parties. This means you may not receive certain exemptions, deductions, or credits that you would otherwise receive if you filed your own tax return.

**Next steps**

Once you file your 2018 tax return, we'll determine if you owe additional taxes. This may take up to 12 weeks.

If you owe tax or other debts we're required to collect, we may apply all or part of your refund to the amount you owe. You'll receive a notice explaining how we applied the money and a check for the remaining refund, if there is one.

| Form **3949-A** (October 2020) | Department of the Treasury - Internal Revenue Service<br>**Information Referral**<br>*(See instructions on reverse)* | OMB Number<br>1545-1960 |
|---|---|---|

Use this form to report suspected tax law violations by a person or a business.

**CAUTION: READ THE INSTRUCTIONS BEFORE COMPLETING THIS FORM. THERE MAY BE OTHER MORE APPROPRIATE FORMS SPECIFIC TO YOUR COMPLAINT.**
**(For example, if you suspect your identity was stolen, use ____.)**

## Section A – Information About the Person or Business You Are Reporting

Complete 1, if you are reporting an Individual. Complete 2, if you are reporting a business only. Complete 1 and 2 if you are reporting a business and its owner.
*(Leave blank any lines you do not know.)*

| 1a. Name of individual<br>William P. Matthews | b. Social Security Number/TIN<br>~~████████~~ | c. Date of birth<br>██/██/51 |
|---|---|---|
| d. Street address<br>██ Coronado Ave SE | e. City<br>Huntsville | f. State<br>AL ▼ | g. ZIP code<br>35802 |

| h. Occupation<br>Retired | i. Email address<br>barbaramatthews044@gmail.com |
|---|---|

| j. Marital status *(check one, if known)*<br>[X] Married  [ ] Single  [ ] Head of Household  [ ] Divorced  [ ] Separated | k. Name of spouse<br>Barbara Matthews |
|---|---|

| 2a. Name of business | b. Employer Tax ID number (EIN) | c. Telephone number |
|---|---|---|
| d. Street address | e. City | f. State ▼ | g. ZIP code |
| h. Email address | i. Website | | |

## Section B – Describe the Alleged Violation of Income Tax Law

**3. Alleged Violation of Income tax law.** (Check all that apply.)

| | | | |
|---|---|---|---|
| [ ] False Exemption | [ ] Unsubstantiated Income | [X] Unreported Income | [X] Failure to Withhold Tax |
| [ ] False Deductions | [ ] Earned Income Credit | [ ] Narcotics Income | [X] Failure to File Return |
| [ ] Multiple Filings | [ ] Public/Political Corruption | [ ] Kickback | [X] Failure to Pay Tax |
| [ ] Organized Crime | [ ] False/Altered Documents | [ ] Wagering/Gambling | [ ] Other *(describe in 5)* |

**4. Unreported income and tax years**
Fill in Tax Years and dollar amounts, if known *(e.g., TY 2010- $10,000)*

TY _2018_ $ _19,000.00_ TY _2019_ $ _45,600.00_ TY _2020_ $ _20,600.00_ TY ____ $ ____ TY ____ $ ____ TY ____ $ ____

**5. Comments** *(Briefly describe the facts of the alleged violation-Who/What/Where/When/How you learned about and obtained the information in this report. Attach another sheet, if needed.)*

I have been asking William P. Matthews for a 1099 since 2018 he will not give me one. He and his wife Barbara Matthews stated that they will not give me one because they dont have to. It was also brought to my attention that they are getting Soc.Sec Retirement and are also recieving Medicaid and Medicare and they dont want to report that they have extra income because they will not qualify for the benefits they recieve. They have several properties that recieves income from. They also have alot of daycares registered to the 4000 Pulaski Pike NW, Huntsville AL 35810 address and they are not operating in that building as a daycare is. They have been avoiding paying taxes for years. It is not fair that they continue to fraud the IRS and commit tax evasion. Some thing has to be done please. My 2018 and 2019 taxes are on hold because they refuse to give me this information they have not reported . One more bank that he has an account at is Compass Bank 1002 Jordan Lane Huntsville, AL 35801. I also have a list of all there income properties that they are getting payments from every month. They also have serveal fake businesses that are registered to the daycares address. I have proof of that too.

**6. Additional information.** Answer these questions, if possible. Otherwise, leave blank.

a. Are books/records available? *(If available, do not send now. We will contact you, if needed for an investigation.)*  [X] Yes  [ ] No
b. Do you consider the taxpayer dangerous  [ ] Yes  [ ] No
c. Banks, Financial Institutions used by the taxpayer

| Name<br>BancorpSouth | Name<br>CB&S Bank |
|---|---|
| Street address<br>401 Franklin Street | Street address<br>521 Madison Street SE |
| City<br>Huntsville | State<br>AL ▼ | ZIP code<br>35801 | City<br>Huntsville | State<br>AL ▼ | ZIP code<br>35801 |

## Section C – Information About Yourself

*(We never share this information with the person or business you are reporting.)*
This information is not required to process your report, but would be helpful if we need to contact you for any additional information.

| 7a. Your name<br>Paulette Edwards | b. Telephone number<br>256-███████ | c. Best time to call<br>Mornings |
|---|---|---|
| d. Street address<br>4000 Pulaski Pike NW | e. City<br>Huntsville | f. State<br>AL ▼ | g. ZIP code<br>35810 |

**Print and send your completed form to: Internal Revenue Service**
PO Box 3801
Ogden, UT 84409

**EXHIBIT 3**

| Catalog Number 47872E | www.irs.gov | Form **3949-A** (Rev. 10-2020) |
|---|---|---|

Bo Matthews Center of Excellce

Street address

4000 Pulaski Pike NW

| City | State | ZIP code | Date of referral |
|------|-------|----------|------------------|
| Huntsville | AL | 35810 | October 16, 2020 |

2. Organization's Employer Identification Number (EIN)

xx-xxx6332

3. Nature of violation

[X] Directors/Officers/Persons are using income/assets for personal gain

[ ] Organization is engaged in commercial, for-profit business activities

[ ] Income/Assets are being used to support illegal or terrorist activities

[ ] Organization is involved in a political campaign

[ ] Organization is engaged in excessive lobbying activities

[ ] Organization refused to disclose or provide a copy of Form 990

[X] Organization failed to report employment, income or excise tax liability prope

[ ] Organization failed to file required federal tax returns and forms

[X] Organization engaged in deceptive or improper fundraising practices

[X] Other (describe)

    William P. Matthews is still getting donations for the Bo Matthews Center of Excel
    Pike NW Huntsville AL 35810 a matter of fact it does not exsist and he is still getti
    stated to use for. He has been frauding people for years. Bobby Patton the Registen

4. Details of violation

Name(s) of person(s) involved

William P. Matthews and Barbara Matthews

Organizational title(s)

Incorporator and Member

| Date(s) | Dollar amount(s) (if known) |
|---------|------------------------------|
| from 2018 to October 2020 | |

Description of activities

William P. Matthews and Barbara Matthews is still acting like this organization still exists at 4000 Pulaski pike and it does not and they are still getting donations for the Bo Matthews Center of Excellence and it does not exists. The have several bank accounts where they put money. CB&S Bank, BancorpSouth Bank and Compass Bank

5. Submitter information

Name

Occupation or business

Street address

| City | State | ZIP code | Telephone number |
|------|-------|----------|------------------|
| | | | |

[X] I am concerned that I might face retaliation or retribution if my identity is disclosed

6. **Submission and documentation:** The completed form, along with any supporting documentation, may be mailed to IRS EO Classification, Mail Code 4910DAL, 1100 Commerce Street Dallas, TX 75242-1198, faxed to 214-413-5415 or emailed to eoclass@irs.gov. **Disclaimer Notice:** Your email submission of Form 13909 and attachments are not encrypted for security.

Catalog Number 50614A             www.irs.gov             Form **13909** (Rev. 12-2016)

From: USALAM-NCDF-POC (usalam.ncdf-poc@usdoj.gov)

To: ⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛

Date: Wednesday, November 4, 2020, 03:57 PM CST

Hi Paulette,

This is a copy of the disaster fraud complaint that you submitted.
www.justice.gov/DisasterComplaintform

https://mail.yahoo.com/d/folders/57/messages/160167?reason=invalid_cred

1

PLAINTIFF'S
EXHIBIT
_4_



FILED
2021 Mar-05 PM 04:28
U.S. DISTRICT COURT
N.D. OF ALABAMA

## Victim Information

Name: Paulette Edwards
Are you reporting on behalf of a business? Yes
Business Name: Just 4 The Kids Daycare
Is the incident currently impacting business Yes
operations?
Age: [None]
Address: 4000 Pulaski Pike NW
Address (continued):
Suite/Apt./Mail Stop:
City: Huntsville
County: Madison
Country: United States of America
State: Alabama
Zip Code/Route: 35810
Phone Number: 256█████
Email Address: justfourkidz11@yahoo.com
Business IT POC, if applicable:
Other Business POC, if applicable:

## Description of Incident

Provide a description of the incident and how you were victimized. Provide information not captured elsewhere in this complaint form.

I have a small daycare. I have tried to apply for assistance but was denied. I also found out that William P. Matthews, his wife, Barbara Matthews and his daughter Brandi L. Matthews has used my legal business address for apply and they have also received the Pandemic and Covid19 money. They do not have a business in this building, the only business that operates in this building is my daycare. The Matthews have told me that there is nothing that I can do about them getting the money because the government said anyone can apply; but the problem is they fraudulently filed for federal aid using the property located at 4000 Pulaski Pike, Huntsville, AL 35810 without my permission because they DO NOT operate a business here and they do not have a license through the City of Huntsville to Operate a business in the City. It is not right that they can use my daycare address and my daycare information to receive federal aid money and my daycare get nothing.
Brandi L. Matthews admitted to me in front of 2 witness that she used my business address to get federal money and covid19 money for her business that does not exist. William P. Matthews also told a family member that they got federal money using my business name and address and there is nothing that I can do about it.

I would like to report this fraud and I would a investigation to be done. They do not have a business, they do not have a business, license and they are not in operation.

Which of the following were used in this incident? (Check all that apply.)
☐ Spoofed Email
☐ Similar Domain

https://complaint.ic3.gov/default.aspx#

1/3

complaint.

...ginals should be retained for use by law enforcement agencies.

## Information About The Subject(s) Who Victimized You

Name: William P. Matthews
Business Name:
Address: �—▬ Coronado Ave
Address (continued):
Suite/Apt./Mail Stop:
City: Huntsville
Country: United States of America
State: Alabama
Zip Code/Route: 35802
Phone Number: 503▬▬▬8
Email Address:
Website:
IP Address:

Name: Barbara Matthews
Business Name:
Address: ▬▬ Coronado Ave
Address (continued):
Suite/Apt./Mail Stop:
City: Huntsville
Country: United States of America
State: Alabama
Zip Code/Route: 35802
Phone Number: 720▬▬▬
Email Address: barbaramatthews▬▬@gmail.com
Website:
IP Address:

Name: Brandi L. Matthews
Business Name:
Address: ▬▬ Gladstone Drive NE
Address (continued):
Suite/Apt./Mail Stop:
City: Huntsville
Country: United States of America
State: Alabama
Zip Code/Route: 35811
Phone Number:
Email Address:
Website:

2/3

https://complaint.ic3.gov/default.aspx#

If an email was used in this incident, please provide a copy of the entire email including full email headers.

[No response provided]

Are there any other witnesses or victims to this incident?

Yes, Kevin ▓▓▓▓ and Liz ▓▓▓▓

If you have reported this incident to other law enforcement or government agencies, please provide the name, phone number, email, date reported, report number, etc.

I have sent a email to file a complaint to disaster@leo.gov and USAHI.COVID19@usdoj.gov

☐ Check here if this an update to a previously filed complaint:

---

## Who Filed the Complaint

Were you the victim in the incident described above? Yes

---

## Digital Signature

By digitally signing this document, I affirm that the information I provided is true and accurate to the best of my knowledge. I understand that providing false information could make me subject to fine, imprisonment, or both. (Title 18, U.S. Code, Section 1001)

Digital Signature: Paulette R. Edwards

---

Thank you for submitting your complaint to the IC3. Please save or print a copy for your records. **This is the only time you will have to make a copy of your complaint.**

Paulette R Edwards
c/o Just Four Kidz
4008 Sewall Dr
Huntsville, AL 35805

November 12,2020

Dear Paulette R Edwards,

Paulette filed 2018 taxes with Money Back Taxes. I had to prepare and amended on her taxes due to
the circumstances.

2018 tax information:

$ ▓78 federal refund
$ -▓241 federal owed

Fees for Money Back Taxes for 2018

$ ▓regular filing fees
$ ▓amended fees
$ ▓service rendered
$ ▓62 total owed for 2018

Warm Regards,

**Money Back Taxes/Vurnice Jowers**
Tax Prepare

moneybackjowers@yahoo.com

PLAINTIFF'S
EXHIBIT
5

PAULETTE R EDWARDS

| A | Principal business or profession, including product or service (see instructions) | | B Enter code from instructions |
|---|---|---|---|
| Just 4 Kids Daycare | | | |
| C | Business name. If no separate business name, leave blank. | | D Employer ID number (EIN) (see instr.) |

E  Business address (including suite or room no.) ▶ 2084 Washington
   City, town or post office, state, and ZIP code   HUNTSVILLE AL 35811-

F  Accounting method:   (1) ☐ Cash   (2) ☒ Accrual   (3) ☐ Other (specify) ▶

G  Did you "materially participate" in the operation of this business during 2018? If "No," see instructions for limit on losses . . . . ▶ ☒ Yes  ☐ No

H  If you started or acquired this business during 2018, check here . . . . . . . . . . . . . . . . . . . . ▶ ☐

I  Did you make any payments in 2018 that would require you to file Form(s) 1099? (see instructions) . . . . . . . . . ☐ Yes  ☒ No

J  If "Yes," did you or will you file required Forms 1099? . . . . . . . . . . . . . . . . . . . . . . . ☐ Yes  ☐ No

## Part I  Income

| | | | |
|---|---|---|---|
| 1 | Gross receipts or sales. See instructions for line 1 and check the box if this income was reported to you on Form W-2 and the "Statutory employee" box on that form was checked . . . . . . . . ▶ ☐ | 1 | ▬▬▬ |
| 2 | Returns and allowances | 2 | |
| 3 | Subtract line 2 from line 1 | 3 | ▬▬▬ |
| 4 | Cost of goods sold (from line 42) | 4 | |
| 5 | **Gross profit.** Subtract line 4 from line 3 . . . . . . . . . . . . . | 5 | ▬▬▬ |
| 6 | Other income, including federal and state gasoline or fuel tax credit or refund (see instructions) . . . . | 6 | |
| 7 | **Gross income.** Add lines 5 and 6 . . . . . . . . . . . . . . . . ▶ | 7 | ▬▬▬ |

## Part II  Expenses. Enter expenses for business use of your home only on line 30.

| | | | | | | |
|---|---|---|---|---|---|---|
| 8 | Advertising . . . . . | 8 | 2,747 | 18 | Office expense (see instructions) . | 18 | 1,158 |
| 9 | Car and truck expenses (see instructions) | 9 | 2,324 | 19 | Pension and profit-sharing plans | 19 | 11,396 |
| 10 | Commissions and fees . . | 10 | | 20 | Rent or lease (see instructions): | | |
| 11 | Contract labor (see instructions) | 11 | | a | Vehicles, machinery, and equipment . . | 20a | |
| 12 | Depletion . . . . . | 12 | | b | Other business property . . . | 20b | 33,400 |
| 13 | Depreciation and section 179 expense deduction (not included in Part III) (see instructions) | 13 | | 21 | Repairs and maintenance . . . | 21 | 27,183 |
| | | | | 22 | Supplies (not included in Part III) | 22 | 18,300 |
| | | | | 23 | Taxes and licenses . . . . . | 23 | 4,069 |
| 14 | Employee benefit programs (other than on line 19). . | 14 | | 24 | Travel and meals: | | |
| | | | | a | Travel . . . . . . . . . | 24a | |
| 15 | Insurance (other than health) . | 15 | 2,320 | b | Deductible meals (see instructions) . . . . . . . . . | 24b | |
| 16 | Interest (see instructions): | | | 25 | Utilities . . . . . . . . | 25 | 9,314 |
| a | Mortgage (paid to banks, etc.) . | 16a | | 26 | Wages (less employment credits) . | 26 | ▬▬▬ |
| b | Other . . . . . . . | 16b | | 27a | Other expenses (from line 48) . . | 27a | 6,097 |
| 17 | Legal and professional services . | 17 | | b | Reserved for future use . . . | 27b | |

| | | | |
|---|---|---|---|
| 28 | **Total expenses** before expenses for business use of home. Add lines 8 through 27a . . . . . . ▶ | 28 | 200,87? |
| 29 | Tentative profit or (loss). Subtract line 28 from line 7 . . . . . . . . . . . . . . . | 29 | 7,223 |
| 30 | Expenses for business use of your home. Do not report these expenses elsewhere. Attach Form 8829 unless using the simplified method (see instructions). **Simplified method filers only:** enter the total square footage of: (a) your home: _____ and (b) the part of your home used for business: _____. Use the Simplified Method Worksheet in the instructions to figure the amount to enter on line 30. | 30 | |
| 31 | **Net profit or (loss).** Subtract line 30 from line 29. • If a profit, enter on both **Schedule 1 (Form 1040), line 12** (or **Form 1040NR, line 13**) and on **Schedule SE, line 2.** (If you checked the box on line 1, see instructions). Estates and trusts, enter on **Form 1041, line 3.** • If a loss, you **must** go to line 32. | 31 | 7,223 |
| 32 | If you have a loss, check the box that describes your investment in this activity (see instructions). • If you checked 32a, enter the loss on both **Schedule 1 (Form 1040), line 12** (or **Form 1040NR, line 13**) and on **Schedule SE, line 2.** (If you checked the box on line 1, see the line 31 instructions). Estates and trusts, enter on **Form 1041, line 3.** • If you checked 32b, you **must** attach Form 6198. Your loss may be limited. | 32a ☐ All investment is at risk. 32b ☐ Some investment is not at risk. |  |

For Paperwork Reduction Act Notice, see the separate instructions.   Schedule C (Form 1040) 2018
BCA

| | | | |
|---|---|---|---|
| 34 | Was there any change in determining quantities, costs, or valuations between opening and closing inventory? | | Yes ☐ No ☐ |
| | If "Yes," attach explanation | | |
| 35 | Inventory at beginning of year. If different from last year's closing inventory, attach explanation | 35 | |
| 36 | Purchases less cost of items withdrawn for personal use | 36 | |
| 37 | Cost of labor. Do not include any amounts paid to yourself | 37 | |
| 38 | Materials and supplies | 38 | |
| 39 | Other costs | 39 | |
| 40 | Add lines 35 through 39 | 40 | |
| 41 | Inventory at end of year | 41 | |
| 42 | Cost of goods sold. Subtract line 41 from line 40. Enter the result here and on line 4 | 42 | |

**Part IV  Information on Your Vehicle.** Complete this part only if you are claiming car or truck expenses on line 9 and are not required to file Form 4562 for this business. See the instructions for line 13 to find out if you must file Form 4562.

43  When did you place your vehicle in service for business purposes? (month, day, year) ▶ 01/04/2017

44  Of the total number of miles you drove your vehicle during 2018, enter the number of miles you used your vehicle for:

a  Business  4264  b  Commuting (see instructions) _____  c  Other _____

45  Was your vehicle available for personal use during off-duty hours? ☐ Yes  ☒ No

46  Do you (or your spouse) have another vehicle available for personal use? ☒ Yes  ☐ No

47a  Do you have evidence to support your deduction? ☒ Yes  ☐ No

b  If "Yes," is the evidence written? ☒ Yes  ☐ No

**Part V  Other Expenses.** List below business expenses not included on lines 8–26 or line 30.

| | | |
|---|---|---|
| ADT | | 645 |
| van gas | | 400 |
| bank service | | 50 |
| cleaning service | | 850 |
| fire & security | | 1,680 |
| trash | | 2,472 |
| | | |
| | | |
| | | |
| 48 | Total other expenses. Enter here and on line 27a | 48 | 6,097 |

Schedule C (Form 1040) 2018

| 34 | Was there any change in determining quantities, costs, or valuations between opening and closing inventory? If "Yes," attach explanation | | ☐ Yes | ☐ No |
|---|---|---|---|---|

| 35 | Inventory at beginning of year. If different from last year's closing inventory, attach explanation . . | 35 | |
|---|---|---|---|
| 36 | Purchases less cost of items withdrawn for personal use . . . . . . . . . . . . | 36 | |
| 37 | Cost of labor. Do not include any amounts paid to yourself . . . . . . . . . . | 37 | |
| 38 | Materials and supplies . . . . . . . . . . . . . . . . . . . . . | 38 | |
| 39 | Other costs . . . . . . . . . . . . . . . . . . . . . . . | 39 | |
| 40 | Add lines 35 through 39 . . . . . . . . . . . . . . . . . . . | 40 | |
| 41 | Inventory at end of year . . . . . . . . . . . . . . . . . . . | 41 | |
| 42 | **Cost of goods sold.** Subtract line 41 from line 40. Enter the result here and on line 4 . . . . | 42 | |

**Part IV** Information on Your Vehicle. Complete this part only if you are claiming car or truck expenses on line 9 and are not required to file Form 4562 for this business. See the instructions for line 13 to find out if you must file Form 4562.

43 When did you place your vehicle in service for business purposes? (month, day, year) ▶ 01/04/2019

44 Of the total number of miles you drove your vehicle during 2019, enter the number of miles you used your vehicle for:

a Business 6213 b Commuting (see instructions) _____ c Other _____

| 45 | Was your vehicle available for personal use during off-duty hours? . . . . . . . . . . | ☐ Yes | ☒ No |
|---|---|---|---|
| 46 | Do you (or your spouse) have another vehicle available for personal use? . . . . . . . . . | ☒ Yes | ☐ No |
| 47a | Do you have evidence to support your deduction? . . . . . . . . . . . . . . | ☒ Yes | ☐ No |
| b | If "Yes," is the evidence written? . . . . . . . . . . . . . . . . . | ☒ Yes | ☐ No |

**Part V** Other Expenses. List below business expenses not included on lines 8–26 or line 30.

| cleaning service | | 850 |
|---|---|---|
| acorsen fire and security | | 1,675 |
| motels | | 30,000 |
| lease | | 2,473 |
| uti | | 480 |
| loan | | 4,232 |
| | | |
| | | |
| | | |
| 48 | **Total other expenses.** Enter here and on line 27a . . . . . . . . . . | 48 | 39,714 |

Schedule C (Form 1040 or 1040-SR) 2019

811 - Ay Ave
Huntsville, AL 35801
256-xxx-xxxx

Paulette R Edwards
c o Just Four Kidz
4008 Sewall Dr
Huntsville, AL 35805

November 12,2020

Dear Paulette R Edwards,

Paulette filed 2019 taxes with Money Back Taxes. I had to prepare and amended on her taxes due to
the circumstances.

2019 tax information:

$ 7146 federal refund
$ 850 federal owed

Fees for Money Back Taxes for 2019

$ 92 regular filing fees
$ 90 amended fees
$ service rendered
$ 92 total owed for 2019

Warm Regards,

**Money Back Taxes/Vurnice Jowers**
Tax Prepare

moneybackjowers@yahoo.com

| | | | |
|---|---|---|---|
| 10 Type of Incident or Offense | Felony ☐ Misdemeanor ☐ Attempted ☐ Completed | 1 2 3 | 13A-8-192 |

Identity Theft

| 14 Type of Incident or Offense | ☐ Felony ☐ Misdemeanor ☐ Attempted ☐ Completed | 15 Degree (Circle) 1 2 3 | 16 UCR Code: | 17 State Code/Local Ordinance |

NA NA

**EVENT**

18 Place of Occurrence ☐ Check here if event occurred at victim's residence

4000 Block of Pulaski Pike

If offense occurred at victim's residence, then only the approximate location should be listed in this section. (For example, a block number should be entered.) If the offense occurred elsewhere, then the specific address should be listed here.

Victim Demographics (Where victim is an individual)

| 19 Sex | 20 Race | 21 Ethnicity | 22 Multiple Victims | 23 Age |
|---|---|---|---|---|
| ☐ M ☐ F | ☐ W ☐ I A ☐ B ☐ | ☐ Hispanic ☐ Other | ☐ LE Officer | |

| 24 Offender Suspected of Using | | 25 Gang | 26 Hate Bias | 27 Bias Code |
|---|---|---|---|---|
| ☐ Alcohol ☐ Computer Equipment | ☐ Drugs ☐ N/A | ☐ Juvenile Gang ☐ Adult Gang ☐ None/Unknown | ☐ Yes ☐ No | |

| 29 Point of Entry | 30 Method of Entry | 31 Local Use | 32 Lighting | 33 Weather | 34 Location Type (Circle) | | |
|---|---|---|---|---|---|---|---|
| ☐ Door ☐ Roof ☐ Window ☐ Other | ☐ Forcible ☐ Attempted Forcible ☐ No Force | | 1 Natural 2 Moon 3 Artificial Exterior 4 Artificial Interior 5 Unknown | 1 Clear 2 Cloudy 3 Rain 4 Fog 5 Snow 6 Hail 7 Unknown | 01 Terminal 02 Bank 03 Bar 04 Church 05 Commercial 06 Construction 07 Conv Store 08 Dept Store | 09 Drug Store 10 Field/Woods 11 Govt/Public Building 12 Supermarket 13 Highway/Street 14 Hotel/Motel 15 Jail/Prison 16 Lake/Waterway | 17 Liquor Store 18 Parking Lot/Garage 19 Storage Facility 20 Residence/Home 21 Restaurant 22 School/College 23 Service/Gas Station 24 Specialty Store 25 Other/Unknown |

| 35 Occurred from MM/DD/YY | 36 Time of Event | 37 Day of Week | 
|---|---|---|
| 12 04 20 | 08:00 ☐AM ☐PM ☒MIL | S M T W T F S 1 2 3 4 5 6 7 ☒ |

| 38 Occurred to MM/DD/YY | 39 Time of Event | 40 Day of Week | 41 # Premises Entered (Burglary) |
|---|---|---|---|
| 12 04 20 | 18:00 ☐AM ☐PM ☒MIL | S M T W T F S 1 2 3 4 5 6 7 ☒ | |

| 42 Type Criminal Activity | | 43 Victim Type | |
|---|---|---|---|
| B Buying/Receiving C Cultivating/Manu | D Distributing/Selling E Exploiting Children | O Operating/Promoting P Possessing/Concealing | T Transporting/Importing U Using/Consuming |

43 Victim Type: ☒Individual  F Financial (Bank)  R Religious Org
B Business  G Government  S Society

**PROPERTY**

| 44 Loss Code | 45 Property Code | 46 Qty | 47 | Property Description Include Make, Model, Size Type, Serial #, Color, Drug Type, Drug Qty, Etc. | 48 Dollar Value | | 49 Recovered | |
|---|---|---|---|---|---|---|---|---|
| | | | | | Stolen | Damaged | Date | Value |
| | | | | | | | | |

NO1728   1/29/21

☐ Continued on Supplement

Loss Code (Enter letter in loss code column)
S Stolen  B Burned
R Recovered  F Forged/
D Damaged/  Counterfeited
  Destroyed  N None
C Confiscated/
  Seized

Property Code (Enter # in property type column)
01 Aircraft
02 Alcohol
03 Autos
04 Bicycles
05 Buses
06 Clothes
07 Computer
08 Consumables
09 Credit Card
10 Drugs
11 Drug Equip
12 Farm Equip
13 Firearms
14 Gambling Equipment
15 Heavy Construction
16 Household Goods
17 Jewelry
18 Livestock
19 Merchandise
20 Money
21 Negotiable Instrument
22 Non-negotiable Instru
23 Office Equipment
24 Other Motor Vehicle
25 Purse/Wallet
26 Radios/TV/VCR
27 Recordings
28 RV's
29 Structure - Single Occupancy Dwelling
30 Structure - Other Dwelling
31 Structure - Other Commercial
32 Structure - Industrial/ Manufacturing
33 Structure - Public/Community
34 Structure - Storage
35 Structure - Other
36 Tools - Power/Hand
37 Trucks
38 Vehicle Parts/Accessories
39 Watercraft
77 Other

**VEHICLES**

| 50 Stolen Vehicle Only | 50 Area Stolen | 51 Ownership verified by: | 52 Veh. Categories | |
|---|---|---|---|---|
| | ☐ Business | ☐ Residence ☐ Rural | ☐ Tag Receipt ☐ Bill of Sale | ☐ Title ☐ Other | ☐ Recovered ☐ Stolen ☐ Suspect's Vehicle | ☐ Victim's Vehicle ☐ Unauthorized Use | ☐ Abandoned |

| 53 Vehicle Year | 54 Vehicle Make | 55 Vehicle Model | 56 Number Veh Stolen | 57 Vehicle Description |
|---|---|---|---|---|

| 58 Vehicle Style | 59 Vehicle Color | | 60 License | 61 LST | 62 LIY | 63 Tag Color |
|---|---|---|---|---|---|---|
| | Top | Bottom | | | | |

| 64 Vehicle VIN Number | 65 Warrant Signed ☐ Yes ☐ No | Warrant Number |
|---|---|---|

| Motor Vehicle Recovery Only Required For 24XX UCR Code | 66 Stolen in your jurisdiction? ☐ Yes ☐ No  Where? | 67 Recovered in your jurisdiction? ☐ Yes ☐ No  Where? |
|---|---|---|

**ADMINISTRATION**

| 68 Case # | 69 SFX | 70 Case # | 71 SFX | 72 Case # | 73 SFX |
|---|---|---|---|---|---|

| 74 Case Status | 75 Multiple Cases Closed Listed Above ☐ Multiple Cases Closed Listed On Supplement ☐ | | 79 Reporting Officer | Officer ID Number |
|---|---|---|---|---|
| ☒ 1 Pending 2 Inactive 3 Closed | | | M. Mueller | 04652 |

| 77 Case Disposition | 78 Exceptional Clearance (Circle One) | 80 Assisting Officer | Officer ID Number |
|---|---|---|---|
| 1 Cleared by Arrest (Juvenile) 2 Cleared by Arrest (Adult) 3 Unfounded 4 Exceptional Clearance 5 Administratively Cleared | A Suspect/Offender Dead B Prosecution Declined/ Other Prosecution C Extradition Denied D Victim Refused to Cooperate E Juvenile (No Custody) F Death of Victim | | |

| 76 Entered NCIC/ACJIC ☐ Yes ☐ No | | 81 Supervisor Approval | Officer ID Number |
|---|---|---|---|
| Date (MM/DD/YY) | | 82 Watch Commander | Officer ID Number |

NIC/AIN #: _____

ACJIC - 11-08

**PLAINTIFF'S EXHIBIT**
6

THIS SIDE OF FORM IS CONFIDENTIAL UNLESS RELEASED AT THE
DISCRETION OF THE CHIEF LAW ENFORCEMENT OFFICER

| Incident/Offense Report - Continued | 83 Date of Report (MM/DD/YY) | 84 Time of Report | 85 Agency Case Number | 86 Suffix | 87 | Offender Suspect Missing Person | Check if Multiple |
|---|---|---|---|---|---|---|---|
| | 01 05 21 | 13 20 ☑AM ☐PM ☐Mil | 20 211-003 89 | | | | |

| 88 Reported By (Name, First, Middle Name) | ☐ Victim Or | | 89 Suffix | 90 ☐ Resident ☐ Non-Resident | 91 Home Phone | 92 Work Phone |
|---|---|---|---|---|---|---|
| | | | | | | 93 Other Phone |

**VICTIM INFORMATION**

| 94 Victim # | 95 Victim (Last, First, Middle Name) | | 96 Suffix | 97 Address (Street, City, State, Zip) | 98 Home Phone | 99 Work Phone |
|---|---|---|---|---|---|---|
| 1 | Edwards Paulette | | | ~~465~~ Baites RD AL | 256- | 256- ~~~~ |
| | | | | | | 100 Other Phone |

| 101 Employer/School | 102 Occupation | 103 Address (Street, City, State, Zip) | 104 Work Phone |
|---|---|---|---|
| Just for the Kids | Owner | 4000 Pulaski Pike Hsv. A | |
| | | | 105 Other Phone |

| 106 Sex ☑M ☐F | 107 Race ☐W ☐A ☐B | 108 ☐English ☐Spanish ☐Other | 109 HGT 510 | 110 WGT | 111 Date of Birth ~~~~ 73 | 112 Age 47 | 113 Victim SSN | 114 Complainant SSN |
|---|---|---|---|---|---|---|---|---|

| 115 ☐Multiple Victims ☐LE Officer | 116 Ethnicity ☐Other ☐Hispanic | 117 Injury ☑Yes ☐No | 118 Offender known to victim? ☐Yes ☑No | 119 Victim was? (Explain Relationship.) | 120 Relationship Code |
|---|---|---|---|---|---|

| 121 Weapons Used ☐Firearm ☐Knife | ☐Hands, Fist, Feet, Voice, etc. ☐Other Dangerous | 122 Description of Weapons/Firearms/Tools Used in Offense Describe: | ☐Handgun ☐Rifle ☐Shotgun ☐Unknown |
|---|---|---|---|

| 123 Place of Occurrence (Enter exact street address here.) | 124 Type ☑Injury | N None B Broken Bones | I Internal Injury L Severe Laceration | M Minor Injury O Other Major Injury | T Loss of Teeth U Unconscious | 125 Sector |
|---|---|---|---|---|---|---|
| 4000 Pulaski Pike | | | | | | A1-211 |

| 126 Circumstances: Homicide & Assault | 128 Assault ☐Simple ☐Aggravated | 129 Treatment for Assault? ☐Yes ☑No | 130 Verify for Rape Exam? ☐Yes ☐No | 131 Treatment for Rape? ☐Yes ☐No |
|---|---|---|---|---|
| 127 Location: Rape | | | | |

**SUSPECT INFORMATION**

| 132 Off # | 133 Name (Last, First, Middle) | 134 SFX | 135 Alias | 136 Social Security # | 137 Race ☐W ☑B ☐A | 138 Sex ☑M ☐F | 139 Date of Birth ~~~~ 66 | 140 Age 54 |
|---|---|---|---|---|---|---|---|---|
| | Ellis Ronnie | | | | | | | |

| 141 Address (Street, City, State, Zip) | | 142 HGT 507 | 143 WGT | 144 Ethnicity ☐Hispanic ☐Other | 145 Language ☐English ☐Spanish ☐Other |
|---|---|---|---|---|---|
| ~~~~ Misty Morning LN | | | | | |

| 146 Probable Destination | 147 Eye Br | 148 Hair Blk | 149 Complexion NA | 150 Armed ☐Yes ☐No | Weapon |
|---|---|---|---|---|---|

| 151 Clothing | 152 ☐Scars ☐Marks ☐Tattoos ☐Amputations | 153 ☐Arrested ☐Wanted ☐Dual Arrest (Domestic Violence) |
|---|---|---|

| 154 Off # | 155 Name (Last, First, Middle) | 156 SFX | 157 Alias | 158 Social Security # | 159 Race ☐W ☐B ☐A | 160 Sex ☐M ☐F | 161 Date of Birth | 162 Age |
|---|---|---|---|---|---|---|---|---|

| 163 Address (Street, City, State, Zip) | | 164 HGT | 165 WGT | 166 Ethnicity ☐Hispanic ☐Other | 187 Language ☐English ☐Spanish ☐Other |
|---|---|---|---|---|---|

| 168 Probable Destination | 169 Eye | 170 Hair | 171 Complexion | 172 Armed ☐Yes ☐No | Weapon |
|---|---|---|---|---|---|

| 173 Clothing | 174 ☐Scars ☐Marks ☐Tattoos ☐Amputations | 175 ☐Arrested ☐Wanted ☐Dual Arrest (Domestic Violence) |
|---|---|---|

**WITNESSES**

| Name (Last, First, Middle) | Sex | Race | Date of Birth | Address | Contact Telephone Numbers |
|---|---|---|---|---|---|
| 176 | 177 ☐M ☐F | 178 ☐W ☐A ☐B | 179 | 180 | 181 Home / 182 Work / 183 Other |
| 164 | 185 ☐M ☐F | 186 ☐W ☐A ☐B | 187 | 188 | 189 Home / 190 Work / 191 Other |
| 192 | 193 ☐M ☐F | 194 ☐W ☐A ☐B | 195 | 196 | 197 Home / 198 Work / 199 Other |

| 200 Witness # 1 SSN | 201 Witness # 2 SSN | 202 Witness # 3 SSN |
|---|---|---|

**NARRATIVE**

203 Victim stated when she applied for a loan from the small Business administration she found that someone had already done it. The offender listed had used the victims business names and other information to get the loan from the small Business administration. Victim stated that the offender got $24,000 dollars. The offender is the son in law of the owner of the property which the victims Rents from. Victim will press charges.

☐ Continued on Supplement

| 204 | 205 Assisting Agency ORI | 206 Assisting Agency Case Number | 207 SFX | 208 Warrant Signed ☐Yes ☐No | Warrant # | 209 Add. Cases Closed Narrative ☐Y ☐N |
|---|---|---|---|---|---|---|

I hereby affirm that I have read this report and that all the information given by me is correct to the best of my knowledge. I will assume full responsibility for notifying the agency if any stolen property or missing person herein reported is returned.

| 210 Signature | 211 Local Use |
|---|---|
| Paulette Edwards | 212 State Use |

STATEMENT OF WITNESS
(Continued)

Event # 6704-565
Case 2021-00389 ✓

PAGE: _____

Ronnie Ellis of 105 Misty Morn Ln Huntsville, AL 35811 has stolen
my business identy for my daycare center located at 4000
Pulaski Pke. He filed a diaster relief application through
the SBA and was funded for $24,000 on Dec 4th 2020
The Office of Inspector General Flagged the application
as fraudulant and there is a on going investigation
I have spoken to an verified the information with Mr.
Wadgeworth In the SBA Fraud Dept. and he advised me to
do a police report on the state level. Mr. Ronnie Ellis
did this with the permission of the owner of the
building William P. Matthews. They have admitted to
getting the money, and saying that there is nothing that
I can do about it. The Fraud case that I opened with
the SBA is ████████████ They have several
businesses registered to my daycare address with no licenses
to do legal Business this was verified by Kevin Fearn at the
city. It is not right that they are allowed to create companies
that dont exsist and use my business address to recieve
monies and anything else. I have proof of this.

_____

I have read this statement consisting of _____ page(s), and I affirm to
the truth and accuracy of the facts contained therein.

This statement was completed at _____ M, on _____ day of

_____ 19_____.

WITNESS: _____

WITNESS: _____

X _____
Signature of person giving voluntary statement

Mode 104/9E Rev: 011189

July 11, 2020
Paulette Edwards
Just 4 The Kids Daycare, LLC
4000 Pulaski Pike NW
Huntsville, AL 35810

RE: SBA Disaster Loan Application Number: 

Dear Paulette Edwards,

In these unprecedented times, we understand the challenges you are facing. The SBA is making every effort to support small businesses, which are the backbone of the American economy. Unfortunately, although we have made every effort to approve your loan request, we are unable to offer you a Economic Injury Disaster Loan (EIDL) for the reason(s) described below.

**Address has been used and funds issued.**

We evaluated your credit report and related information. Based on the information we obtained, we are regretfully unable to approve your application. We based this decision on information obtained from:

Experian P.O. Box 2104 Allen, TX 75013, (866) 200-6020.

If you disagree with our decision, you may request reconsideration, subject to the availability of funds. You can submit your request to any of the following:

     a. Mail your request to the address at the top of this letter.
     b. Fax your request to: 202-481-5931.
     c. E-mail your request to: pdcrecons@sba.gov.

Your request must:

     1. Be in writing and be received by this office as soon as possible(but no later than 6 months from the date of this letter.)
     2. Contain all significant information that will overcome the decline/withdrawal reason(s).

We understand that this is a challenging time for your business and for the nation. The SBA has local offices in your community which can refer you to resources that may be able to help you address the underlying reason for your loan denial. For more information on these services, please go to www.sba.gov/local-assistance to locate the email address and phone number for the nearest SBA district office and/or SBA's resource partners. Please call or email for a virtual appointment.

If you have any questions regarding this matter, please contact us at 800-659-2955 (TTY: 1-800-877-8339).

Sincerely,

Application Processing Department

SBA Form 2157B

     1

PLAINTIFF'S
EXHIBIT

7

justfourkidz11@yahoo.com    Sign Out    **?**

# RE: SBA Fraud Second Email SBA:0287049

Disaster Customer Service <DisasterCustomerService@sba.gov>    ↻ Reply all | ∨

justfourkidz11@yahoo.com ∨

Dear Edwards,

Thank you for contacting the SBA Disaster Customer Service Center.

Your email shows that you suspect identity theft may have occurred with your SBA loan. Identity Theft is the unauthorized use of your name and address, credit card or bank account number, Social Security Number, phone or utility account numbers, or medical insurance numbers.

The SBA's Office of Inspector General received a report of suspected fraud that was flagged on December 4, 2020. The application that was flagged states SUITE ELEMENTS, LLC AND RONNIE ELLIS applied and received funds for the property owner that should have been disbursed to your business for aid. Base on your correspondence, we will review any application(s) containing your business address and place a hold on any undisbursed loan funds.

SBA takes identity theft seriously.

If you have additional questions or require further assistance, please call our **Disaster Customer Service Center** at **1-800-659-2955** or email us at:

Sincerely,

RICHARD S.

Disaster Recovery Assistant

Office of Disaster Assistance, Customer Service Center

U.S. Small Business Administration

1-800-659-2955



U.S. Small Business
Administration

EXHIBIT
8

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHERN DIVISION

| | | |
|---|---|---|
| **Paulette Edwards and** | ) | |
| **Just 4 Kids Daycare** | ) | |
| **Plaintiffs,** | ) | **Case Number:** |
| **v.** | ) | |
| | ) | |
| **Ronnie Ellis, Suite Elements, LLC,** | ) | |
| **Brandi Matthews Ellis and** | ) | |
| **those persons or entities responsible** | ) | |
| **for the injuries sustained by the** | ) | |
| **Plaintiff as a result of the defalcations** | ) | |
| **described herein, who are yet** | ) | |
| **unidentified, but who will be** | ) | |
| **added within the time provided** | ) | |
| **by law,** | ) | |
| **Defendants.** | ) | |

### PLAINTIFFS' FIRST
### INTERROGATORIES, REQUESTS FOR PRODUCTION
### OF DOCUMENTS AND REQUESTS FOR ADMISSIONS
### TO DEFENDANTS

Plaintiffs Paulette Edwards and Just 4 Kids Daycare (collectively "Edwards") propound the following Interrogatories, Requests for Production and Requests for Admissions to Defendants and request that they be answered separately and fully in writing, and under oath, in accordance with Rules 33, 34 and 36 of the Federal Rules of Civil Procedure.

### Instructions

1.      If you withhold any responsive information on the grounds that it is privileged or otherwise excludable from discovery, please identify the document or information, describe its subject matter and specify the basis for the claimed privilege or other basis of exclusion.

1

2. If an interrogatory is objected to as being overly broad, please specifically state the manner in which the interrogatory is overly broad and respond to the interrogatory as if it were narrowed to conform to your objection.

3. If an interrogatory is objected to on grounds other than privilege or work product, please define the basis for the objection.

4. If, in your opinion, a full response to an interrogatory or request for production would contain information requiring a protective order prior to responding, please notify Plaintiff's counsel prior to the deadline for your response so a protective order can be negotiated and entered.

5. These interrogatories and requests for production shall be deemed to be continuing until and during the course of trial. Information sought by these interrogatories and requests for production are to be supplemented when further information is discovered consonant with Rule 26 of the Federal Rules of Civil Procedure.

## Definitions

These definitions are provided in order to clarify what information is being sought and from whom. Please carefully review these definitions as they are frequently referred to in these discovery requests.

As used in these Interrogatories and Requests for Production, the words in **BOLDFACE CAPITALS** below are defined as follows:

1. **PERSON** means any natural person, corporation, partnership, proprietorship, organization, association, governmental entity, agency, firm, or public entity.

2. To **IDENTIFY** a person means to state that person's full name, job title or affiliation, job responsibilities or duties, the corporate entity by whom they are employed and the physical location where they report to work; to **IDENTIFY** a corporation, business organization or partnership, give its full name, the state and the date of incorporation or formation, principal place of business, and a natural person who would have knowledge of the information sought by the interrogatory.

3. To **IDENTIFY** a document, record, writing, or Electronically Stored Information means to give its date, author, addressee, recipient, type or a description that is sufficient to distinguish it from all other documents, records, writings, or Electronically Stored Information.

2

4.    **BUSINESS** means employment, occupation, profession, or commercial activity engaged in for gain or livelihood; an activity or enterprise for gain, benefit, advantage or livelihood.

5.    **EMPLOYEE(s)** means any person (including but not limited to corporate entities) who receives remuneration for their work from any one or all of the Defendants.

6.    **DATE** shall mean the exact day, month, and year, if ascertainable, or, if not, the best approximation thereof, including relationship to other events.

7.    To **DESCRIBE** means to narrate, express, explain, set forth, relate, recount, depict, delineate, and in general provide detailed information concerning the specific thing which you are asked to describe.

8.    **A DOCUMENT**, whether in a tangible format, e.g. on paper, or electronically stored information created and/or maintained electronically, is a setting down of information or evidence of a factual or informative nature which tends to clarify, prove or disprove. **Documentation** is used as the plural of **Document**.

9.    **ESI** (Electronically Stored Information) includes writings, drawings, graphs, charts, photographs, sound recordings, images, and other data or data compilations stored in any medium from which information can be obtained, translated, if necessary, by the respondent through detection devices into reasonably usable form.  Electronically stored information particularly includes, but is not limited to, those items that were discussed, created and used to determine the identity of those for whom applications were sent to the Small Business Administration.

10.   The term "and/or" as used in these interrogatories and requests for production means "either or both of."  Similarly, a word followed by a "/" followed by another word means "either or both of," i.e., customer/client.

11.   The words "you" and/or "your" refer to the Defendant(s), singularly or in the plural, its employees, agents, or any other person or entity acting for or on their behalf.

12.   Where appropriate: (a) use of the singular includes the plural, and vice versa; and, (b) use of the masculine includes the feminine, and vice versa.

## Discovery Requests

1.  For those United States government COVID-19 relief funds applications which listed as the business address as 4000 Pulaski Pike,

3

Huntsville, Alabama, and which you submitted to the SBA, please **IDENTIFY** each **PERSON** or entity with whom you identified applicants, prepared applications, participated in the submission of the applications to the Small Business Administration, or with whom you shared monies from the proceeds of such applications.

2. Please set forth the dates of all applications described in ITEM 1.

3. Please **DESCRIBE** the role of each **PERSON** or entity in the identification, preparation, submission, or the receipt of funds for each of the applicants for which you submitted an application as described in ITEM 1.

4. Please produce copies of each and every **DOCUMENT** that you prepared, reviewed, or used in the preparation of the applications described in ITEMS 1 through 3.

5. For those COVID-19 United States government funds applications which listed as the business address any address other than 4000 Pulaski Pike, Huntsville, Alabama, which you submitted to the SBA, please **IDENTIFY** each **PERSON** or entity with whom you identified applicants, prepared applications, participated in the submission of the applications to the Small Business Administration, or with whom you shared monies from the proceeds of those applications.

6. Please **DESCRIBE** the role of each **PERSON** or entity in the identification, preparation, submission, or the receipt of funds for each of the applicants for which you submitted an application as described in ITEM 5.

7. Please produce copies of each and every **DOCUMENT** that you prepared, reviewed, or used in the preparation of the applications described in ITEMS 5 and 6.

8. Please **IDENTIFY** the Landlord of the premises located at 4000 Pulaski Pike, Huntsville, Alabama.

9. Please state whether the Landlord authorized the submission of the application made for and on behalf of Just 4 Kids Daycare and Ms. Paulette Edwards.

4

10. If the application was authorized by the Landlord, please **IDENTIFY** the person or persons who executed the application for the Landlord.

11. Please set forth with particularity, all facts which support any claim that you had the permission of Ms. Edwards or Just 4 Kids Daycare to submit an application on behalf of the Daycare.

12. Please produce copies of each and every **DOCUMENT** that you prepared, reviewed, or used in the response to ITEMS 10 and 11.

13. Please admit or deny that the Landlord of the premises located at 4000 Pulaski Pike, Huntsville, Alabama, was William P. ("Bo") Matthews and his wife, Barbara Matthews.

14. Please admit or deny that you did receive monies for and on behalf of Ms. Edwards and/or Just 4 Kids Daycare from the United States government COVID-19 relief funds.

15. Please admit or deny that the Landlord of the premises located at 4000 Pulaski Pike, Huntsville, Alabama, did in fact receive monies which you solicited and received from the United States government COVID-19 relief funds.

16. Please admit or deny that you participated in the submission of applications to the Small Business Administration for COVID-19 relief funds for the following entities:

   a. Suite Elements, LLC for and on behalf of Just 4 Kids Daycare.
   b. P 41, LLC
   c. New Concept Enterprise, LLC
   d. Bo Matthews Center of Excellence
   e. Salter Auto Group

17. Please admit or deny that for each of the applications described in ITEM 16, you used as the address of the entity 4000 Pulaski Pike, Huntsville, Alabama.

18. Please admit or deny that you submitted each and all of the applications electronically.

5

19. Please admit or deny that United States government administered the COVID-19 relief funds from Washington, DC through the offices of the Small Business Administration.

20. Please produce copies of each and every **DOCUMENT** that you prepared, reviewed, or used in the response to ITEMS 13 through 19, inclusive.

21. Please set forth the amount of money you received in the name of Suite Elements, LLC, for and on behalf of Ms. Edwards and/or Just 4 Kids Daycare.

22. Please **DESCRIBE** how the money received as a result of the application described in ITEM 21 were used by the Defendants.

23. Please set forth the amount of money you received in the name of P 41, LLC, New Concept Enterprise, LLC, Salter Auto Group, and Bo Matthews Center of Excellence, from the United States government COVID-19 relief funds.

24. Please set forth the amount of money you received in the name of any other entity besides those listed in ITEM 23 from the United States government COVID-19 relief funds.

25. Please **DESCRIBE** how the money received as a result of the applications described in ITEMS 23 and 24 was used by the Defendants.

26. Please produce copies of each and every **DOCUMENT** that you prepared, reviewed, or used in the response to ITEMS 21 through 24, inclusive.

27. Please admit or deny that the application for and the receipt of the COVID-19 monies from the United States government COVID19 relief monies involved interstate commerce.

28. Please admit or deny that Defendant Ronnie Ellis is a person under 18 USCA 1961(3).

29. Please admit or deny that Defendant Brandi Matthews Ellis is a person under 18 USCA 1961(3).

6

30. Please admit or deny that Defendant Suite Elements, LLC is a person under 18 USCA 1961(3).

31. Please admit or deny that the relationship between Ronnie Ellis and Brandi Matthews Ellis is an association-in-fact enterprise under 18 USCA 1961(4).

32. Please admit or deny that the relationship between Ronnie Ellis and Brandi Matthews Ellis and Bo and Barbara Matthews is an association-in-fact enterprise under 18 USCA 1961(4).

33. Please admit or deny that you did not have permission or authorization from Paulette Edwards or Just 4 Kids Daycare to file an application with the SBA for COVID-19 relief funds.

34. Please produce copies of each and every **DOCUMENT** that you prepared, reviewed, or used in the response to ITEMS 27 through 33, inclusive.

35. Please admit or deny that Bo and Barbara Matthews aided and abetted you in the submission of the applications by executing the Landlord authorization.

36. Please admit or deny that you misrepresented the address of P 41, LLC, New Concept Enterprise, LLC, Salter Auto Group, and Bo Matthews Center of Excellence as being 4000 Pulaski Pike, Huntsville, Alabama.

To be served with the Complaint of Paulette Edwards.

7

JS 44  (Rev. 3/99)

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

Edwards, Paulette, and Just 4 Kids Daycare

## DEFENDANTS

Ellis, Ronnie, Mattews Ellis, Brandi and Suite Elements, LLC

(b) County of Residence of First Listed Plaintiff        Madison
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed        Madison
(IN U.S. PLAINTIFF CASES ONLY)

NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF
LAND INVOLVED.

(c) Attorney's (Firm Name, Address, and Telephone Number)

Samuel M. Hill

The Law Offices of Sam Hill, LLC

2540 Sadler Ridge Road
Mc Calla, Alabama 35111
205 260 2452
sam@samhilllaw.onmicrosoft.com

Attorneys (If Kno

## II. BASIS OF JURISDICTION    (Place an "X" in One Box Only)

☐ 1 U.S. Government    ☒ 3 Federal Question
   Plaintiff              (U.S. Government Not a Party)

☐ 2 U.S. Government    ☐ 4 Diversity
   Defendant              (Indicate Citizenship of Parties
                          in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff
(For Diversity Cases Only)                          and One Box for Defendant)

|                          | PTF | DEF |                                            | PTF | DEF |
|--------------------------|-----|-----|--------------------------------------------|-----|-----|
| Citizen of This State    | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT    (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury— | 620 Other Food & Drug | | ☐ 410 Antitrust |
| 130 Miller Act | ☐ 315 Airplane Product | Med. Malpractice | 625 Drug Related Seizure | 423 Withdrawal | ☐ 430 Banks and Banking |
| 140 Negotiable Instrument | Liability | ☐ 365 Personal Injury — | of Property 21 USC 881 | 28 USC 157 | ☐ 450 Commerce/ICC Rates/etc. |
| & Enforcement of Judgment | Slander | 368 Asbestos Personal | 640 R.R. & Truck | **PROPERTY RIGHTS** | ☒ 470 Racketeer Influenced and |
| 151 Medicare Act | 330 Federal Employers' | Injury Product | 650 Airline Regs. | | Corrupt Organizations |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | **LABOR** | **SOCIAL SECURITY** | |
| 210 Land Condemnation | 441 Voting | 510 Motions to Vacate | & Disclosure Act | **FEDERAL TAX SUITS** | 900 Appeal of Fee Equal Access to Justice |

**V. ORIGIN** (PLACE AN "X" IN ONE BOX ONLY)

| X 1 ☐ Original Proceeding | 2 ☐ Removed from State Court | 3 ☐ Remanded from Appellate Court | 4 ☐ Reinstated or Reopened | 5 ☐ Transferred from another district (specify) | 6 ☐ Multidistrict Litigation | 7 ☐ Appeal to District Judge from Magistrate Judgment |

(Cite the U.S. Civil Statute under which you are filing and write brief statement of cause.

**VI. CAUSE OF ACTION**     Do not cite jurisdictional statutes unless diversity.)

This is a RICO action based on the conduct of the Defendants in fraudulently taking monies designated as rent assistance under the COVID-19 relief funds. The Defendants submitted applications which were fraudulent in that they used addresses for businesses not located at those addresses, or claimed that they had permission of those at the address to collect the rent subsidy.

| | DEMAND $ | CHECK YES only if demanded in complaint: |
|---|---|---|
| **VII. REQUESTED IN COMPLAINT:** ☐ CHECK IF THIS IS A **CLASS ACTION** UNDER F.R.C.P. 23 | | **JURY DEMAND:** X ☐ Yes   ☐ No |

**VIII. RELATED CASE(S) IF ANY**     (See instructions):

JUDGE                           DOCKET NUMBER

DATE                    SIGNATURE OF ATTORNEY OF RECORD

S/ Samuel M. Hill

**FOR OFFICE USE ONLY**

RECEIPT #        AMOUNT        APPLYING IFP        JUDGE        MAG. JUDGE

JS 44 Reverse  (Rev. 3/99)

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS-44

## Authority For Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

I.      (a) Plaintiffs-Defendants. Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

(b.) County of Residence. For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

(c) Attorneys. Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

II.     Jurisdiction. The basis of jurisdiction is set forth under Rule 8(a), F.R.C.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.

United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States, are included here.

United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.

Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.

Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; federal question actions take precedence over diversity cases.)

III.    Residence (citizenship) of Principal Parties. This section of the JS-44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

IV.     Nature of Suit. Place an "X" in the appropriate box. If the nature of suit cannot be determined, be sure the cause of action, in Section IV below, is sufficient to enable the deputy clerk or the statistical clerks in the Administrative Office to determine the nature of suit. If the cause fits more than one nature of suit, select the most definitive.

V.      Origin. Place an "X" in one of the seven boxes.

Original Proceedings. (1) Cases which originate in the United States district courts.

Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441. When the petition for removal is granted, check this box.

Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.

Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.

Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.

Multidistrict Litigation. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407. When this box is checked, do not check (5) above.

Appeal to District Judge from Magistrate Judgment. (7) Check this box for an appeal from a magistrate judge's decision.

VI.     Cause of Action. Report the civil statute directly related to the cause of action and give a brief description of the cause.

VII.    Requested in Complaint. Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.

Demand. In this space enter the dollar amount (in thousands of dollars) being demanded or indicate other demand such as a preliminary injunction.

Jury Demand.  Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.   Related Cases**.  This section of the JS-44 is used to reference related pending cases if any.  If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature**.  Date and sign the civil cover sheet.

UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION

In re:                                    )
BO MATTHEWS CENTER OF          )         Case No. 21-81371-CRJ-7
EXCELLENCE                          )
                                          )         Chapter 7
                                          )
                                          )

# EXHIBIT 7



AlaFile E-Notice

47-CV-2020-000096.00

Judge: CLAUDE E HUNDLEY III

To:  RALEIGH RICHARD J. R. JR.
rraleigh@wilmerlee.com

---

# NOTICE OF ELECTRONIC FILING

---

IN THE CIRCUIT COURT OF MADISON COUNTY, ALABAMA

WILLIAM P MATTHEWS V JUST 4 THE KIDS DAYCARE ET AL
47-CV-2020-000096.00

The following matter was FILED on 6/30/2021 1:49:09 PM

Notice Date:     6/30/2021 1:49:09 PM

DEBRA KIZER
CIRCUIT COURT CLERK
MADISON COUNTY, ALABAMA
MADISON COUNTY, ALABAMA
100 NORTHSIDE SQUARE
HUNTSVILLE, AL, 35801

256-532-3390



ELECTRONICALLY FILED
6/30/2021 1:49 PM
47-CV-2020-000096.00
CIRCUIT COURT OF
MADISON COUNTY, ALABAMA
DEBRA KIZER, CLERK

## IN THE CIRCUIT COURT OF MADISON COUNTY, ALABAMA

MATTHEWS WILLIAM P,      )
Plaintiff,      )
      )
V.      ) Case No.:      CV-2020-000096.00
      )
JUST 4 THE KIDS DAYCARE,      )
EDWARDS PAULETTE,      )
Defendants.      )

## ORDER

This matter is before the Court on Plaintiff's Motion to Lift Stay or in the Alternative Set Trial Date, Defendant's Objection to Motion to Lift Stay or in the Alternative Set Trial Date, and Defendant's Motion to Dismiss Unlawful Detainer. The parties and their counsels of record were present in Court. Having considered the matter, the Court finds as follows:

1. That since the matter went up on appeal, through June 2021 the Defendant has paid the amount required by statute so as to avoid a writ of execution;

2. That the lease, which is the subject of this matter and was appealed from District Court, expires on July 31, 2021;

3. That said lease has a provision for extension that has not been properly invoked pursuant to the agreement of the parties in said lease;

4. That the Defendant may remain on the premises through June 2021 because the Defendant has paid the proper amount;

5. That if Defendant pays the amount due for the month of July 2021 in a timely manner, no writ of execution shall issue;

6. However, if the Defendant fails to pay the required amount, the Court will consider, upon the proper filing, a writ of execution;

7. That if the Defendant pays through July 2021, the action for Unlawful Detainer shall be moot as the lease will have terminated.

Therefore, the Court orders as follows:

8. The Motion to Lift Stay is **GRANTED,** however, a writ of execution shall not issue unless the Defendant fails to pay the July, 2021 rent in a timely manner .

9. The Motion to Dismiss Unlawful Detainer is **DENIED**.

       All other issues remain active and will be discussed at a status conference on August 13, 2021, at 9:00 AM in Room #812 of the Madison County Courthouse, 8th floor.

**DONE this 30th day of June, 2021.**

                           **/s/ CLAUDE E HUNDLEY III**
                           **CIRCUIT JUDGE**

UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION

In re: )
BO MATTHEWS CENTER OF ) Case No. 21-81371-CRJ-7
EXCELLENCE )
) Chapter 7
)
)

# <u>EXHIBIT 8</u>

DOCUMENT 2

ELECTRONICALLY FILED
7/7/2021 6:18 AM
47-CV-2021-900838.00
CIRCUIT COURT OF
MADISON COUNTY, ALABAMA
DEBRA KIZER, CLERK

**IN THE CIRCUIT COURT FOR MADISON COUNTY**

| | |
|---|---|
| **JUST 4 THE KIDS DAYCARE and** ) | |
| **EDWARDS, PAULETTE,** ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | |
| **vs.** ) | **CASE NO. CV-2021-_____** |
| ) | |
| **BO MATTHEWS CENTER FOR** ) | |
| **EXCELLENCE,** ) | |
| ) | |
| **Defendant.** ) | |

## COMPLAINT

COME NOW the Plaintiffs, JUST 4 THE KIDS DAYCARE (hereinafter "the Daycare") and PAULETTE EDWARDS (hereinafter "Edwards") and submit their Complaint against the Defendant, BO MATTHEWS CENTER FOR EXCELLENCE (hereinafter "BMCE") and state claims of Quantum Meruit and Money Had and Received.

### PARTIES AND JURISDICTION

1.      The Daycare is a business entity registered with the Alabama Secretary of State whose registered address is 1011 Parklane Street, Huntsville, AL 35816.

2.      Edwards is the registered agent for the Daycare and the administrator at the physical location where the Daycare provides services, 4000 Pulaski Pike, Huntsville, AL 35810.

3.      BMCE is registered as a non-profit entity with the Alabama Secretary of State, listing Brandi Matthews-Ellis as the registered agent and director replacing Bobby Patton April 27, 2021.  The street address is listed as 4000 Pulaski Pike, Huntsville, AL 35810. William P. Matthews is listed as the incorporator.  The mailing address is P.O. Box 17167  Huntsville, AL 35810.

### UNDISPUTED FACTS

4.      On May 29, 2018, Edwards leased property located at 4000 Pulaski Pike, Huntsville, AL from the lessors - Bo and Barbara Matthews (William P. Matthews a/k/a Bo Matthews).

5.      Terms of the lease were specifically for 36 months and due to begin on August 1, 2018 and payments were to be made monthly in the amount of $3,800.

6.      Payments were to be made to the "Lessor" (Bo and Barbara Matthews hereinafter "Matthews").

7.      The "Lessee" (Edwards) was to operate a daycare on the premises.

Case 21-81371-CRJ7    Doc 12    Filed 08/18/21    Entered 08/18/21 15:32:00    Desc Main
Document      Page 126 of 239

8.     Edwards was unable to take possession of the premises until late February 2019 when a certificate of occupancy was approved.

9.     The property located at 4000 Pulaski Pike, Huntsville, AL is owned by BMCE and was acquired from Matthews on December 26, 2001 by a Quit Claim Deed.

## COUNT I – QUANTUM MERUIT

10.     Statement 1 through 9 are incorporated herein as if fully set forth.

11.     Matthews represented to Edwards he was owner of the property prior to executing the lease with her and that the building was up to building code for the purpose of use as a business (daycare) and was in a move in condition or state.

12.     The building failed inspections by the Madison County Health Department and the City of Huntsville Buildings and Inspection and the Fire Marshall on numerous occasions. Thus Edwards and the Daycare were deprived of being able to operate the business. The final occupancy permit was dated for the later part of February, 2019.

13.     The roof leaked, air conditioners did not work, drainage problems existed, toilets and other plumbing did not work, water pipes were clogged and broken, no telephone wire service or internet availability, windows were broken, interior doors were used for exits, mold and mildew was covered by new paint without removal, electrical breaker panel was substandard, fire and burglar alarms did not work, asbestos required removal, termite damage to walls, in addition to other problems including the kitchen appliances which had to be replaced.

14.     The building was used for storage by Matthews and that property was not removed until October 2018, after the proposed 36 month lease inception of August 1, 2018.

15.     Terms of the lease included Matthews would be responsible for repairs to the heating and cooling system when over FIVE HUNDRED DOLLARS ($500.00) and required use of Matthews' authorized "Repair Company"; and "Lessee shall be responsible for all repairs required, excepting the roof, exterior walls, structural foundations, and the parking lot, which shall be maintained by Lessor.

16.     Matthews refused to reimburse Edwards and the Daycare has been caused pay ONE HUNDRED AND EIGHT THOUSAND, TWO HUNDRED AND FIVE DOLLARS AND FORTY-THREE CENTS ($108,205.43) in repairs and maintenance.

17.     Edwards filed a Mechanics Lien against BMCE in the amount of NINETY-FIVE THOUSAND DOLLARS AND NO CENTS ($ 95,000.00) on June 3, 2021 in the Madison County Probate Court; and on June 25, 2021 filed another lien in the Madison

County Probate Court in the amount of THIRTEEN THOUSAND, TWO HUNDRED AND FIVE DOLLARS AND FORTY THREE CENTS ($ 13,205.43).

18. BMCE, is the legal owner with deed to property at 4000 Pulaski Pike, Huntsville, AL, benefited by the repairs and maintenance which were required by the City of Huntsville for the occupancy of the building to occur; and benefited by the repairs and maintenance that has increased the value of the building to which the building may now be legally leased, rented or occupied, as well as preventing the further devaluation of the property. WHEREFORE the Premises Considered, Edwards and the Daycare respectfully requests this Honorable Court for a trial by jury and the following order and relief from BMCE:

    a. An Order for reimbursement of all monies expended toward the repair and maintenance of the BMCE real property; and

    b. Reimbursement for the cost of this action and reasonable attorney fees; and

    c. For this and any other relief for which the Plaintiff's may be entitled unto in a court of equity.

## COUNT TWO – MONEY HAD AND RECEIVED

19. Paragraphs 1 through 18 are incorporated herein as if set forth in full.

20. William P. "Bo" and Barbara Matthews are officers of BMCE.

21. BMCE lost their Federal and 501(c)(3) I.R.S. recognition as a non-profit entity when it was revoked in 2017 for failure to file the required annual tax filing as well as the failure to pay payroll taxes due for prior years. Mathews has operated as if he owns the property and disregarded the legal deed belonging to BMCE.

22. The I.R.S. has filed two (2) tax liens on the property in the Madison County Probate Court – which remain unpaid as the money paid by Edwards and the Daycare went to Matthews and not BMCE.

23. BMCE has failed to correct deficiencies with the Alabama Secretary of State to acknowledge the non-profit status change and continues to benefit from the improper non-profit status by not paying State and local property tax, as well as business property tax. BMCE continues to be registered with the Alabama Secretary of State, although no annual business entity filing has been made and paid for since 2012.

23. Matthews received monthly lease payments from Edwards and the Daycare totaling EIGHTY THREE THOUSAND FIVE HUNDRED AND SEVENTY-SIX DOLLARS AND FIFTY-ONE CENTS ($83,576.51) since May 3, 2018 through September 23, 2020.

Edwards has made payments to Matthews as follows:

| Date | Amount |
|---|---|
| 5-03-18 | $ 1,900.00 |
| 5-29-18 | $ 3,800.00 |
| 6-01-18 | $ 1,600.00 |
| 8-23-18 | $ 2,400.00 |
| 1-09-19 | $ 1,900.00 |
| 1-25-19 | $ 1,900.00 |
| 1-29-19 | $ 1,900.00 |
| 2-08-19 | $ 5,700.00 |
| 2-18-19 | $ 2,500.00 |
| 2-26-19 | $ 3,466.00 |
| 3-01-19 | $ 3,800.00 |
| 4-19-19 | $ 1,980.51 |
| 5-06-19 | $ 1,000.00 |
| 5-13-19 | $ 2,800.00 |
| 6-19-19 | $ 1,830.00 |
| 7-11-19 | $ 2,500.00 |
| 7-16-19 | $ 1,300.00 |
| 8-10-19 | $ 3,800.00 |
| 9-10-19 | $ 3,800.00 |
| 10-8-19 | $ 3,800.00 |
| 11-8-19 | $ 3,800.00 |
| 12-10-19 | $ 3,800.00 |
| 1-10-20 | $ 3,800.00 |
| 2-08-20 | $ 3,800.00 |
| 3-01-20 | $ 3,800.00 |
| 4-01-20 | $ 1,800.00 |
| 4-00-20 | $ 1,800.00 |
| 5-00-20 | $ 900.00 |
| 5-00-20 | $ 900.00 |
| 5-00-20 | $ 1,900.00 |
| 8-00-20 | $ 1,800.00 |
| 9-00-20 | $ 1,800.00 |

24.     This money was paid in cash to Matthews or checks that were written out to Matthews as per terms of the lease and improperly comingled with Matthews personal money in his own personal bank account.

25.     This money rightfully was due to be paid to BMCE, -  Edwards and the Daycare were unaware the property was owned by BMCE until the later part of 2020 when Matthews filed an Unlawful Detainer action against Edwards and the Daycare in October, 2020.

26.     Edwards and the Daycare has been denied the leaseholder's rights of quiet enjoyment of the leased premises due to the failure of Matthews to remove storage items until after the lease was to have started; unable to move into the business and operate a daycare due to the property failing inspections; and in 2020 Matthews sought to start another business in the premises and took possession of two classrooms and a conference room for that purpose without permission of Edwards; and the legal action of the improper Unlawful Detainer has deprived Edwards and the Daycare of the quiet and peaceful occupancy.

27.     Edwards and the Daycare have also paid a monthly amount of THREE THOUSAND and EIGHT HUNDRED DOLLARS and NO CENTS ( $3,800.00) each month for November and December 2020, and the same for January, February, March, April, May, June and July, 2021 to the Madison County Circuit Court to maintain possession during the appeal of the Unlawful Detainer and Counterclaims which were filed by Edwards and the Daycare.  Total paid to Clerk and on deposit currently:  $ 34,200.00.

WHEREFORE, THE PREMISES CONSIDERED, Edwards and the Daycare respectfully requests of this Court for a trial by jury and judgment against BMCE and for the following relief:

   a.  An Order to refund all lease or rent money paid to Matthews - $83,576.51; and

   b.  An Order to refund payments deposited with the Madison Circuit Court Clerk; and

   c.  An Order requiring payment of legal fees and attorney expenses in this matter; and

   d.  For this and any and all relief which Edwards and the Daycare may be entitled unto in a court of equity.

**TRIAL BY JURY REQUESTED.**


Respectfully,

                                                    /s/      Mari    Morrison
                                                    MARI MORRISON (MOR099)
                                                    ATTORNEY FOR PLAINTIFFS
                                                    430 RONNY LANE
                                                    SPRINGVILLE, AL   35146
                                                    (205) 837-2771
                                                    marimorrison1@gmail.com

Recording requested by (name):

Paulette Edwards

)
)
)
)
)
)
)
)

When recorded, mail to (name and address):

)
)

PAULETTE EDWARDS
PO BOX 5926
HUNTSVILLE, AL 35814

)
)
)
)
)
)

Doc ID: 024094810003 Type: LIEN
Filed/Cert: 06/03/2021 10:20:00 AM
Fee Amt: $30.75 Page 1 of 3
Madison County, AL
FRANK BARGER Probate Judge
File **2021-00045535**

SPACE ABOVE THIS LINE FOR RECORDER'S USE

# MECHANIC'S LIEN

**STATE OF ALABAMA**

)
)

**COUNTY OF MADISON**

)

1.      Paulette Edwards (the "Claimant"), located at PO Box 5926, Huntsville, Alabama 35814, claims a mechanics lien for the labor or services or equipment or materials described herein, furnished for a work of improvement on that certain real property located in the County of Madison, in the State of Alabama. The complete address of the real property on which this mechanics lien is claimed is: 4000 Pulaski Pike NW, Huntsville, Alabama 35810 (the "Property"). The permanent index identification number of the Property is:     The legal description of the Property is:

SEC 15 T3S R1W PT OF THE SW1/4 OF THE NE1/4 OF SEC 15 BEG ON THE N R/O/W OF STRINGFIELD RD N 25 FT E 215.84 FT FR CEN OF SEC 15 TH N 13.85 FT W 112.40 FT TH ALG INTERS OF STRINGFIELD RD WI PULASKI PIKE N 44 DEG W 84.73 FT TH ALG E ROW OF PULASKI PK N 1 DEG E 356.43 FT S 86 DEG E 246.50 FT S 16 DEG E 269.68 FT S 2 DEG W 163.50 FT & W 153.06 FT TO POB

2.      The labor or services or equipment or materials were furnished by Claimant at the request of: Just 4 The Kids Daycare, LLC, located at 4000 Pulaski Pike NW, Huntsville, Alabama 35810.

3.      The owner of the Property is: William P. Matthews, located at 1013 Coronado Ave SE, Huntsville, Alabama 35812.

4.     On 11/02/2020, the Claimant entered into an oral contract with William P. Matthews and Sub Contractor, Walter Peavy to change and/or upgrade the repairs, roof, termite damage, air conditioners and heating system, plumbing into the premises, exterior features on said Property (the "Contract") for the original total sum of $75,000.00, which became due and payable on 05/28/2021, the date of completion of the build and/or project services.

Upon request, the Claimant purchased and provided additional materials and labor for requested changes and/or upgrades at the total cost of $20,000.00, which became due and payable on 05/28/2021, the date of completion of the build and/or project services.

5.     After deducting all just credits and offsets, the sum of $95,000.00 is due to Claimant for the labor or services or equipment or materials provided. The amount due to Claimant is subject to an interest rate of 10% per annum from 11/02/2020.

**Paulette Edwards**
**PO Box 5926**
**Huntsville Alabama 35814**

(Signature)

Paulette Edwards
Owner

6/3/2021
(Date)

# NOTARY ACKNOWLEDGMENT

**STATE OF ALABAMA** )

)  **ss.**

**COUNTY OF MADISON** )

The Affiant, Paulette Edwards, being duly sworn, on oath deposes and says that s/he is the Claimant and that s/he has read the foregoing claim for the lien and knows the contents thereof, and that all statements therein contained are true and correct to the best of his/her belief and knowledge.

Subscribed and sworn to before me on *June 3, 2021*

*LaToya S. White*
(Notary Printed Name)

My commission expires on: *9/19/2023*

LA TOYA WHITE
My Commission Expires
NOTARY
PUBLIC
09-19-2023
ALABAMA STATE AT LARGE

Filed/Cert: 06/03/2021 10:20:00 AM
Fee Amt: $30.75 Page 3 of 3
Madison County,AL
FRANK BARGER Probate Judge
File **2021-00045535**

Recording requested by (name):  )
                                           )

**Just 4 The Kids Daycare ,**  )
**Paulette Edwards**  )
  )
  )
When recorded, mail to (name and address):  )
**Just 4 The Kids Daycare**  )
**PO Box 5926**  )
**Huntsville, AL 35814**  )
  )
  )
  )

```
Doc ID: 024171880003 Type: LIEN
Filed/Cert: 06/25/2021 04:12:00 PM
Fee Amt: $30.75 Page 1 of 3
Madison County,AL
FRANK BARGER Probate Judge
File 2021-00052828
```

SPACE ABOVE THIS LINE FOR RECORDER'S USE

# MECHANIC'S LIEN

**STATE OF ALABAMA**  )
  )
**COUNTY OF MADISON**  )

1.     Just 4 The Kids Daycare, Paulette Edwards (the "Claimant"), located at PO Box 5926, Huntsville, Alabama 35814, claims a mechanics lien for the labor or services or equipment or materials described herein, furnished for a work of improvement on that certain real property located in the County of Madison, in the State of Alabama. The complete address of the real property on which this mechanics lien is claimed is: 4000 Pulaski Pike NW, Huntsville, Alabama 35810 (the "Property"). The permanent index identification number of the Property is:   The legal description of the Property is:

SEC 15 T3S R1W PT OF THE SW1/4 OF THE NE1/4 OF SEC 15 BEG ON THE N R/O/W OF STRINGFIELD RD N 25 FT E 215.84 FT FR CEN OF SEC 15 TH N 13.85 FT W 112.40 FT TH ALG INTERS OF STRINGFIELD RD WI PULASKI PIKE N 44 DEG W 84.73 FT TH ALG E ROW OF PULASKI PK N 1 DEG E 356.43 FT S 86 DEG E 246.50 FT S 16 DEG E 269.68 FT S 2 DEG W 163.50 FT & W 153.06 FT TO POB

2.     The labor or services or equipment or materials were furnished by Claimant at the request of: Just 4 The Kids Daycare, LLC, located at 4000 Pulaski Pike NW, Huntsville, Alabama 35810.

3.     The owner of the Property is: Bo Matthews Center of Excellence and William P. Matthews, who claims to be the owner located at 1013 Coronado Ave SE, Huntsville, Alabama 35812.

4.      At the beginning of services, the Claimant entered an oral contract to roof repairs, termite damage, air conditioners and heating system, plumbing into the premises, exterior features on said Property (the "Invoiced") for the original total sum of $8,205.43, which became due and payable on 06/24/2021, the date of completion of the build and/or project services.

Upon request, the Claimant purchased and provided additional materials and labor for requested changes and/or upgrades at the total cost of $5,000.00, which became due and payable on 06/24/2021, the date of completion of the build and/or project services.

5.      After deducting all just credits and offsets, the sum of $13,205.43 is due to Claimant for the labor or services or equipment or materials provided.  The amount due to Claimant is subject to an interest rate of 10% per annum from 05/31/2021.

**Paulette Edwards**
**PO Box 5926**
**Huntsville Alabama 35814**

_____
(Signature)

Paulette Edwards
Just 4 The Kids Daycare

_____6/25/2021_____
(Date)

# NOTARY ACKNOWLEDGMENT

**STATE OF ALABAMA** )
 ) **ss.**
**COUNTY OF MADISON** )

The Affiant, Just 4 the Kids Daycare Rep. Paulette Edwards, being duly sworn, on oath deposes and says that s/he is the Claimant and that s/he has read the foregoing claim for the lien and knows the contents thereof, and that all statements therein contained are true and correct to the best of his/her belief and knowledge.

Subscribed and sworn to before me on ___June 25, 2021___

LaToya S. White
(Notary Printed Name)

My commission expires on: ___9/19/2023___



LA TOYA WHITE
NOTARY
PUBLIC
My Commission Expires
9-19-2023
ALABAMA STATE AT LARGE

Filed/Cert: 06/25/2021 04:12:00 PM
Fee Amt: $30.75 Page 3 of 3
Madison County,AL
FRANK BARGER Probate Judge
File 2021-00052828

In re:                          )
BO MATTHEWS CENTER OF           )        Case No. 21-81371-CRJ-7
EXCELLENCE                      )
                                )        Chapter 7
                                )
                                )

# <u>EXHIBIT 9</u>



AlaFile E-Notice

47-CV-2021-900838.00

Judge: D. ALAN MANN

To:   RICHARD J.R. RALEIGH JR.
      rraleigh@wilmerlee.com

# NOTICE OF ELECTRONIC FILING

IN THE CIRCUIT COURT OF MADISON COUNTY, ALABAMA

JUST 4 THE KIDS DAYCARE ET AL V. BO MATTHEWS CENTER FOR EXCELLENCE
47-CV-2021-900838.00

The following matter was FILED on 7/20/2021 5:10:15 PM

**D001 MATTHEWS BO CENTER FOR EXCELLENCE**

MOTION TO DISMISS

[Filer: RALEIGH RICHARD J. R. JR.]

Notice Date:     7/20/2021 5:10:15 PM

DEBRA KIZER
CIRCUIT COURT CLERK
MADISON COUNTY, ALABAMA
MADISON COUNTY, ALABAMA
100 NORTHSIDE SQUARE
HUNTSVILLE, AL, 35801

256-532-3390

| STATE OF ALABAMA | | Revised 3/5/08 | Cas... |
|---|---|---|---|

**STATE OF ALABAMA**
Unified Judicial System
47-MADISON

☐ District Court   ☑ Circuit Court

ELECTRONICALLY FILED
7/20/2021 5:10 PM
47-CV-2021-900838.00
CIRCUIT COURT OF
MADISON COUNTY, ALABAMA
DEBRA KIZER, CLERK

CV2...

JUST 4 THE KIDS DAYCARE ET AL V. BO
MATTHEWS CENTER FOR EXCELLENCE

**CIVIL MOTION COVER SHEET**
*Name of Filing Party:* D001 - MATTHEWS BO CENTER FOR
EXCELLENCE

*Name, Address, and Telephone No. of Attorney or Party. If Not Represented.*

RICHARD J.R. RALEIGH JR.
100 WASHINGTON STREET
HUNTSVILLE, AL 35801
*Attorney Bar No.:* RAL003

☐ Oral Arguments Requested

**TYPE OF MOTION**

| Motions Requiring Fee | Motions Not Requiring Fee |
|---|---|
| ☐ Default Judgment ($50.00) | ☐ Add Party |
| ☐ Joinder in Other Party's Dispositive Motion (i.e.Summary Judgment, Judgment on the Pleadings, orother Dispositive Motion not pursuant to Rule 12(b)) ($50.00) | ☐ Amend |
| | ☐ Change of Venue/Transfer |
| | ☐ Compel |
| ☐ Judgment on the Pleadings ($50.00) | ☐ Consolidation |
| ☐ Motion to Dismiss, or in the Alternative SummaryJudgment($50.00) | ☐ Continue |
| | ☐ Deposition |
| ☐ Renewed Dispositive Motion(Summary Judgment,Judgment on the Pleadings, or other DispositiveMotion not pursuant to Rule 12(b)) ($50.00) | ☐ Designate a Mediator |
| | ☐ Judgment as a Matter of Law (during Trial) |
| ☐ Summary Judgment pursuant to Rule 56($50.00) | ☐ Disburse Funds |
| ☐ Motion to Intervene ($297.00) | ☐ Extension of Time |
| ☐ Other _____ | ☐ In Limine |
| pursuant to Rule _____ ($50.00) | ☐ Joinder |
| | ☐ More Definite Statement |
| *Motion fees are enumerated in §12-19-71(a). Fees pursuant to Local Act are not included. Please contact the Clerk of the Court regarding applicable local fees. | ☐ Motion to Dismiss pursuant to Rule 12(b) |
| | ☐ New Trial |
| | ☐ Objection of Exemptions Claimed |
| ☐ Local Court Costs $ 0 | ☐ Pendente Lite |
| | ☐ Plaintiff's Motion to Dismiss |
| | ☐ Preliminary Injunction |
| | ☐ Protective Order |
| | ☐ Quash |
| | ☐ Release from Stay of Execution |
| | ☐ Sanctions |
| | ☐ Sever |
| | ☐ Special Practice in Alabama |
| | ☐ Stay |
| | ☐ Strike |
| | ☐ Supplement to Pending Motion |
| | ☐ Vacate or Modify |
| | ☐ Withdraw |
| | ☑ Other      Motion to Dismiss |
| | pursuant to Rule Ala R. Civ P      (Subject to Filing Fee) |

Check here if you have filed  or are filing contemporaneously with this motion an Affidavit of Substantial Hardship or if you are filing on behalf of an agency or department of the State, county, or municipal government. (Pursuant to §6-5-1 Code of Alabama (1975), governmental entities are exempt from prepayment of filing fees) ☐

Date:
7/20/2021 5:08:31 PM

Signature of Attorney or Party
/s/ RICHARD J.R. RALEIGH JR.

*This Cover Sheet must be completed and submitted to the Clerk of Court upon the filing of any motion. Each motion should contain a separate Cover Sheet.
**Motions titled 'Motion to Dismiss' that are not pursuant to Rule 12(b) and are not Summary Judgments are not subject to filing fee.



ELECTRONICALLY FILED
7/20/2021 5:10 PM
47-CV-2021-900838.00
CIRCUIT COURT OF
MADISON COUNTY, ALABAMA
DEBRA KIZER, CLERK

## IN THE CIRCUIT COURT OF MADISON COUNTY, ALABAMA

**JUST 4 THE KIDS DAYCARE, and
PAULETTE EDWARDS,**

     ***Plaintiffs,***

**v.**

                                    **Case No. CV-2021-900838.00**

**BO MATTHEWS CENTER FOR
EXCELLENCE,**

     ***Defendant.***

## <u>MOTION TO DISMISS</u>

COMES NOW Defendant, by and through the undersigned counsel of record, and respectfully moves to dismiss Plaintiffs' claims. As grounds therefor, Defendant states as follows:

1.      Plaintiffs failed to serve Defendant as required by Alabama Rule of Civil Procedure 4(c)(6), and Plaintiffs' claims are therefore due to be dismissed pursuant to Alabama Rules of Civil Procedure 12(b)(4) and (5).

         a.      This is a motion to dismiss a lawsuit that is related to the lease and possession by Plaintiffs of a commercial business property located at 4000 Pulaski Pike NW, Huntsville, Alabama 35810, but Plaintiffs have failed to properly serve Defendant, a corporation.

         b.      Alabama Rules of Civil Procedure 4(c)(6) provides the means for serving a corporation, like Defendant:

> Upon a domestic or foreign corporation or upon a partnership, limited partnership, limited liability partnership, limited liability company, or unincorporated organization or association, by serving an officer, a partner (other than a limited partner), a managing or general agent, or any agent authorized by appointment or by law to receive service of process.

c.      Plaintiffs did not serve the Summons and Complaint on any person, Plaintiffs or their process server threw a copy of a Summons and Complaint (but not Plaintiffs' motion for a preliminary injunction and temporary restraining order) in Brandi Matthews-Ellis's car window.  Service of process is improper and failed because it was haphazardly thrown into an unoccupied car.  Obviously, the individual's car is not their "usual place of abode", even if a corporation's agent could be served at their place of abode.  In short, service of process on the Defendant, a corporation, is invalid.

d.      Exhibit 2 attached hereto are the papers that were thrown into the window of Brandi Matthews-Ellis.

e.      Plaintiffs never provided to Defendant, even by throwing it through a slot in an unoccupied car window, Plaintiffs' motion for a preliminary injunction and temporary restraining order.  Plaintiffs has violated Alabama Rule of Civil Procedure 4 by failing to serve Doc. 6.

f.      The service of process attempted by Plaintiffs does not meet the standards of Due Process requiring notice to be reasonably calculated under all circumstances to provide parties of notice of the pending action. Since the papers were thrown into an occupied vehicle and did not contain all pleadings, not only have the Alabama Rules of Civil Procedure been violated, but Due Process has been trampled over by Plaintiffs.

2.      Plaintiffs have failed to join parties need for just adjudication, Alabama Rule of Civil Procedure 19, and Plaintiffs' should be dismissed therefore pursuant to Alabama Rule of Civil Procedure 12(b)(7).  As explained hereinbelow, Plaintiffs already make many (if not all) of the same claims and allegations in the first filed case, *William P. Matthews v. Just 4 The Kids Daycare and Paulette Edwards*, Case No. 47-CV-2020-000096.00-CEH, which involves

2

William P. Matthews, the person Plaintiffs claim in this case that they paid lease payments to. Plaintiffs should be required to bring these claims in that earlier filed action. But, if not, then Plaintiffs' claims here should be dismissed for failure to join persons needed for just adjudication pursuant to Alabama Rule of Civil Procedure 12(b)(7). "It is the plaintiff's duty under [Rule 19] to join as a party anyone required to be joined." *Ex parte Advanced Disposal Servs. S., LLC*, 280 So. 3d 356, 360 (Ala. 2018), citing *Holland v. City of Alabaster*, 566 So. 2d 224, 226 (Ala. 1990).

       3.     Plaintiffs' claims are due to be dismissed pursuant to Alabama Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted because:

            a.     Plaintiffs' claim for quantum meruit alleges that other parties performed work, not that the Plaintiffs' themselves performed services, and thus their claims fail as a matter of law.

                 (1)     "It is the settled law of this State that where one knowingly accepts services rendered by another, and the benefit and the result thereof, the law implies a promise on the part of the one accepting with knowledge the services rendered by another to pay the reasonable value of such services rendered." *Mantiply v. Mantiply*, 951 So. 2d 638, 656 (Ala. 2006), citing *Hendrix, Mohr & Yardley, Inc. v. City of Daphne*, 359 So. 2d 792, 795 (Ala.1978). "In order to succeed on a claim based on a theory of quantum meruit, the plaintiff must show that it had a reasonable expectation of compensation for its services." *Mantiply v. Mantiply*, 951 So. 2d 638, 656 (Ala. 2006), citing *Utah Foam Prods., Inc. v. Polytec, Inc.*, 584 So.2d 1345 (Ala.1991). However, Plaintiffs have alleged that others, not themselves, performed services. Doc. 2, Complaint. Plaintiffs fail to state a claim for quantum meruit.

(2)     Furthermore, "[w]hen an express contract exists, an argument based on a quantum meruit recovery in regard to an implied contract fails." *Mantiply v. Mantiply*, 951 So. 2d 638, 656 (Ala. 2006), citing *Brannan & Guy, P.C. v. City of Montgomery*, 828 So. 2d 914, 921 (Ala.2002). "The existence of an express contract on a given subject generally excludes an implied agreement on the same subject." *Vardaman v. Florence City Bd. of Educ.*, 544 So. 2d 962 (Ala. 1989). As alleged in Plaintiffs' own Complaint, a contract exists with respect to the claims Plaintiffs make in this case – the Commercial Lease referenced in the Complaint and attached hereto as Exhibit 1.

b.     Plaintiffs have failed to comply with the provisions of Alabama Code § 35-11-210 *et. seq*., Alabama's mechanic's lien statute.

(1)     Plaintiffs have failed to comply with the provisions of Alabama Code § 35-11-210 *et. seq*., Alabama's mechanic's lien statute, including Plaintiffs' failure to provide notice of intent to claim a lien (and failure to allege such notice was given), failure to serve Defendant with copies of the filed liens, and failure to comply with the time periods set for: (a) filing a notice of intent to claim a lien, (b) filing the liens, and (c) filing suit to enforce the liens.

(2)     With respect to the claimed liens, Plaintiffs were not the mechanics or materialmen. They were not the ones who performed the work - they are not contractors or subcontractors, and therefore they lack standing to file a lien under the provisions of Alabama Code § 35-11-210 *et. seq*., Alabama's mechanic's lien statute.

c.     Plaintiffs are not licensed contractors. Plaintiffs demand payment for work, but are unlicensed and thus may not recover as a matter of law. "It is well settled that '[e]xpress or implied contracts entered into by an unlicensed general contractor are null and void

4

because they violate public policy.'" *White v. Miller*, 718 So.2d 88, 89 (Ala. Civ. App.1998), quoting *Goodwin v. Morris*, 428 So. 2d 78, 79 (Ala. Civ. App.1983). Therefore, Plaintiffs' claims are due to be dismissed for failure to state a claim upon which relief can be granted.

        d.     Plaintiffs had no permits to perform work described in Plaintiffs' Complaint.

        e.     Plaintiffs did not have permission to perform the work or have it performed, and to the extent they or others at their direction performed work, the Commercial Lease Plaintiffs' entered into (attached hereto as Exhibit 1) made the Plaintiffs responsible for the costs themselves:

> 2. USE. Lessee shall use and occupy the premises for child care facility. The premises shall be used for no other purpose. Lessor represents that the premises may lawfully be used for such purpose.
>
> 3. CARE AND MAINTENANCE OF PREMISES. Lessee acknowledges that the premises are in good order and repair, unless otherwise indicated herein. Lessee shall, at his own expense and at all times, maintain the premises in good and safe condition including, plate glass, mirrors, windows, furnace filters, light bulbs, ballasts, and hardware. Lessee shall, at his own expense and at all times, also maintain the heating and cooling installations up to the sum of Five Hundred Dollars ($500.00) with Lessor paying the balance. Lessee agrees to change filters in the heating and cooling system in a timely manner. Lessee will use Lessor's choice of Repair Company for any work that may be required on HVAC system. Lessee shall surrender the same, at termination hereof, in as good condition as received, normal wear and tear accepted. Lessee shall be responsible for all repairs required, excepting the roof, exterior walls, structural foundations, and the parking lot, which shall be maintained by Lessor.
>
> 4. ALTERATIONS. Lessee shall not, without first obtaining the written consent of Lessor, make any alterations, additions, or improvements in, to or about the premises.

(Exhibit 1, Commercial Lease, paras. 2, 3, and 4).

        f.     Plaintiffs do not have a contract with Defendant to perform construction on the property.

        g.     Pursuant to the Commercial Lease attached hereto as Exhibit 1, Plaintiffs have merely a leasehold interest in the property described therein and in the Complaint.

        h.     The person, persons, or entities who are alleged to have performed work or provided materials described in the complaint have no privity of contract with Defendant and they have not complied with any of the provisions of Alabama Code § 35-11-210 *et. seq*., Alabama's mechanic's lien statute.

5

i.      Although Plaintiffs bring suit in each of their names, the attachments to the Complaint (the "Mechanic's Lien" documents) only assert that Plaintiff Paulette Edwards is a claimant of a lien.

j.      Plaintiffs' claims are barred by res judicata and / or collateral estoppel. This case is associated with a previously filed case, where Plaintiffs are defendants and have raised claims related to the same work described in this case and claims $122,000 plus interest and expenses paid for "repairs to the building" and other relief.  See Doc. 103, filed May 15, 2021, *William P. Matthews v. Just 4 The Kids Daycare and Paulette Edwards*, Case No. 47-CV-2020-000096.00-CEH.  The other case, Case No. 47-CV-2020-000096.00-CEH, was the first filed case.  This case should be dismissed; but if not, then in the alternative, at the very least, Plaintiffs claims should be consolidated and joined with the first filed case.

4.      Plaintiffs' claims for quantum meruit are untimely and barred by the applicable statutes of limitations.  Plaintiffs make claims for quantum meruit (Complaint, Count One) and money had and received (Complaint, Count Two).  See Doc. 2.  The applicable statute of limitations for quantum meruit is three years.  *White v. Sikes, Kelly, Edwards & Bryant, P. C.*, 410 So. 2d 66, 69 (Ala. Civ. App. 1982); Ala. Code § 6-2-37.  According to Plaintiffs' Complaint, their claims date back to the date of the signing of the Commercial Lease, Exhibit 1 hereto, which was 2018, and Plaintiffs claim they made payments dating back to May 2018. Plaintiffs brought their claims untimely and they are due to be dismissed.

5.      The mechanic's liens attached to Plaintiffs' Complaint were improperly filed with the Madison County Probate Court, and Plaintiffs improperly bring claims related to these alleged liens here.

6

a.      Pursuant to Alabama Code § 35-11-210, a party without a contract with the owner of the property seeking enforcement of a mechanic's lien must first provide proper notice to the owner before filing the lien with the Probate Court.

b.      Alabama Code § 35-11-218 also states that every person, except the original contractor, seeking enforcement of a lien must send notice setting forth the amount, for what, and from whom it is owing.

c.      Plaintiffs own allegations establish there was no contract between Defendant and Plaintiffs. Complaint ¶ 4.  Plaintiffs allege they leased commercial property pursuant to the Commercial Lease, Exhibit 1.  Whereas Plaintiffs allege they contracted with William P. Matthews, Complaint ¶ 4, with respect to the lease of the commercial property, Plaintiffs allege that Defendant is the owner of the property that is the subject of Plaintiffs' alleged repairs, Complaint ¶ 18.

d.      Defendant never received any notice from any of the Plaintiffs or their counsel of a potential mechanic's lien, including those attached to Plaintiffs' Complaint.

e.      Because, even according to Plaintiffs own allegations in their Complaint, there was no contract between Defendant and Plaintiffs, Plaintiffs were required to provide notice of their intent to file a mechanic's lien in Probate Court.  Plaintiffs never sent any such notice and Defendant never received any such notice. Thus, Plaintiffs are in violation of Alabama Code § 35-11-210, and the liens should be dismissed, as well as Plaintiffs claims related to the repairs as set forth in the Complaint.

f.      There was never proper notification of an intent to file a mechanic's lien in the Probate Court, but even if there was then Plaintiffs could not enforce the lien because they were not the ones providing the labor or materials.  Plaintiff Paulette Edwards is the "Claimant"

7

listed in the liens attached to Plaintiffs' Complaint.  Plaintiff Just 4 The Kids Daycare is not listed in the liens as a claimant.  However, neither plaintiff provided the alleged services or repair work.

> g.    Alabama Code § 35-11-210 provides that any person "who shall do or perform any work, or labor upon, or furnish any material" has the right to enforce a mechanic's lien when they are not paid. The purpose of Alabama Code § 35-11-210 is to provide a mechanic, who has expended labor or materials on the property, a prior right of satisfaction by giving the mechanic an interest in the property in the event they are not paid by the owner. *Wilkinson v. Rowe*, 98 So. 2d 435, 436 (Ala. 1957).  Plaintiffs never made improvements on the property through their own labor. Any alleged repairs or improvements were made by a hired contractor.  Because Plaintiffs never used any of their own labor to work on the property, they have no right to enforce a mechanic's lien pursuant to Alabama Code § 35-11-210.  And, any rights Plaintiffs have related to repairs and improvements arise, if at all, under the Commercial Lease, Exhibit 1, and Plaintiffs allege that Defendant is not a party to the Commercial Lease. Thus, Plaintiffs' claims are due to be dismissed for failure to state a claim upon which relief can be granted.

> h.    Plaintiffs were also not authorized to make any improvements themselves or through a contractor pursuant to the Commercial Lease.  See Exhibit 1.  Paragraph 4 entitled "ALTERATIONS" provides that, "Lessee shall not, without first obtaining the written consent of Lessor, make any alterations, additions, or improvements in, or about the premises."  There was no written consent from the Defendant, or from William P. Matthews, to allow Plaintiffs to make any sort of improvements or alterations to the building.  Without written consent, Plaintiffs are in violation of the Commercial Lease and cannot enforce a mechanic's lien even if the work was

8

done by themselves. Moreover, the Commercial Lease makes clear that any right Plaintiffs may have must flow through the contract they entered into with respect to the property, since the Commercial Lease provides that it is the entire agreement of the parties regarding the subject matter of Plaintiffs' leasing of the property:

> 22. ENTIRE AGREEMENT. The foregoing constitutes the entire agreement between the parties and may be modified only by a writing signed by both parties. The following Exhibits, if any, have been made a part of this lease before the parties' execution hereof:
>
> SIGNED the _29th_ day of _MAY_ , 20 _18_
>
> By: _William P. Matthews_ , Lessor        By: _Sam Edwards_ , Lessee
> Bo Mathews

(Exhibit 1, Commercial Lease, para. 22).

Thus, Plaintiffs may not bring their present claims against this Defendant, and must bring them, if at all, in *William P. Matthews v. Just 4 The Kids Daycare and Paulette Edwards*, Case No. 47-CV-2020-000096.00-CEH, as they have already done.

6.      Plaintiffs' claims for money had and received are due to be dismissed for failure to state a claim upon which relief can be granted. Plaintiffs make claims for money had and received (Count Two of the Complaint, Doc. 2), claiming that they paid William P. Matthews money from May 3, 2018 until September 2020. However, they bring claims for money had and received against Defendant Bo Matthew Center for Excellence, whom Plaintiffs do not claim they paid. Doc. 2, ¶¶ 20, 23, 24. Therefore, Plaintiffs fail to state claims for money had and received upon which relief can be granted, and Plaintiffs' claims for money had and received should be dismissed.

7.      Furthermore, Plaintiffs' two claims are equitable claims and equitable issues must be tried to the Court, and Plaintiffs are not entitled to a jury, and the Court should strike the jury demand. *Ex parte Thorn*, 788 So. 2d 140, 145 (Ala. 2000).

8.      Plaintiffs' claims lack merit and Plaintiffs' claims and this case are brought without substantial justification.  The claims are frivolous, groundless in fact or in law, and/or are vexatious, and are interposed for improper purpose, including to cause unnecessary delay and needless increase in the cost of litigation, and the Court should award Defendant attorneys' fees and costs pursuant to Ala. Code § 12-19-271 and Alabama Rule of Civil Procedure 11.

WHEREFORE, premises considered, Defendant respectfully requests the Court dismiss Plaintiffs claims.

Respectfully submitted this 20th day of July 2021.

**WILMER & LEE, P.A.**

/s/ Richard J.R. Raleigh, Jr.
Richard J.R. Raleigh, Jr. (RAL003)

/s/ Christopher L. Lockwood
Christopher L. Lockwood (LOC018)

*Attorney for Defendant*
**WILMER & LEE, P.A.**
100 Washington Street
Suite 100
Huntsville, Alabama 35801
(256) 533-0202 - telephone
(256) 533-0302 – facsimile
email: rraleigh@wilmerlee.com
           clockwood@wilmerlee.com

10

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 20, 2021, a copy of the foregoing was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. Parties may access this filing through the Court's electronic filing system.

<u>/s/ Richard J.R. Raleigh, Jr.</u>
**OF COUNSEL**

11


ELECTRONICALLY FILED
7/20/2021 5:10 PM
47-CV-2021-900838.00
CIRCUIT COURT OF
MADISON COUNTY, ALABAMA
DEBRA KIZER, CLERK

## COMMERCIAL LEASE

STATE OF ALABAMA
COUNTY OF MADISON

THIS LEASE is made between **Bo and Barbara Mathews,** herein called Lessor and **Paulette Edwards** herein called the Lessee.

Lessee hereby offers to lease from Lessor the premises situated in the City of Huntsville, County of Madison, State of Alabama, described as **4000 Pulaski Pike** upon the following TERMS and CONDITIONS:

1. TERM AND RENT. Lessor demises the above premises for a term of **Thirty Six** months, commencing August 1st 2018, and terminating on July 31st 2021, for a total amount of One Hundred Thirty Six Thousand Eight Hundred Dollars ($136,800.00) payable in installments of Thirty Eight Hundred Dollars
($3800) Dollars in advance on the first day of each month for that month's rental during the term of this lease.

All rental payments shall be made to Lessor at the address specified above.

A penalty or late charge of ten percent (10%) will be due if rent is unpaid for the period of ten (10) days from due date. A penalty or late charge of twenty percent (20%) will be due if rent is unpaid for a period of thirty (30) days from due date.

2. USE. Lessee shall use and occupy the premises for child care facility. The premises shall be used for no other purpose. Lessor represents that the premises may lawfully be used for such purpose.

3. CARE AND MAINTENANCE OF PREMISES. Lessee acknowledges that the premises are in good order and repair, unless otherwise indicated herein. Lessee shall, at his own expense and at all times, maintain the premises in good and safe condition including, plate glass, mirrors, windows, furnace filters, light bulbs, ballasts, and hardware. Lessee shall, at his own expense and at all times, also maintain the heating and cooling installations up to the sum of Five Hundred Dollars ($500.00) with Lessor paying the balance. Lessee agrees to change filters in the heating and cooling system in a timely manner. Lessee will use Lessor's choice of Repair Company for any work that may be required on HVAC system. Lessee shall surrender the same, at termination hereof, in as good condition as received, normal wear and tear accepted. Lessee shall be responsible for all repairs required, excepting the roof, exterior walls, structural foundations, and the parking lot, which shall be maintained by Lessor.

4. ALTERATIONS. Lessee shall not, without first obtaining the written consent of Lessor, make any alterations, additions, or improvements in, to or about the premises.

5. ORDINANCES AND STATUTES. Lessee shall comply with all statutes, ordinances and requirements of all municipal, state and federal authorities now in force, or which may hereafter be in force, pertaining to the premises, occasioned by or affecting the use thereof.

6. ASSIGNMENT AND SUBLETTING. Lessee shall not assign this lease or sublet any portion of the premises without prior written consent of the Lessor. Any such assignment or subletting without consent shall be void and, at the option of the Lessor, may terminate this lease.

7. ENTRY AND INSPECTION. Lessee shall permit Lessor or Lessor's agents to enter upon the premises at reasonable times and upon reasonable notice, for the purpose of inspecting the same, and will permit Lessor at any time within sixty (60) days prior to the expiration of this lease, to place upon the premises any usual "To Let" or "For Lease" signs, and permit persons desiring to lease the same to inspect the premises thereafter.

8. POSSESSION. If Lessor is unable to deliver possession of the premises at the commencement hereof, Lessor shall not be liable for any damage caused thereby, nor shall this lease be void or voidable, but Lessee shall not be liable for any rent until possession is delivered. Lessee may terminate this lease if possession is not delivered with in fifteen (15) days of the commencement of the term hereof.

9. INDEMNIFICATION OF LESSOR. Lessor shall not be liable for any damage or injury to Lessee, or any other person, or to any property, occurring on the demised premises or any part thereof, and Lessee agrees to hold Lessor harmless from any claims for damages, no matter how caused.

**EXHIBIT**
1

10. INSURANCE. Lessee, at his expense, shall maintain liability insurance including bodily injury and property damage insuring Lessee and Lessor with minimum coverage as follows: Not less than One Million Dollars ($1,000,000.00) for persons injured in one accident and not less than Five Hundred Thousand ($500,000.00) for injuries to one person. Lessee shall provide Lessor with a Certificate of Insurance showing Lessor as additional insured. The Certificate shall provide for a ten-day written notice to Lessor in the event of cancellation or material change of coverage. To the maximum extent permitted by insurance policies that may be owned by Lessor or Lessee, Lessee and Lessor, for the benefit of each other, waive any and all rights of subrogation that might otherwise exist.

11. EMINENT DOMAIN. If the premises or any part thereof or any estate therein, or any other part of the building materially affecting Lessee's use of the premises, shall be taken by eminent domain, this lease shall terminate on the date when title vests pursuant to such taking. The rent, and any additional rent, shall be apportioned as of the termination date, and any rent paid for any period beyond that date shall be repaid to Lessee. Lessee shall not be entitled to any part of the award for such taking or any payment in lieu thereof, but Lessee may file a claim for any taking of textures and improvements owned by Lessee.

12. DESTRUCTION OF PREMISES. In the event of a partial destruction of the premises during the term hereof, from any cause, Lessor shall forthwith repair the same, provided that such repairs can be made within sixty (60) days under existing governmental laws and regulations, but such partial destruction shall not terminate this lease, except that Lessee shall be entitled to a proportionate reduction of rent while such repairs are being made, based upon the extent to which the making of such repairs shall interfere with the business of Lessee on the premises. If such repairs cannot be made with said sixty (60) days, Lessor, at his option, may make the same within a reasonable time, this lease continuing in effect with the rent proportionately abated as aforesaid, and in the event the Lessor shall not elect to make such repairs which cannot be made within sixty (60) days, this lease may be terminated at the option of either party. In the event that the building in which the demised premises may be situated is destroyed to an extent of not less than one-third of the replacement costs thereof, Lessor may elect to terminate this lease whether the demised premises be injured or not. A total destruction of the building in which the premise may be situated shall terminate this lease.

13. LESSOR'S REMEDIES ON DEFAULT. If Lessee defaults in the payment of rent, or any additional rent or assessments, or defaults in the performance of any of the other covenants or conditions hereof, Lessor may give Lessee notice of such default and if Lessee does not cure any such default within fifteen (15) days, after the giving of such notice (or if such other default is of such nature that it cannot be completely cured within such period, if Lessee does not commence such curing within such fifteen (15) days and thereafter proceed with reasonable diligence and in good faith to cure such default), then Lessor may terminate this lease on not less than thirty (30) days' notice to Lessee. On the date specified in such notice the term of this lease shall terminate, and Lessee shall then quit and surrender the premises to Lessor, without extinguishing Lessee's liability. If this lease shall have been so terminated by Lessor, Lessor may at any time thereafter resume possession of the premises by any lawful means and remove Lessee or other occupants and their effects. No failure to enforce any term shall be deemed a waiver.

14. SECURITY DEPOSIT. Lessor shall retain the security deposit of Thirty Eight Hundred Dollars ($3800) paid by Lessee as security for the performance of Lessee's obligations under this lease, including without limitation the surrender of possession of the premises to Lessor as herein provided. If Lessor applies any part of the deposit to cure any default of Lessee, Lessee shall on demand deposit with Lessor the amount so applied so that Lessor shall have the full deposit on hand at all time during the term of this lease.

15. ATTORNEY'S FEE. In case suit should be brought for recovery of the premises or for any sum due hereunder, or because of any act which may arise out of the possession of the premises, by either party, the prevailing party shall be entitled to all costs incurred in connection with such action, including a reasonable attorney's fee.

16. WAIVER. No failure of Lessor to enforce any term hereof shall be deemed to be a waiver.

17. NOTICES. Any notice which either party may or is required to give shall be given by mailing the same, postage prepaid, to Lessee at the premises, or Lessor at the address specified above, or at such other places as may be designated in writing by the parties from time to time.

18. HEIRS, ASSIGNS, SUCCESSORS. This lease is binding upon and inures to the benefit of the heirs, assigns and successors in interest to the parties.

19. KEYS/LOCKS. Lessees shall not change locks without prior written consent of Lessor. Lessor shall not withhold reasonable request. Any change of locks by Lessee shall be at Lessee's expense, including a key copy for Lessor, which shall be mailed to Lessor at the address specified above.

20. FIRE EXTINGUISHER. Lessee shall, at Lessee's expense, install and maintain Fire Extinguishers that satisfy local Fire Codes.

21. SUBORDINATION. This lease is and shall be subordinated to all existing and future liens and encumbrances against the property.

22. ENTIRE AGREEMENT. The foregoing constitutes the entire agreement between the parties and may be modified only by a writing signed by both parties. The following Exhibits, if any, have been made a part of this lease before the parties' execution hereof:

SIGNED the _29th_ day of _MAY_ , 20 _18_

By: _William P. Matthews_ , Lessor
Bo Mathews

By: _Sam Edwards_ , Lessee

Witness: _____

Witness: _Null N. V_

Name of Principal _Paulette Edwards_

Tax ID Number or SSN of Principal _47-3674019_

Driver's License Number _AL 5972938_

Former Business Address _2084 Washington Street_

Business References and phone numbers_____

_____

Email Address _justfourKidz11@yahoo.com_

Home Address _409 Boites Rd Toney 35773_

Home and Cell Phone Numbers _256-919-5424_

Emergency contact _Bro. Edwards 205-835-1343_

3




ELECTRONICALLY FILED
7/20/2021 5:10 PM
47-CV-2021-900838.00
CIRCUIT COURT OF
MADISON COUNTY, ALABAMA
DEBRA KIZER, CLERK

AlaFile E-Notice

47-CV-2021-900838.00

To: BO MATTHEWS CENTER FOR EXCELLENCE
4000 PULASKI PIKE
HUNTSVILLE, AL, 35810

---

# NOTICE OF ELECTRONIC FILING

---

IN THE CIRCUIT COURT OF MADISON COUNTY, ALABAMA

JUST 4 THE KIDS DAYCARE V. BO MATTHEWS CENTER FOR EXCELLENCE
47-CV-2021-900838.00

The following complaint was FILED on 7/7/2021 6:18:50 AM

Notice Date: 7/7/2021 6:18:50 AM

DEBRA KIZER
CIRCUIT COURT CLERK
MADISON COUNTY, ALABAMA
MADISON COUNTY, ALABAMA
100 NORTHSIDE SQUARE
HUNTSVILLE, AL, 35801

256-532-3390



EXHIBIT
2

| State of Alabama<br>Unified Judicial System<br>Form C-34  Rev. 4/2017 | SUMMONS<br>- CIVIL - | Court Case Number<br>47-CV-2021-900838.00 |
| --- | --- | --- |

**IN THE CIRCUIT COURT OF MADISON COUNTY, ALABAMA**
**JUST 4 THE KIDS DAYCARE V. BO MATTHEWS CENTER FOR EXCELLENCE**

NOTICE TO: BO MATTHEWS CENTER FOR EXCELLENCE, 4000 PULASKI PIKE, HUNTSVILLE, AL 35810

*(Name and Address of Defendant)*

THE COMPLAINT OR OTHER DOCUMENT WHICH IS ATTACHED TO THIS SUMMONS IS IMPORTANT, AND YOU MUST TAKE IMMEDIATE ACTION TO PROTECT YOUR RIGHTS. YOU OR YOUR ATTORNEY ARE REQUIRED TO FILE THE ORIGINAL OF YOUR WRITTEN ANSWER, EITHER ADMITTING OR DENYING EACH ALLEGATION IN THE COMPLAINT OR OTHER DOCUMENT, WITH THE CLERK OF THIS COURT. A COPY OF YOUR ANSWER MUST BE MAILED OR HAND DELIVERED BY YOU OR YOUR ATTORNEY TO THE PLAINTIFF(S) OR ATTORNEY(S) OF THE PLAINTIFF(S), MARIELLEN MORRISON MS.

*[Name(s) of Attorney(s)]*

WHOSE ADDRESS(ES) IS/ARE: 430 Ronny Lane, Springville, AL 35146

*[Address(es) of Plaintiff(s) or Attorney(s)]*

THE ANSWER MUST BE MAILED OR DELIVERED WITHIN 30 DAYS AFTER THIS SUMMONS AND COMPLAINT OR OTHER DOCUMENT WERE SERVED ON YOU OR A JUDGMENT BY DEFAULT MAY BE RENDERED AGAINST YOU FOR THE MONEY OR OTHER THINGS DEMANDED IN THE COMPLAINT OR OTHER DOCUMENT.

**TO ANY SHERIFF OR ANY PERSON AUTHORIZED BY THE ALABAMA RULES OF CIVIL PROCEDURE TO SERVE PROCESS:**

☑ You are hereby commanded to serve this Summons and a copy of the Complaint or other document in this action upon the above-named Defendant.

☐ Service by certified mail of this Summons is initiated upon the written request of _____

pursuant to the Alabama Rules of the Civil Procedure.                                      *[Name(s)]*

| 07/07/2021 | /s/ DEBRA KIZER | By: _____ |
| --- | --- | --- |
| *(Date)* | *(Signature of Clerk)* | *(Name)* |

☐ Certified Mail is hereby requested. _____

*(Plaintiff's/Attorney's Signature)*

**RETURN ON SERVICE**

☐ Return receipt of certified mail received in this office on _____.

*(Date)*

☐ I certify that I personally delivered a copy of this Summons and Complaint or other document to _____

_____ in _____ County,

*(Name of Person Served)*                              *(Name of County)*

Alabama on _____.

*(Date)*

| _____ | _____ | _____ |
| --- | --- | --- |
| *(Type of Process Server)* | *(Server's Signature)* | *(Address of Server)* |
| | _____ | _____ |
| | *(Server's Printed Name)* | *(Phone Number of Server)* |

ELECTRONICALLY FILED
7/7/2021 6:18 AM
47-CV-2021-900838.00
CIRCUIT COURT OF
MADISON COUNTY, ALABAMA
DEBRA KIZER, CLERK

| State of Alabama<br>Unified Judicial System<br><br>Form ARCiv-93   Rev. 9/18 | **COVER SHEET**<br>**CIRCUIT COURT - CIVIL CASE**<br>(Not For Domestic Relations Cases) | Case<br>47<br><br>Date of Filing:<br>07/07/2021     Judge Code: |

## GENERAL INFORMATION

### IN THE CIRCUIT COURT OF MADISON COUNTY, ALABAMA
### JUST 4 THE KIDS DAYCARE v. BO MATTHEWS CENTER FOR EXCELLENCE

**First Plaintiff:** ☑ Business  ☐ Individual  **First Defendant:** ☑ Business  ☐ Individual
☐ Government  ☐ Other   ☐ Government  ☐ Other

**NATURE OF SUIT:** Select primary cause of action, by checking box (check only one) that best characterizes your action:

**TORTS: PERSONAL INJURY**
☐ WDEA - Wrongful Death
☐ TONG - Negligence: General
☐ TOMV - Negligence: Motor Vehicle
☐ TOWA - Wantonness
☐ TOPL - Product Liability/AEMLD
☐ TOMM - Malpractice-Medical
☐ TOLM - Malpractice-Legal
☐ TOOM - Malpractice-Other
☐ TBFM - Fraud/Bad Faith/Misrepresentation
☐ TOXX - Other: _____

**TORTS: PERSONAL INJURY**
☐ TOPE - Personal Property
☐ TORE - Real Property

**OTHER CIVIL FILINGS**
☐ ABAN - Abandoned Automobile
☐ ACCT - Account & Nonmortgage
☐ APAA - Administrative Agency Appeal
☐ ADPA - Administrative Procedure Act
☐ ANPS - Adults in Need of Protective Service

**OTHER CIVIL FILINGS (cont'd)**
☐ MSXX - Birth/Death Certificate Modification/Bond Forfeiture Appeal/
Enforcement of Agency Subpoena/Petition to Preserve
☐ CVRT - Civil Rights
☐ COND - Condemnation/Eminent Domain/Right-of-Way
☐ CTMP - Contempt of Court
☐ CONT - Contract/Ejectment/Writ of Seizure
☐ TOCN - Conversion
☐ EQND - Equity Non-Damages Actions/Declaratory Judgment/
Injunction Election Contest/Quiet Title/Sale For Division
☐ CVUD - Eviction Appeal/Unlawful Detainer
☐ FORJ - Foreign Judgment
☐ FORF - Fruits of Crime Forfeiture
☐ MSHC - Habeas Corpus/Extraordinary Writ/Mandamus/Prohibition
☐ PFAB - Protection From Abuse
☐ EPFA - Elder Protection From Abuse
☐ QTLB - Quiet Title Land Bank
☐ FELA - Railroad/Seaman (FELA)
☐ RPRO - Real Property
☐ WTEG - Will/Trust/Estate/Guardianship/Conservatorship
☐ COMP - Workers' Compensation
☑ CVXX - Miscellaneous Circuit Civil Case

**ORIGIN:** F ☑ INITIAL FILING   A ☐ APPEAL FROM DISTRICT COURT   O ☐ OTHER

R ☐ REMANDED   T ☐ TRANSFERRED FROM OTHER CIRCUIT COURT

**HAS JURY TRIAL BEEN DEMANDED?** ☑ YES ☐ NO   Note: Checking "Yes" does not constitute a demand for a jury trial. (See Rules 38 and 39, Ala.R.Civ.P, for procedure)

**RELIEF REQUESTED:** ☑ MONETARY AWARD REQUESTED ☐ NO MONETARY AWARD REQUESTED

**ATTORNEY CODE:**
MOR099      7/7/2021 6:18:47 AM      /s/ MARIELLEN MORRISON MS.
Date      Signature of Attorney/Party filing this form

**MEDIATION REQUESTED:** ☐ YES ☑ NO ☐ UNDECIDED

**Election to Proceed under the Alabama Rules for Expedited Civil Actions:** ☐ YES ☐ NO

IN THE CIRCUIT COURT FOR MADISON COUNTY

ELECTRONICALLY FILED
7/7/2021 6:18 AM
47-CV-2021-900838.00
CIRCUIT COURT OF
MADISON COUNTY, ALABAMA
DEBRA KIZER, CLERK

| | |
|---|---|
| JUST 4 THE KIDS DAYCARE and EDWARDS, PAULETTE, ) ) ) | |
| Plaintiffs, ) ) | |
| vs. ) ) | CASE NO. CV-2021-_____ |
| BO MATTHEWS CENTER FOR EXCELLENCE, ) ) ) ) | |
| Defendant. ) | |

## COMPLAINT

COME NOW the Plaintiffs, JUST 4 THE KIDS DAYCARE (hereinafter "the Daycare") and PAULETTE EDWARDS (hereinafter "Edwards") and submit their Complaint against the Defendant, BO MATTHEWS CENTER FOR EXCELLENCE (hereinafter "BMCE") and state claims of Quantum Meruit and Money Had and Received.

### PARTIES AND JURISDICTION

1. The Daycare is a business entity registered with the Alabama Secretary of State whose registered address is 1011 Parklane Street, Huntsville, AL 35816.

2. Edwards is the registered agent for the Daycare and the administrator at the physical location where the Daycare provides services, 4000 Pulaski Pike, Huntsville, AL 35810.

3. BMCE is registered as a non-profit entity with the Alabama Secretary of State, listing Brandi Matthews-Ellis as the registered agent and director replacing Bobby Patton April 27, 2021. The street address is listed as 4000 Pulaski Pike, Huntsville, AL 35810. William P. Matthews is listed as the incorporator. The mailing address is P.O. Box 17167 Huntsville, AL 35810.

### UNDISPUTED FACTS

4. On May 29, 2018, Edwards leased property located at 4000 Pulaski Pike, Huntsville, AL from the lessors - Bo and Barbara Matthews (William P. Matthews a/k/a Bo Matthews).

5. Terms of the lease were specifically for 36 months and due to begin on August 1, 2018 and payments were to be made monthly in the amount of $3,800.

6. Payments were to be made to the "Lessor" (Bo and Barbara Matthews hereinafter "Matthews").

7. The "Lessee" (Edwards) was to operate a daycare on the premises.

8. Edwards was unable to take possession of the premises until late February 2019 when a certificate of occupancy was approved.

9. The property located at 4000 Pulaski Pike, Huntsville, AL is owned by BMCE and was acquired from Matthews on December 26, 2001 by a Quit Claim Deed.

## COUNT I – QUANTUM MERUIT

10. Statement 1 through 9 are incorporated herein as if fully set forth.

11. Matthews represented to Edwards he was owner of the property prior to executing the lease with her and that the building was up to building code for the purpose of use as a business (daycare) and was in a move in condition or state.

12. The building failed inspections by the Madison County Health Department and the City of Huntsville Buildings and Inspection and the Fire Marshall on numerous occasions. Thus Edwards and the Daycare were deprived of being able to operate the business. The final occupancy permit was dated for the later part of February, 2019.

13. The roof leaked, air conditioners did not work, drainage problems existed, toilets and other plumbing did not work, water pipes were clogged and broken, no telephone wire service or internet availability, windows were broken, interior doors were used for exits, mold and mildew was covered by new paint without removal, electrical breaker panel was substandard, fire and burglar alarms did not work, asbestos required removal, termite damage to walls, in addition to other problems including the kitchen appliances which had to be replaced.

14. The building was used for storage by Matthews and that property was not removed until October 2018, after the proposed 36 month lease inception of August 1, 2018.

15. Terms of the lease included Matthews would be responsible for repairs to the heating and cooling system when over FIVE HUNDRED DOLLARS ($500.00) and required use of Matthews' authorized "Repair Company"; and "Lessee shall be responsible for all repairs required, excepting the roof, exterior walls, structural foundations, and the parking lot, which shall be maintained by Lessor.

16. Matthews refused to reimburse Edwards and the Daycare has been caused pay ONE HUNDRED AND EIGHT THOUSAND, TWO HUNDRED AND FIVE DOLLARS AND FORTY-THREE CENTS ($108,205.43) in repairs and maintenance.

17. Edwards filed a Mechanics Lien against BMCE in the amount of NINETY-FIVE THOUSAND DOLLARS AND NO CENTS ($ 95,000.00) on June 3, 2021 in the Madison County Probate Court; and on June 25, 2021 filed another lien in the Madison

County Probate Court in the amount of THIRTEEN THOUSAND, TWO HUNDRED AND FIVE DOLLARS AND FORTY THREE CENTS ($ 13,205.43).

18. BMCE, is the legal owner with deed to property at 4000 Pulaski Pike, Huntsville, AL, benefited by the repairs and maintenance which were required by the City of Huntsville for the occupancy of the building to occur; and benefited by the repairs and maintenance that has increased the value of the building to which the building may now be legally leased, rented or occupied, as well as preventing the further devaluation of the property. WHEREFORE the Premises Considered, Edwards and the Daycare respectfully requests this Honorable Court for a trial by jury and the following order and relief from BMCE:

   a. An Order for reimbursement of all monies expended toward the repair and maintenance of the BMCE real property; and

   b. Reimbursement for the cost of this action and reasonable attorney fees; and

   c. For this and any other relief for which the Plaintiff's may be entitled unto in a court of equity.

## COUNT TWO – MONEY HAD AND RECEIVED

19. Paragraphs 1 through 18 are incorporated herein as if set forth in full.

20. William P. "Bo" and Barbara Matthews are officers of BMCE.

21. BMCE lost their Federal and 501(c)(3) I.R.S. recognition as a non-profit entity when it was revoked in 2017 for failure to file the required annual tax filing as well as the failure to pay payroll taxes due for prior years. Mathews has operated as if he owns the property and disregarded the legal deed belonging to BMCE.

22. The I.R.S. has filed two (2) tax liens on the property in the Madison County Probate Court – which remain unpaid as the money paid by Edwards and the Daycare went to Matthews and not BMCE.

23. BMCE has failed to correct deficiencies with the Alabama Secretary of State to acknowledge the non-profit status change and continues to benefit from the improper non-profit status by not paying State and local property tax, as well as business property tax. BMCE continues to be registered with the Alabama Secretary of State, although no annual business entity filing has been made and paid for since 2012.

23. Matthews received monthly lease payments from Edwards and the Daycare totaling EIGHTY THREE THOUSAND FIVE HUNDRED AND SEVENTY-SIX DOLLARS AND FIFTY-ONE CENTS ($83,576.51) since May 3, 2018 through September 23, 2020.

Edwards has made payments to Matthews as follows:

| Date | Amount |
|---|---|
| 5-03-18 | $ 1,900.00 |
| 5-29-18 | $ 3,800.00 |
| 6-01-18 | $ 1,600.00 |
| 8-23-18 | $ 2,400.00 |
| 1-09-19 | $ 1,900.00 |
| 1-25-19 | $ 1,900.00 |
| 1-29-19 | $ 1,900.00 |
| 2-08-19 | $ 5,700.00 |
| 2-18-19 | $ 2,500.00 |
| 2-26-19 | $ 3,466.00 |
| 3-01-19 | $ 3,800.00 |
| 4-19-19 | $ 1,980.51 |
| 5-06-19 | $ 1,000.00 |
| 5-13-19 | $ 2,800.00 |
| 6-19-19 | $ 1,830.00 |
| 7-11-19 | $ 2,500.00 |
| 7-16-19 | $ 1,300.00 |
| 8-10-19 | $ 3,800.00 |
| 9-10-19 | $ 3,800.00 |
| 10-8-19 | $ 3,800.00 |
| 11-8-19 | $ 3,800.00 |
| 12-10-19 | $ 3,800.00 |
| 1-10-20 | $ 3,800.00 |
| 2-08-20 | $ 3,800.00 |
| 3-01-20 | $ 3,800.00 |
| 4-01-20 | $ 1,800.00 |
| 4-00-20 | $ 1,800.00 |
| 5-00-20 | $ 900.00 |
| 5-00-20 | $ 900.00 |
| 5-00-20 | $ 1,900.00 |
| 8-00-20 | $ 1,800.00 |
| 9-00-20 | $ 1,800.00 |

24.    This money was paid in cash to Matthews or checks that were written out to Matthews as per terms of the lease and improperly comingled with Matthews personal money in his own personal bank account.

25.    This money rightfully was due to be paid to BMCE, - Edwards and the Daycare were unaware the property was owned by BMCE until the later part of 2020 when Matthews filed an Unlawful Detainer action against Edwards and the Daycare in October, 2020.

26.    Edwards and the Daycare has been denied the leaseholder's rights of quiet enjoyment of the leased premises due to the failure of Matthews to remove storage items until after the lease was to have started; unable to move into the business and operate a daycare due to the property failing inspections; and in 2020 Matthews sought to start another business in the premises and took possession of two classrooms and a conference room for that purpose without permission of Edwards; and the legal action of the improper Unlawful Detainer has deprived Edwards and the Daycare of the quiet and peaceful occupancy.

27.    Edwards and the Daycare have also paid a monthly amount of THREE THOUSAND and EIGHT HUNDRED DOLLARS and NO CENTS ( $3,800.00) each month for November and December 2020, and the same for January, February, March, April, May, June and July, 2021 to the Madison County Circuit Court to maintain possession during the appeal of the Unlawful Detainer and Counterclaims which were filed by Edwards and the Daycare.  Total paid to Clerk and on deposit currently:  $ 34,200.00.

WHEREFORE, THE PREMISES CONSIDERED, Edwards and the Daycare respectfully requests of this Court for a trial by jury and judgment against BMCE and for the following relief:

    a.  An Order to refund all lease or rent money paid to Matthews - $83,576.51; and

    b.  An Order to refund payments deposited with the Madison Circuit Court Clerk; and

    c.  An Order requiring payment of legal fees and attorney expenses in this matter; and

    d.  For this and any and all relief which Edwards and the Daycare may be entitled unto in a court of equity.

**TRIAL BY JURY REQUESTED.**


Respectfully,

                /s/    *Mari Morrison*
                MARI MORRISON (MOR099)
                ATTORNEY FOR PLAINTIFFS
                430 RONNY LANE
                SPRINGVILLE, AL  35146
                (205) 837-2771
                marimorrison1@gmail.com

Recording requested by (name):

)
)
*Paulette Edwards*
)
)
)
)
)

When recorded, mail to (name and address):
)
)
PAULETTE EDWARDS
)
PO BOX 5926
)
HUNTSVILLE, AL 35814
)
)
)
)

Doc ID: 024094810003 Type: LIEN
Filed/Cert: 06/03/2021 10:20:00 AM
Fee Amt: $30.75 Page 1 of 3
Madison County,AL
FRANK BARGER Probate Judge
File **2021-00045535**

_____
SPACE ABOVE THIS LINE FOR RECORDER'S USE

# MECHANIC'S LIEN

**STATE OF ALABAMA**
)
)
**COUNTY OF MADISON**
)

1.    Paulette Edwards (the "Claimant"), located at PO Box 5926, Huntsville, Alabama 35814, claims a mechanics lien for the labor or services or equipment or materials described herein, furnished for a work of improvement on that certain real property located in the County of Madison, in the State of Alabama. The complete address of the real property on which this mechanics lien is claimed is: 4000 Pulaski Pike NW, Huntsville, Alabama 35810 (the "Property"). The permanent index identification number of the Property is:    The legal description of the Property is:

SEC 15 T3S R1W PT OF THE SW1/4 OF THE NE1/4 OF SEC 15 BEG ON THE N R/O/W OF STRINGFIELD RD N 25 FT E 215.84 FT FR CEN OF SEC 15 TH N 13.85 FT W 112.40 FT TH ALG INTERS OF STRINGFIELD RD W1 PULASKI PIKE N 44 DEG W 84.73 FT TH ALG E ROW OF PULASKI PK N 1 DEG E 356.43 FT S 86 DEG E 246.50 FT S 16 DEG E 269.68 FT S 2 DEG W 163.50 FT & W 153.06 FT TO POB

2.    The labor or services or equipment or materials were furnished by Claimant at the request of: Just 4 The Kids Daycare, LLC, located at 4000 Pulaski Pike NW, Huntsville, Alabama 35810.

3.    The owner of the Property is: William P. Matthews, located at 1013 Coronado Ave SE, Huntsville, Alabama 35812

4.     On 11/02/2020, the Claimant entered into an oral contract with William P. Matthews and Sub Contractor, Walter Peavy to change and/or upgrade the repairs, roof, termite damage, air conditioners and heating system, plumbing into the premises, exterior features on said Property (the "Contract") for the original total sum of $75,000.00, which became due and payable on 05/28/2021, the date of completion of the build and/or project services.

Upon request, the Claimant purchased and provided additional materials and labor for requested changes and/or upgrades at the total cost of $20,000.00, which became due and payable on 05/28/2021, the date of completion of the build and/or project services.

5.     After deducting all just credits and offsets, the sum of $95,000.00 is due to Claimant for the labor or services or equipment or materials provided. The amount due to Claimant is subject to an interest rate of 10% per annum from 11/02/2020.

**Paulette Edwards**
**PO Box 5926**
**Huntsville Alabama 35814**

_____
(Signature)

Paulette Edwards
Owner

4 / 3 / 2021
_____
(Date)

# NOTARY ACKNOWLEDGMENT

**STATE OF ALABAMA**        )
                                   )   ss.

**COUNTY OF MADISON**       )

The Affiant, Paulette Edwards, being duly sworn, on oath deposes and says that s/he is the Claimant and that s/he has read the foregoing claim for the lien and knows the contents thereof, and that all statements therein contained are true and correct to the best of his/her belief and knowledge.

Subscribed and sworn to before me on *June 3, 2021*

_LaToya S. White_
(Notary Printed Name)

My commission expires on *9/19/2023*

Filed/Cert: 06/03/2021 10:20:00 AM
Fee Amt: $30.75 Page 3 of 3
Madison County,AL
FRANK BARGER Probate Judge
File **2021-00045535**

Recording requested by (name):      )
     )

**Just 4 The Kids Daycare ,**    )
**Paulette Edwards**       )
     )
     )

When recorded, mail to (name and address):   )
**Just 4 The Kids Daycare**     )
**PO Box 5926**         )
**Huntsville, AL 35814**     )
     )
     )
     )

Doc ID: 024171880003 Type: LIEN
Filed/Cert: 06/25/2021 04:12:00 PM
Fee Amt: $30.75 Page 1 of 3
Madison County,AL
FRANK BARGER Probate Judge
File **2021-00052828**

SPACE ABOVE THIS LINE FOR RECORDER'S USE

# MECHANIC'S LIEN

**STATE OF ALABAMA**    )
    )
**COUNTY OF MADISON**    )

1.    Just 4 The Kids Daycare, Paulette Edwards (the "Claimant"), located at PO Box 5926, Huntsville, Alabama 35814, claims a mechanics lien for the labor or services or equipment or materials described herein, furnished for a work of improvement on that certain real property located in the County of Madison, in the State of Alabama. The complete address of the real property on which this mechanics lien is claimed is: 4000 Pulaski Pike NW, Huntsville, Alabama 35810 (the "Property"). The permanent index identification number of the Property is:   The legal description of the Property is:

SEC 15 T3S R1W PT OF THE SW1/4 OF THE NE1/4 OF SEC 15 BEG ON THE N R/O/W OF STRINGFIELD RD N 25 FT E 215.84 FT FR CEN OF SEC 15 TH N 13.85 FT W 112.40 FT TH ALG INTERS OF STRINGFIELD RD W1 PULASKI PIKE N 44 DEG W 84.73 FT TH ALG E ROW OF PULASKI PK N 1 DEG E 356.43 FT S 86 DEG E 246.50 FT S 16 DEG E 269.68 FT S 2 DEG W 163.50 FT & W 153.06 FT TO POB

2.    The labor or services or equipment or materials were furnished by Claimant at the request of: Just 4 The Kids Daycare, LLC, located at 4000 Pulaski Pike NW, Huntsville, Alabama 35810.

3.    The owner of the Property is: Bo Matthews Center of Excellence and William P. Matthews, who claims to be the owner located at 1013 Coronado Ave SE, Huntsville, Alabama 35812.

4.    At the beginning of services, the Claimant entered an oral contract to roof repairs, termite damage, air conditioners and heating system, plumbing into the premises, exterior features on said Property (the "Invoiced") for the original total sum of $8,205.43, which became due and payable on 06/24/2021, the date of completion of the build and/or project services.

Upon request, the Claimant purchased and provided additional materials and labor for requested changes and/or upgrades at the total cost of $5,000.00, which became due and payable on 06/24/2021, the date of completion of the build and/or project services.

5.    After deducting all just credits and offsets, the sum of $13,205.43 is due to Claimant for the labor or services or equipment or materials provided.  The amount due to Claimant is subject to an interest rate of 10% per annum from 05/31/2021.

**Paulette Edwards**
**PO Box 5926**
**Huntsville Alabama 35814**

_(Signature)_

Paulette Edwards
Just 4 The Kids Daycare

6/25/2021
(Date)

# NOTARY ACKNOWLEDGMENT

**STATE OF ALABAMA**      )

                                )    ss.

**COUNTY OF MADISON**     )

The Affiant, Just 4 the Kids Daycare Rep. Paulette Edwards, being duly sworn, on oath deposes and says that s/he is the Claimant and that s/he has read the foregoing claim for the lien and knows the contents thereof, and that all statements therein contained are true and correct to the best of his/her belief and knowledge.

Subscribed and sworn to before me on   _June 25, 2021_

_LaToya S. White_
(Notary Printed Name)

My commission expires on:   _9 | 19 | 2023_

Filed/Cert: 06/25/2021 04:12:00 PM
Fee Amt: $30.75 Page 3 of 3
Madison County, AL
FRANK BARGER Probate Judge
File 2021-00052828

In re:                                    )
BO MATTHEWS CENTER OF          )          Case No. 21-81371-CRJ-7
EXCELLENCE                          )
                                          )          Chapter 7
                                          )
                                          )

# **<u>EXHIBIT 10</u>**



ELECTRONICALLY FILED
8/2/2021 10:50 AM
47-CV-2020-000096.00
CIRCUIT COURT OF
MADISON COUNTY, ALABAMA
DEBRA KIZER, CLERK

# IN THE CIRCUIT COURT OF MADISON COUNTY, ALABAMA

**WILLIAM P. MATTHEWS,**

     **Plaintiff,**

**v.**
                          **Case No.  CV-2020-000096.00**

**JUST 4 THE KIDS DAYCARE, and
PAULETTE EDWARDS,**

     **Defendants.**

## PLAINTIFF'S CONSOLIDATED MOTION FOR PARTIAL SUMMARY JUDGMENT, MOTION FOR WRIT OF POSSESSION, AND MOTION FOR DISBURSEMENT OF FUNDS

COMES NOW the Plaintiff, William P. "Bo" Matthews, pursuant to Rule 56 of the *Alabama Rules of Civil Procedure*, and respectfully moves for partial summary judgment as to the claim of possession.  Plaintiff further moves that a writ of possession be issued in his favor and that the rental amounts presently held by the Court be disbursed to him.  As grounds therefor, Plaintiff would show as follows:

### INTRODUCTION

Plaintiff seeks summary judgment as to his claim of possession under the unlawful detainer statute.  First and foremost, the lease in question has expired by its terms.  The lease specifically states that it expires on July 31, 2021, and no extension of the lease was ever signed in writing by the parties. Given the expiration of the lease, there can be no legitimate contention that Defendants are entitled to retain possession of the property.

1

Second, the unlawful detainer statute requires the Court to award possession to the plaintiff if the defendant fails to make any rent payment as it becomes due during the appeal. *See* Ala. Code § 6-6-351(b). The statutory procedure leaves the Court no discretion to allow a defendant to remain in possession upon making a late payment. Because the District Court awarded possession to Plaintiff, and because the undisputed facts show that Defendants were <u>several weeks</u> late in making their January 2021 rent payment, the Court is required by statute to issue a writ of possession in favor of Plaintiff.

Finally, the unlawful detainer statute directs the Court to order disbursement of the rental funds "upon disposition of the appeal." *Ala. Code* § 6-6-351(c). Here, the only claim that was decided by the District Court (and, therefore, the only claim being appealed to this Court) is the claim of possession. Upon deciding the claim of possession, the Court will have "disposed of the appeal," and the Court should order the disbursement of funds to Plaintiff.

## NARRATIVE STATEMENT OF UNDISPUTED FACTS

This is an unlawful detainer action. The property at issue is located at 4000 Pulaski Pike NW, Huntsville, AL 35801. (Matthews Aff., ⁋ 8). The owner of the property is the Bo Matthews Center of Excellence. (*Id.*).

Plaintiff Bo Matthews is the Incorporator and President of the Bo Matthews Center of Excellence (and has been since its inception). (Matthews Aff., ⁋ 3). As

2

president, the organization's bylaws grant broad authority to Mr. Matthews: "The President shall be the principal executive officer of the Corporation and shall have in his or her charge the general direction and promotion of its affairs with the authority to do such acts and to make such contracts as a necessary or proper to carry on the activities of the Corporation." (*Id.*).

On May 28, 2018, Mr. Matthews and Defendant Paulette Edwards executed the subject Commercial Lease. (Matthews Aff., ¶ 9).

22. ENTIRE AGREEMENT. The foregoing constitutes the entire agreement between the parties and may be modified only by a writing signed by both parties. The following Exhibits, if any, have been made a part of this lease before the parties' execution hereof:

SIGNED the ___29th___ day of ___MAY___ , 20_18_

By: _William P. Matthews_, Lessor     By: _Paul Edwards_ , Lessee
Bo Mathews

As shown above, Bo Matthews signed the Commercial Lease as "Lessor." Ms. Edwards signed the lease as "Lessee." Pursuant to the Commercial Lease, Mr. Matthews put Ms. Edwards in possession of the property. (Matthews Aff., ¶ 10).

The term of the Commercial lease was "**Thirty Six** months, commencing August 1st, 2018, and termination on July 31st 2021." (Commercial Lease, ¶ 1) (emphasis in original). The Commercial Lease provides that it "constitutes the entire agreement between the parties and may be modified only be a writing signed by both parties." (Commercial Lease, ¶ 22).

3

There is no modification or extension of the lease in "writing signed by both parties." (Matthews Aff., ¶ 13). Bo Matthews has never signed any extension of the lease in writing with Ms. Edwards. (*Id.*).

On October 26, 2020, Mr. Matthews filed this unlawful detainer action against Defendants due to Defendants' non-payment of rent.[1] (Doc. 1). A trial was held, and both parties were represented by counsel.

On November 30, 2020, the District Court entered a Final Order of Possession in favor of Mr. Matthews. (Doc. 10). For purposes of appeal, the District Court ordered: "The monthly rent is determined to be $3,800 per month, due on the first day of each month. (*Id.*, p. 2).

Ms. Edwards appealed the Final Order of Possession to this Court. (Doc. 16). As a condition of retaining possession of the property during her appeal, Ms. Edwards was required to make timely payment of rent into Court in the amount of $3,800 per month, due on the first day of each month." (*See* Doc. 10 and *Ala. Code* § 6-6-351(b)).

Ms. Edwards indisputably failed to make timely payment of rent into Court. Although Ms. Edwards made her initial payment of $3,800 with her appeal bond on

---

[1] Defendants now seem to admit that they failed to pay rent. On May 15, 2021, Defendants filed a Verified Answer and Counterclaim in which they assert a multitude of factually incorrect and legally irrelevant reasons as to why they believe their rent should be excused. (Doc. 103). But conspicuously absent from the Verified Answer is any allegation that Ms. Edwards actually made the rental payments as required under the lease.

4

December 3, 2020, her next payment was due on January 1, 2021. The Court's docket show that Ms. Edwards failed to pay the rent as required on January 1, 2021. By mid-January, Ms. Edwards still had paid the required rent into Court. (*Id.*). Accordingly, on January 19, 2021, Matthews filed a Motion for Writ of Possession, (Doc. 33), which the Court granted. (Doc. 56). On January 25, 2021, the Court issued a writ of possession in favor of Mr. Matthews. (Doc. 64).

The issuance of the January 25, 2021 writ of possession prompted Defendants to file an appeal with the Supreme Court of Alabama. (Doc. 83). However, that appeal was improper and was ultimately dismissed on a motion filed by Mr. Matthews. (Doc. 97). The case was then remanded to this Court for further proceedings.[2] (*Id.*).

On June 28, 2021, this Court held a hearing on pending motions, including Plaintiffs' motion to lift a stay of the writ of possession. (Doc. 131 and 142). At the hearing, the Court made it abundantly clear to Defendants that the Court did not intend to allow them to retain possession of the property beyond the expiration of their lease at the end of July 2021. Following the hearing, the Court issued an order granting Plaintiff's motion to lift stay but allowing Ms. Edwards to remain in the

---

[2] Following remand, Plaintiff requested a status conference with the Court before seeking to enforce the writ of possession, which had been reinstituted by the Supreme Court's dismissal of the appeal. (Doc. 99). In response, Defendants filed a motion to stay the writ of possession, (Doc. 112), which the Court granted. (Doc. 115). Mr. Matthew then filed a motion to lift the stay, or, alternatively, set the case for trial on the next available jury docket as a preferred case. (Doc. 128).

property through the end of July 2021 contingent upon her payment of the remaining month's rent into Court.  (Doc. 142).

The Court should also be made aware that Defendants have filed collateral lawsuit against the Bo Matthews Center of Excellence in which Defendants have requested a temporary restraining order against the pending eviction that is due to occur in this case.  *See Just 4 the Kids Daycare and Paulette Edwards v. Bo Matthews Center for Excellence*, Case No. 47-CV-2021-90083 (filed on July 7, 2021).  That case is assigned to Judge Mann; however, a Rule 12(b) motion has been filed to dismiss that action, which was improperly filed to attack the Court's rulings in this case, was not properly served, and fails to state a claim upon which relief can be granted.  No temporary restraining order has been issued by Judge Mann.

It is now August 2, 2021, and Defendants have not vacated the property despite expiration of the Commercial Lease.  (Matthews Aff., ⊩ 15).

<div align="center">**ARGUMENT**</div>

## I.     The Commercial Lease Is Expired By Its Terms.

As a matter of law, the Commercial Lease expired on July 31, 2021. (Commercial Lease, ⊩ 1).  Alabama Code § 35-9-9 states: "When a tenancy is for a certain period, and the term expired by the terms of the lease, the tenant is then bound to surrender possession, and no notice to quit or demand of possession is necessary."

<div align="center">6</div>

On its face, the Commercial Lease provided that it would terminate on July 31, 2021. (*Id.*). On its face, the Commercial Lease also stated that it "may be modified only by a writing signed by both parties." (*Id.,* ℙ 22).

There was never any subsequent modification or extension of the Commercial Lease in "writing signed by both parties." (Matthews Aff., ℙ 13). It is undisputed that Bo Matthews – the person who signed the Commercial Lease – never signed any modification or extension of the lease with Ms. Edwards. (*Id.*).

Defendants have alleged that Barbara Matthews extended the lease via an e-mail. This is not true,[3] but even if the Court assumes it to be so, an e-mail sent by Mrs. Matthews is not a "writing signed by both parties." The Commercial Lease was signed by Bo Matthews, and he never signed anything in writing to extend it.

The decision in *In re West Healthcare, LLC*, No. 10-43158-JJR, 2010 WL 5300939 (Bankr. N.D. Ala. Dec. 9, 2010), is instructive. In that case, the question was whether a lease had been extended via e-mail correspondence. There, the lease provided that an extension had to be "agreed in writing" prior to the expiration of the lease. *Id.* at *1. The court concluded that mere e-mail correspondence was insufficient to constitute an agreement in writing to extend the lease. In reaching that decision, the court explained as follows:

---

[3] At most, the e-mail allegedly sent by Mrs. Matthews expressed a willingness to consider an extension. However, it is undisputed that no extension was ever signed in writing by both parties.

Email-correspondence is not a writing in the conventional sense, it is an electronic transmittal of information. In this case the parties email-exchange cannot be elevated beyond a discussion of issues pertaining to the Lease. Before the advent of email, such an exchange would perhaps have taken place over the telephone. If such a telephone conversation had been recorded and later transcribed, the printed transcription would not be considered a writing satisfying a requirement in a previously written contract that an extension of its terms be evidenced by a formal writing. While the parties could have agreed that an email-exchange could constitute a writing sufficient to satisfy the terms of the Lease, they did not choose to do so. The Court will not casually ignore the bargained-for contract provision requiring that an extension of the Lease be evidenced by the parties' written agreement—a tangible written document with signatures—to do otherwise fosters uncertainty with regard to the status of important contractual obligations.

Accordingly, the Court finds that for an extension of the Lease to have been effective, the mutual agreement between the Debtor and Turenne must have been evidenced by a tangible written document that was not unlike the Lease itself; no such tangible writing exists. The email-exchange, although later converted from an electronic format to a printed one, cannot be recognized as a substitute for a formal writing when the written Lease—the original and controlling contract—unequivocably required a subsequent written agreement as the means to achieve an effective extension.

*Id.* at *3.

As explained in *West Healthcare*, any argument that the lease was extended based upon e-mail correspondence fails as a matter of law. Indeed, in *West Healthcare*, the lease only specified that the extension had to be "agreed in writing." Here, however, the lease specified that any modification had to be in a "writing signed by both parties." (Commercial Lease, ¶ 22). Because there was never an

8

agreement in writing signed by both parties, the lease is expired as a matter of law, and the Court should award possession to Mr. Matthews.

## II. Mr. Matthews Is Entitled to Possession Based Upon the Late Payment of Rent, Which the Court Has No Discretion to Excuse.

Separately and independently from the expiration of the Commercial Lease, Mr. Matthews is entitled to possession because Defendants failed to make timely payment of rent into Court during their appeal. Pursuant to Alabama statute, if a tenant such as Ms. Edwards is late in making even a single rental payment during her unlawful detainer appeal, the order of possession entered by the district court goes into effect, and the plaintiff (here, Mr. Matthews) is entitled to a writ of possession. As explained below, the statutory procedure does not allow the Court any discretion to excuse a late payment by the tenant on appeal.

The Court's authority in this matter is controlled by statute. In particular, Alabama Code § 6-6-351 states as follows:

(a) Notwithstanding any other provisions of law or of the Alabama Rules of Civil Procedure, in cases of forcible entry or unlawful detainer, an appeal to circuit court or to appellate court does not prevent the issue of a writ of restitution or possession unless the defendant pays to the clerk of the district court all rents called for under the terms of the lease, since the date of the filing of the action and continues to pay all rent that becomes due and payable under the terms of the lease as they become due, during the pendency of the appeal, and the sums are to be ascertained by the judge.

(b) If the defendant should fail to make any payments as they become due under subsection (a), the court shall issue a writ of restitution

9

or possession and the plaintiff <u>shall</u> be placed in full possession of the premises.

(c) Upon disposition of the appeal, the court shall direct the clerk as to the disposition of the funds paid to the clerk pursuant to subsection (a).

*Ala. Code* § 6-6-351 (emphasis added).

The above statute is very clear. Subsection (b) states: "If the defendant should fail to make <u>any payments as they become due</u>, the court <u>shall</u> issue a writ of restitution and the plaintiff <u>shall</u> be placed in full possession of the premises." *Ala. Code* § 6-6-351(b). In the present case, Defendants failed to make payment their January 1, 2021 payment "as [it] became due." *Id*. Under those circumstances, the statute instructs that the Court "shall" issue a writ of possession and "shall" put the plaintiff in full possession of the premises. *Id.*

Significantly, the statute does not require the tenant to miss multiple payments but applies if the tenant misses "any" payments as they become due. The statute's use of the word "shall" is also significant. As the Alabama Supreme Court has clearly stated, the word 'shall,' when used in a statute, is mandatory, i.e., not discretionary." *Ex parte Steinberg*, 294 So. 3d 835, 841 (Ala. Crim. App. 2019) citing *Ex parte Nixon*, 729 So. 2d 277, 278 (Ala. 1998). "The word 'shall' is clear and unambiguous and is imperative and mandatory." *Ex parte Prudential Ins. Co. of Am.*, 721 So. 2d 1135, 1138 (Ala. 1998). "The word in ordinary usage means

10

'must' and is <u>inconsistent with a concept of discretion</u>." *Id.* quoting *Black's Law Dictionary* 1375 (6th ed.1991) (emphasis added).

In the present case, the District Court issued a Final Order of Possession awarding possession of the property to Mr. Matthews. (Doc. 10). Pursuant to the Final Order of Possession, Mr. Matthews has a clear legal right to possession of the property. While it is true that Defendants are appealing the District Court's decision, and while is also true that this Court hears such appeals *de novo*, the filing of an appeal generally does not, by itself, negate the enforceability of the judgment on appeal. Alabama Code § 6-6-351(a) states this explicitly: "an appeal to circuit court or to appellate court does not prevent the issue of a writ of restitution or possession unless the defendant pays … and continues to pay all rent that becomes due and payable under the terms of the lease as they become due …."

In the present case, the only thing holding the District Court's judgment in abeyance was the statutory exception allowing a tenant to retain possession on appeal so long as the tenant "continues to pay all rent that becomes due and payable under the terms of the lease as they become due …." *Ala. Code* § 6-6-351(a). However, because Defendant failed to "pay all rent that becomes due and payable under the terms of the lease <u>as they become due</u>," *id.* (emphasis added), Defendants lost the protection of the statute. Defendants then became covered by subsection (b), which provides: "If the defendant should fail to make <u>any</u> payments <u>as they</u>

11

become due under subsection (a), the court shall issue a writ of restitution or possession and the plaintiff shall be placed in full possession of the premises." *Ala. Code* § 6-6-351(b).

In summary, because it is undisputed that Defendants failed to make all payments as they became due, the Court is required by Alabama Code § 6-6-351(b) to issue the writ of possession in favor of Mr. Matthews. The statute's use of the word "shall" leaves the Court with no discretion to do otherwise. As a matter of law, when Defendants were late in paying their January rent as it became due, they lost the protection of the statute, and the Mr. Matthews became entitled to enforce the Final Order of Possession issued by the District Court. The fact that Defendants subsequently "caught up" on payments makes no difference under the statute, because the mandatory language of statute leaves the Court with no discretion to excuse a late payment.

## III. Title Is Not a Defense to Possession in an Unlawful Detainer Action.

Defendants have previously cited ejectment cases to argue that Bo Matthews cannot bring this unlawful detainer action because title to the property is held by the Bo Matthews Center of Excellence – an organization that Mr. Matthews incorporated and of which he is President. However, this is not an ejectment case, and Defendants' arguments are wrong as matter of law. As explained below,

12

Alabama law explicitly precludes the Court from considering the question of title as a defense to a demand for possession in an unlawful detainer action.

First, any argument that Bo Matthews lacks the authority to bring this unlawful detain action is meritless and self-contradictory. The only arguable right to possession that Ms. Edwards ever had was pursuant to the Commercial Lease signed by Mr. Matthews. Mr. Matthews is the party named in the Commercial Lease; he is the person who signed the lease; he is the person who put Ms. Edwards in possession of the property; and he is the President of the Bo Matthews Center of Excellence. Significantly, Defendants tried to challenge standing in their appeal to the Supreme Court, and the Court requested briefing of that jurisdictional issue. Had the Supreme Court found any merit to Defendants' arguments, the Court could have dismissed the action *sua sponte*. *See e.g. Rogers v. Burch Corp.*, 313 So. 3d 555 (Ala. 2020). But, it did not do so.

Second, Alabama law does not require the plaintiff to show title in order to bring an unlawful detainer action. Alabama Code § 6-6-310(2) defines "unlawful detainer" as: "Where one who has lawfully entered into possession of lands as tenant fails or refuses, after the termination of the possessory interest of the tenant, to deliver possession of the premises to anyone lawfully entitled or his or her agent or attorney." (emphasis added). In *Jackson v. Davis*, 153 So. 3d 820, 827 (Ala. Civ. App. 2014), the Alabama Court of Civil Appeals explained that one of the primary

13

differences between ejectment and unlawful detainer is that ejectment must be brought in circuit court by the holder of legal title to the property, whereas unlawful detainer is brought in district court and does not require the plaintiff to show legal title.

Finally, the Court is precluded by statute from inquiring into the question of title as a defense to a demand for possession in an unlawful detainer action. Alabama Code § 6-6-336 states: "<u>The estate or merits of the title cannot be inquired into on the trial of any complaint filed under this article</u>, but all legal and equitable defenses may be had against a recovery for damages or for the unlawful detention of the land." (Emphasis added). "This section was interpreted in *Archer v. Sibley*, 201 Ala. 495, 78 So. 849 (1918) to mean that while <u>the parties may not inquire into the title for the purpose of defeating the plaintiff's right to recover possession</u>, it may be inquired into as a defense against the recovery of rent or damages for the detention." *Mitchell v. Rogers*, 370 So. 2d 263, 264 (Ala. 1979). *Holcomb v. Morris*, 457 So. 2d 973, 976 (Ala. Civ. App. 1984) ("Unlawful detainer concerns only the right of possession of property and usually does not involve any question of title in the land.").

For all of the foregoing reasons, title is a non-issue regarding the claim for possession of the property.

14

IV.     **Mr. Matthews Is Entitled to Disbursement of the Rent That Has Been Paid Into Court.**

Alabama Code § 6-6-351(c) states: "Upon disposition of the appeal, the court shall direct the clerk as to the disposition of the funds paid to the clerk pursuant to subsection (a)." (Emphasis added). Thus, the stated time in the statute for the disbursement of funds is "upon the disposition of the appeal."

In this case, the District Court issued a Final Order of Possession in favor of Mr. Matthews. (Doc. 10). The claim of possession was the only claim decided by the District Court in the Final Order of Possession. (*Id.*). The Court expressly did not decide any monetary issues but instead continued those issues to a future date. (*Id.*). Defendants then appealed the District Court's order of possession before the District Court could decide the monetary issues.

Based upon the foregoing, the only claim that is presently being "appealed" to this Court is the claim for possession. The claim of possession is the only claim that was decided by the District Court, and Defendants filed their appeal before allowing the District Court to decide any other claim.

Presuming that the Court decides the claim of possession in favor Mr. Matthews (as it should for the reasons argued above), then the Court will have "disposed of the appeal." *See* Ala. Code § 6-6-351(c). Because the statute specifies that the funds are to be disbursed "upon the disposition of the appeal," the Court

15

should direct the Clerk of Court to disburse the existing rent payments to Mr. Matthews.

Finally, it should be noted that the Commercial Lease provides: "In case suit should be brought for recovery of the premises … the prevailing party shall be entitled to all costs incurred in connection with such action, including reasonable attorney's fee." (Commercial Lease, ⁋ 20). However, Plaintiff agrees that the issue of attorney's fees can be resolved at a later date with the remaining monetary claims.

## CONCLUSION

Based upon the foregoing, there is no genuine issue of material fact, and Mr. Matthews is entitled to judgment as a matter of law on the issue of possession. Mr. Matthews respectfully requests that the Court re-issue the writ of possession in his favor. Mr. Matthews further request that the Court direct the Clerk of Court to disburse the existing rental funds to him as requested above.

Respectfully submitted this 2nd day of August, 2021.

**Wilmer & Lee, P.A.**
/s/ Richard J.R. Raleigh, Jr.
Richard J.R. Raleigh, Jr. (RAL003)

/s/ Christopher L. Lockwood
Christopher L. Lockwood (LOC018)

Attorneys for William P. "Bo" Matthews
Wilmer & Lee, P.A.
100 Washington Street, Suite 100
Huntsville, Alabama 35801

16

(256) 533-0202 – telephone
(256) 533-0302 – facsimile
Email: rraleigh@wilmerlee.com
           clockwood@wilmerlee.com

## **CERTIFICATE OF SERVICE**

I hereby certify that on August 2, 2021, a copy of the foregoing was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. Parties may access this filing through the Court's electronic filing system.

/s/ Richard J.R. Raleigh, Jr.
Of Counsel

17



ELECTRONICALLY FILED
8/2/2021 10:50 AM
47-CV-2020-000096.00
CIRCUIT COURT OF
MADISON COUNTY, ALABAMA
DEBRA KIZER, CLERK

## IN THE CIRCUIT COURT OF MADISON COUNTY, ALABAMA

**WILLIAM P. MATTHEWS,**

    **Plaintiff,**

**v.**

    **Case No. CV-2020-000096.00**

**JUST 4 THE KIDS DAYCARE, and
PAULETTE EDWARDS,**

    **Defendants.**

## AFFIDAVIT OF WILLIAM P. MATTHEWS

BEFORE ME, the undersigned officer authorized by law to administer oaths, personally appeared WILLIAM P. MATTHEWS, who being first duly placed under oath, did swear or affirm as follows:

1.    My name is William P. Matthews. I am sometimes known as "Bo" Matthews. I make this affidavit of my own personal knowledge.

2.    In June of 2001, I acquired a parcel of land and a building located at 4000 Pulaski Pike NW, Huntsville, Alabama, 35810.

3.    In December 2001, I organized an Alabama non-profit entity known as the Bo Matthews Center of Excellence. I am the President of the Bo Matthews Center of Excellence and have been since its inception.

4.    A true and correct copy of the Articles of Incorporation of the Bo Matthews Center of Excellence is attached hereto as Exhibit 1.

1

5.      A true and correct copy of the Minutes of Organization Meeting of Board of Trustees of Bo Matthews Center of Excellence are attached hereto as Exhibit 2.

6.      A true and correct copy of the Bylaws of the Bo Matthews Center of Excellence is attached hereto as Exhibit 3.

7.      Upon forming the Bo Matthews Center of Excellence, I deeded the property located at 4000 Pulaski Pike to the Center.

8.      The Bo Matthews Center of Excellence is the owner of the property located at 4000 Pulaski Pike NW. A true and correct copy of the deed to the property is attached hereto as Exhibit 4. The deed is accompanied by a scrivener's affidavit which corrects the name of the owner from "Bo Matthews Center for Excellence" to "Bo Matthews Center of Excellence."

9.      On May 29, 2018, I leased the property at 4000 Pulaski Pike NW to Defendant Paulette Edwards. A true and correct copy of the Commercial Lease is attached hereto as Exhibit 5.

10.     Pursuant to the Commercial Lease, I put Ms. Edwards in possession of the property as its tenant. Since that time, Ms. Edwards has used the property to operate a daycare business, Just 4 the Kids Daycare.

2

11.     Paragraph 1 of the Commercial Lease states that the lease was for "a term of Thirty Six months, commencing August 1st 2018, and terminating on July 31st 2021 ...."

12.     Paragraph 22 of the Commercial Lease stated that the agreement "may be modified only by a writing signed by both parties."

13.     I have never signed any writing to extend the Commercial Lease beyond July 31, 2021.

14.     The Commercial Lease expired on July 31, 2021.

15.     It is now August 2, 2021, but Ms. Edwards and her business continue to occupy the property despite the expiration of the Commercial Lease.

FURTHER THE AFFIANT SAYETH NOT.

William P. Matthews

STATE OF ALABAMA
COUNTY OF MADISON

SWORN TO and subscribed before me this 2rd day of August, 2021.

Notary Public

My commission expires: My Commission Expires 01/17/2024

3

# Exhibit 1



STATE OF ALABAMA )
)
COUNTY OF MADISON )

# ARTICLES OF INCORPORATION

## OF

## BO MATTHEWS CENTER OF EXCELLENCE

****************************

KNOW ALL MEN BY THESE PRESENTS: That I, the undersigned, incorporator, do hereby form a corporation under the Alabama Nonprofit Corporation Act, and do declare:

### ARTICLE I

### Name

The name of the Corporation shall be Bo Matthews Center of Excellence.

### ARTICLE II

### Purposes

The purposes for which the Corporation is organized are:

(1) To receive and maintain a fund or funds of real or personal property, or both, and, subject to the restrictions and limitations hereinafter set forth, to use and apply the whole or any part of the income therefrom and the principal thereof exclusively for charitable, religious, scientific, literary, research, or educational purposes,

Chinson\MatthewsWm Ctr for Excell Art Inc

STATE OF ALA. MADISON CO.
I CERTIFY THIS INSTRUMENT
WAS FILED ON

01 DEC 26 PM 2: 31

RECORDED & $ ____ MTG TAX
& $ ____ DEED TAX HAS BEEN
PD ON THIS INSTRUMENT

JUDGE OF PROBATE

RECEIVED

DEC 27 2001

SECRETARY
OF STATE

either directly or by contributions to organizations that qualify as exempt organizations under Section 501(c)(3) of the Internal Revenue Code and its Regulations as they now exist or as they may hereafter be amended.

(2) No part of the net earnings of the Corporation shall inure to the benefit of any Trustee, officer of the Corporation, or any private individual (except that reasonable compensation may be paid for services rendered to or for the Corporation effecting one or more of its purposes), and no Trustee, officer of the Corporation, or any private individual shall be entitled to share in the distribution of any of the corporate assets on dissolution of the Corporation. No substantial part of the activities of the Corporation shall be the carrying on of propaganda, or otherwise attempting, to influence legislation, and the Corporation shall not participate in, or intervene in (including the publication or distribution of statements) any political campaign on behalf of any candidate for public office. Under no circumstances shall the Corporation make loans to officers and Trustees.

(3) Notwithstanding any other provision of these Articles, the Corporation shall not conduct or carry on any activities not permitted to be conducted or carried on by an organization exempt under Section 501(c)(3) of the Internal Revenue Code and its Regulations as they now exist or as they

Chinson\MatthewsWm Ctr for Excell Art Inc   2

may hereafter be amended; or by an organization to which contributions are deductible under Section 170(c)(2) of such Code and Regulations as they now exist or as they may hereafter be amended.

(4) Upon the dissolution of the Corporation or the winding up of its affairs, the assets of the Corporation shall be distributed as set forth in Article IV.

<center>ARTICLE III</center>

<center>Powers</center>

As a means of accomplishing the foregoing purposes, the Corporation shall have the following powers, in addition to the general powers provided by statute:

(1) To accept, acquire, receive, take, and hold by bequest, devise, grant, gift, purchase, exchange, lease, transfer, judicial order or decree, or otherwise, for any of its objectives and purposes, any property, both real and personal, of whatever kind, nature or description and wherever situated.

(2) To sell, exchange, convey, mortgage, lease, transfer, or otherwise dispose of, any such property, both real and personal, as the objectives and purposes of the Corporation may require, subject to such limitations as may be prescribed by law.

Chinson\MatthewsWm Ctr for Excell Art Inc    3

(3) To borrow money, and from time to time, to make, accept, endorse, execute, and issue bonds, debentures, promissory notes, bills of exchange, and other obligations of the Corporation for monies borrowed or in payment for property acquired or for any of the other purposes of the Corporation, and to secure the payment of any such obligations by mortgage, pledge, deed, indenture, agreement, or other instrument of trust, or by other lien upon, assignment of, or agreement in regard to all or any part of the property, rights or privileges of the Corporation, wherever situated, whether now owned or hereafter to be acquired.

(4) To invest and reinvest its funds in such stock, common or preferred, bonds, debentures, mortgages, or in such other securities and property as its Board of Trustees shall deem advisable, subject to the limitations and conditions contained in any bequest, devise, grant, or gift, provided such limitations and conditions are not in conflict with the provisions of Section 501(c)(3) of the Internal Revenue Code and its Regulations as they now exist or as they may hereafter be amended.

(5) The Corporation shall have the power to make payments for the purposes of the Corporation herein referred to out of either the principal or the income of the Corporation, and to accumulate income from the property in its

Chinson\MatthewsWm Ctr for Excell Art Inc    4

possession as such, provided that such accumulations are not unreasonable in amount, duration, use or investment, to such an extent that such accumulations result in a denial to the Corporation of exemption under Section 501(c)(3) of the Internal Revenue Code and its Regulations as they now exist or as they may hereafter be amended, or a denial to the Corporation of the benefits of exemption from the payment of income taxes as provided under any applicable laws and statutes of the United States, whether now in effect or hereafter adopted.

(6) In general, and subject to such limitations and conditions as are or may be prescribed by law, to exercise such other powers which now are or hereafter may be conferred by law upon a corporation organized for the purposes hereinabove set forth, or necessary or incidental to the powers so conferred, or conducive to the attainment of the purposes of the Corporation, subject to the further limitation and condition that, notwithstanding any other provisions of this certificate, only such powers shall be exercised as are in furtherance of the tax-exempt purposes of the Corporation and as may be exercised by an organization exempt under Section 501(c)(3) of the Internal Revenue Code and its Regulations as they now exist or as they may be hereafter be amended and by an organization to which contributions are

Chinson\MatthewsWm Ctr for Excell Art Inc    5

deductible under Section 170(c)(2) of such Code and Regulations as they now exist or as they may hereafter be amended.

## ARTICLE IV

### Duration

The duration of this Corporation shall be perpetual. Upon the dissolution of the Corporation or the winding up of its affairs, the assets of the Corporation shall be distributed exclusively to charitable, religious, scientific, literary or educational organizations which would then qualify under the provisions of Section 501(c)(3) of the Internal Revenue Code and its Regulations as they now exist or as they may hereafter be amended.

## ARTICLE V

### Members

The Corporation shall have no members.

## ARTICLE VI

### Initial Board of Trustees

The number of Trustees constituting the initial Board of Trustees shall be three (3), and the names and addresses of the persons who are to serve as the initial Trustees are as follows:

Chinson\MatthewsWm Ctr for Excell Art Inc    6

| Name | Address |
|------|---------|
| William P. Matthews | 1310 West 102nd Place<br>Northglenn, Colorado 80260 |
| Donald Patton | 3228 Delicado Drive<br>Huntsville, Alabama 35810 |
| Bobby Patton | 120 Andover Lane<br>Huntsville, Alabama 35810 |

## ARTICLE VII

### Trustees

(1) The corporate powers shall be exercised by the Board of Trustees, except as otherwise provided by statute, by the Articles of Incorporation, or by By-Laws hereafter adopted, and any amendments to the foregoing. The number of Trustees of the Corporation shall never be less than three (3) and shall be elected for such term and in such manner as the By-Laws shall prescribe. Any member of the Board of Trustees may be removed at any time and without assigning any cause therefor, by the affirmative vote of a majority of the members, if any, or by the affirmative vote of a majority of the remaining Trustees, as provided in the By-Laws, and written notification of such removal to such Director so removed, who shall, forthwith upon receipt of such notice, be considered as removed from the Board of Trustees.

(2) In furtherance, and not in limitation, of the powers conferred by statute, the Board of Trustees is

Chinson\MatthewsWm Ctr for Excell Art Inc    7

expressly authorized to make and alter the By-Laws of this Corporation.

(3) Any action required or permitted to be taken at any meeting of the Board of Trustees or of any Committee thereof may be taken without a meeting if, prior to such action, a written consent thereto is signed by all members of the Board or of such Committee, as the case may be, and such written consent is filed with the minutes of proceedings of the Board or Committee. Any such written consent shall have the same force and effect as a resolution, duly resolved at a meeting of the Board or of such a Committee.

(4) The Corporation may, in its By-Laws, confer powers upon its Board of Trustees in addition to the foregoing and in addition to the powers and authorities expressly conferred upon it by statute.

## ARTICLE VIII

### Incorporator

The name and address of the Incorporator are as follows:

Name

Address

William P. Matthews

1310 West 102nd Place
Northglenn, Colorado 80260

## ARTICLE IX

### Registered Office and Agent

The address of the Initial registered office of the Corporation, which shall also constitute its principal office,

Chinson\MatthewsWm Ctr for Excell Art Inc      8

is 4000 Pulaski Pike, Huntsville, Alabama 35811. The initial registered agent of the Corporation at such address shall be Bobby Patton.

### ARTICLE X

### Right to Amend Provisions in Articles

The Corporation reserves the right from time to time to amend, alter or repeal each and every provision contained in these Articles of Incorporation or to add one or more additional provisions, in the manner now or hereafter prescribed or permitted by the Alabama Nonprofit Corporation Act; provided, however, that the sole power to amend these Articles of Incorporation shall rest in the Board of Trustees.

I, THE UNDERSIGNED, being the incorporator hereinabove named, for the purpose of forming a corporation pursuant to the Alabama Nonprofit Corporation Act, have executed the foregoing Articles of Incorporation on this 19 day of December, 2001.

_William P. Matthews_
WILLIAM P. MATTHEWS

(INCORPORATOR)

This Instrument Prepared By:
Christine Sampson Hinson, Esquire
Hinson & Hinson, P.C.
4650 Whitesburg Drive, Suite 203
Huntsville, Alabama 35802
Telephone: (256) 382-5863
Facsimile: (256) 382-5870

Chinson\MatthewsWm Ctr for Excell Art Inc    9

OFFICE OF THE JUDGE OF PROBATE

STATE OF ALABAMA
MADISON COUNTY

CERTIFICATE OF INCORPORATION

OF

Bo Matthews Center of Excellence

I, the undersigned, Judge of Probate, Madison County, Alabama
here certify that Articles of Incorporation for the incorporation
of Bo Matthews Center of Excellence
duly signed pursuant to the provisions of the Code of Alabama, have
been received in this office and found to conform to law and that
the name of the corporation is now reserved with the Secretary of State
of Alabama under reservation No. _____ dated_____.

ACCORDINGLY, the undersigned, as such Judge of Probate, and by
virtue of the authority vested in me by law, hereby issue this
Certificate of Incorporation of Bo Matthews Center
of Excellence and attached hereto a
certified copy of the Articles of Incorporation.

Dated December 26, 20 01.

_____
Judge of Probate

Case 21-81371-CRJ7   Doc 12   Filed 08/18/21   Entered 08/18/21 15:32:00   Desc Main
Document   Page 199 of 239

STATE OF ALABAMA

COUNTY OF MADISON

I, Tommy Ragland, Judge of Probate in and for the County and State aforesaid, hereby certify that the within and foregoing is a true, correct and complete copy of Articles of Incorporation for

Bo MAtthews Center of Excellenc

as same appears of record in my office.

Given under my hand and seal of office this 16th day of December, 20 01.

Tommy Ragland
Judge of Probate

# Exhibit 2

## MINUTES OF ORGANIZATIONAL MEETING OF THE
## BOARD OF TRUSTEES OF
## BO MATTHEWS CENTER OF EXCELLENCE

The organizational meeting of the Board of Trustees of the Bo Matthews Center of Excellence was held at the principal office of the Corporation in Madison, Alabama, at 4:30 p.m. on the 16th day of December, 2001, at the call of a majority of the Trustees named in the Articles of Incorporation and pursuant to a written Waiver of Notice signed by all of the Trustees, said Waiver of Notice being attached hereto as Exhibit "A."

There were present all of the persons named in the Articles of Incorporation of the Corporation to serve as the initial Board of Trustees until their successors are elected and qualified.

William P. Matthews as Chairman of the meeting, and Bobby Patton served as Secretary. The Chairman reported that Articles of Incorporation of Bo Matthews Center of Excellence had been filed in the Office of the Judge of Probate of Madison County, Alabama, on the 16th day of December, 2001, in which said Articles all the members attending this meeting were named as original Trustees. A copy of said Articles of Incorporation was exhibited at the meeting and, upon motion duly made and seconded, the same were adopted, confirmed, and ratified by unanimous vote, and the members of the initial

Chinson\MatthewsWm Ctr for Excel Min

Board of Trustees named therein were declared to be duly elected Trustees of the Corporation.

Upon motion duly made and seconded, the following resolution was unanimously adopted:

> BE IT RESOLVED, That the by-Laws, a copy of which has been placed in the minute book, be, and the same hereby are, adopted to govern the management of the Corporation, until such time as they are revoked, altered or amended at valid meetings held for that purpose.

The Chairman stated that one of the principal items of business to come before the meeting was the election of officers of the Corporation, and, upon motion duly made and seconded, the following were nominated:

| Name | Address |
|------|---------|
| William P. Matthews | President |
| Bobby Patton | Secretary/Treasurer |

No other nominations having been made, the Chairman announced that the foregoing parties were duly elected to their respective offices, to hold office for the ensuing year, and until their successors are elected and qualified.

The Chairman stated that the next business to come before the meeting was the passage of a resolution authorizing the opening of a bank account and/or a brokerage account in the name of the Corporation and authorizing the signatures of certain officers of the Corporation on the bank account and/or brokerage account of the Corporation. Upon motion duly made,

Chinson\MatthewsWm Ctr for Excel Min

seconded and unanimously passed, the Trustees approved the following resolution:

> BE IT RESOLVED, That the officers are hereby authorized and directed to open a bank account and/or brokerage account in the name of the Corporation and that all checks upon said bank account and/or brokerage account shall be signed by the persons so designated by the Board in the form of a resolution submitted to the Bank and/or brokerage firm upon the opening of said account.

The Chairman then stated that the next business to come before the meeting was the passage of a resolution authorizing William P. Matthews and Bobby Patton to make investment decisions on behalf of the Corporation. Upon motion duly made, seconded and unanimously passed, the Trustees approved the following resolution:

> BE IT RESOLVED, that William P. Matthews and Bobby Patton are hereby authorized and directed to make investment decisions on behalf of the Corporation without the necessity of calling a meeting of the Board of Trustees and are authorized and directed to execute any and all documents, instruments or orders necessary to effectuate his or her investment decisions.

William P. Matthews stated that he would instruct his attorneys, Hinson & Hinson, P.C., to take immediate steps to have the Bo Matthews Center of Excellence qualified and recognized by the Internal Revenue Service as being an exempt

Chinson\MatthewsWm Ctr for Excel Min

organization. Upon motion duly made and seconded, the following resolution was unanimously adopted:

BE IT RESOLVED, That as President of the Bo Matthews Center of Excellence, William P. Matthews be and he hereby is authorized and directed for and on behalf of the Corporation to execute any and all instruments and documents which may be required incident to the filing of an Exemption application with the Internal Revenue Service and the procurement of the necessary exemption from that Service in order that the Corporation might enjoy a tax-free status.

There being no further business on motion duly made and seconded, the meeting was thereupon adjourned.

BOBBY PATTON
Secretary

ATTEST:

WILLIAM P. MATTHEWS
President

Chinson\MatthewsWm Ctr for Excel Min

## EXHIBIT "A"

## WAIVER OF NOTICE

We, the undersigned, being all of the Trustees of the Bo Matthews Center of Excellence named in the Articles of Incorporation, do hereby waive notice of the time, place and purpose of the Organizational Meeting of the Board of Trustees of the said Corporation, and we do hereby fix the 16ᵗʰ day of December, 2001, at 4:30 p.m., as the time and the principal office of the Corporation in Huntsville, Alabama, as the place of said meeting.

Dated this the 16ᵗʰ day of December, 2001.

_____
WILLIAM P. MATTHEWS

_____
BOBBY PATTON

_____
DONALD PATTON

(TRUSTEES)

Chinson\MatthewsWm Ctr for Excel Min

## CERTIFICATION

I, William P. Matthews, President of the Bo Matthews Center of Excellence, hereby certify that the above and foregoing constitutes a true and correct copy of the original Minutes of the Organization Meeting of the Board of Trustees of the Bo Matthews Center of Excellence, held on the 16th day of December, 2001, and that all resolutions adopted at said meeting are in full force and effect and have not been revoked or rescinded.

This the 16th day of December, 2001.

William P. Matthews
WILLIAM P. MATTHEWS
President

Chinson\MatthewsWm Ctr for Excel Min

# Exhibit 3

## BY-LAWS

### OF

## BO MATTHEWS CENTER OF EXCELLENCE

**************************

### ARTICLE I

#### Members

The Corporation shall have no members.

### ARTICLE II

#### Board of Trustees

1. Since this Corporation has no member of any class, the management of the business and affairs of the Corporation shall be vested in its Board of Trustees. The Trustees constituting the first Board of Trustees are named in the Articles of Incorporation of this Corporation. The members of the first Board of Trustees shall not serve for any particular time or period, but, on the contrary, shall continue to serve indefinitely, until their death, resignation, removal, refusal or inability to serve, under the provisions prescribed in these By-Laws.

2. The number of Trustees constituting the Board of Trustees shall be fixed by the Trustees at their annual meeting, or at any special meeting called for that purpose, and such number so fixed shall continue to be the number of Trustees until changed by the Trustees, pursuant to this

Chinson\WilliamsWm Ctr for Excell Sylaws

Section; provided, however, that no decrease in the number of Trustees shall have the effect of shortening the term of any incumbent Trustee. The number of Trustees shall never be less than three (3).

3. Whenever a vacancy occurs on the Board of Trustees as a result of the death, resignation, removal, refusal, ineligibility or inability to serve, or otherwise, of any of the Trustees under the provisions prescribed in these By-Laws, the surviving or remaining Trustees or Trustee shall have the discretion to elect and designate a successor or successors, who shall likewise hold office as members of the Board for an indefinite period of time, however, the remaining Trustee or Trustees may decide not to elect a successor Trustee. Every such successor Trustee so elected and designated from time to time shall have, possess and exercise all the powers, authority, and discretion conferred upon the first and original Board of Trustees, as fully and effectively as though such successor were named in the Articles of Incorporation as one of the members of the first Board of Trustees. Any member of the Board of Trustees may be removed as a member at any time and without assigning any cause therefor, by the affirmative vote of a majority of the remaining Trustees and written notification of such removal to such Trustee so removed, who shall, forthwith upon receipt of

Chinson\WilliamsWm Ctr for Excell Bylaws

such notice, be considered as removed from the Board of Trustees.

    4. Special meetings of the Board of Trustees may be called by or at the request of the President or any two Trustees.

    5. Unless otherwise provided in these By-Laws, notice of meetings, both regular and special, shall be given not less than two (2) days in advance of said meeting. Such notice may be by mail, telegram, telephone or may be verbal. If mailed, such notice shall be deemed to be delivered when deposited in the United States mail so addressed, with postage thereon prepaid. If notice is given by telegram, such notice shall be deemed to be delivered when the telegram is delivered to the telegraph company. Any Trustee may waive notice of any meeting. The attendance of a Trustee at a meeting shall constitute a waiver of notice of such meeting, except where a Trustee attends a meeting for the express purpose of objecting to the transaction of any business because the meeting is not lawfully called or convened. The business to be transacted, or the purpose of, any regular or special meeting of the Board of Trustees need not be specified in the notice or waiver of notice of such meeting.

    6. A majority of the Board of Trustees shall constitute a quorum for the transaction of business. The act

Chinson\WilliamsWm Ctr for Excell Bylaws

of a majority of the Trustees present at a meeting at which a quorum is present shall be the act of the Board of Trustees. If a quorum is present when a meeting is convened, the Trustees present may continue to do business, taking action by a vote of the quorum, until adjournment, notwithstanding the withdrawal of enough Trustees to leave less than a quorum, or the refusal of any Trustee present to vote.

7. Any action required or permitted to be taken at any meeting of the Board of Trustees may be taken without a meeting, if prior to such action a written consent thereto is signed by all members of the Board, and if such written consent is filed with the minutes of the proceedings of the Board of Trustees.

8. In the event that a Trustee is the donor to a charitable lead trust which pays any amount to this Corporation, then in such event the amount received by the Corporation from such Donor-Trustee established charitable lead trust shall be segregated into a separate fund and the Donor-Trustee shall have no authority in making the distribution of said amount to any charity.

Chinson\WilliamsWm Ctr for Excell Byl--

## ARTICLE III

### Officers

1. The Board of Trustees shall elect a President, a Secretary and a Treasurer, and may elect one or more Vice Presidents, and from time to time may appoint such Assistant Secretaries, Assistant Treasurers, and such other officers, agents and employees as it may deem proper. Any two (2) offices may be held by the same person, except the offices of President and Secretary.

2. The term of office of all officers shall last until their respective successors are elected and qualified. Any officer may be removed from office, either with or without cause, at any time by the affirmative vote of a majority of the members of the Board of Trustees then in office. A vacancy in any office arising from any cause may be filled for the unexpired portion of the term by the Board of Trustees.

3. The officers of the Corporation shall have the following powers and duties:

(a) The President shall be the principal executive officer of the Corporation and shall have in his or her charge the general direction and promotion of its affairs with authority to do such acts and to make such contracts as are necessary or proper to carry on the activities of the Corporation. He or she shall preside over all official

Chinson\WilliamsWm Ctr for Excell Bylaws

meetings of the Corporation, provided no one has been specifically elected to the office of Chairman of the Board, and shall also perform those duties which usually devolve upon a president of a corporation under the laws of the State of Alabama. The President, may during the absence of any officer, delegate said officer's duties to any other officer or trustee.

(b) The Vice-President, in the absence or disability of the President, shall perform the duties of the President and shall perform such other duties as may be delegated to him or her from time to time by the Board of Trustees or by the President.

(c) The Secretary shall issue notices of all meetings, shall keep the minutes of all meetings, shall have charge of the seal of the Corporation, if any, shall serve as a custodian for all corporate records, and shall make such reports and perform such duties as are incident to his or her office or which may be delegated to him or her by the President of Board of Trustees.

(d) The Treasurer shall render to the President and Board of Trustees at such times as may be requested an account of all transactions as Treasurer and of the financial condition of the Corporation. The Treasurer shall perform such other duties as are incident to the office or as may be

Chinson\WilliamsWm Ctr for Excell Bylaws

delegated to that office by the President or by the Board of Trustees.

## ARTICLE IV

### Compensation

The officers and Trustees of this Corporation may make payments for such clerical assistance and for such professional services as they deem necessary for the conduct of the affairs of the Corporation. Under no circumstances shall the Corporation make loans to officers and Trustees. The Board of Trustees may approve the payment of compensation to officers and Trustees for personal services rendered by such officer or Trustee to the Foundation.

## ARTICLE V

### Agents and Representatives

The Board of Trustees may appoint such agents and representatives of the Corporation with such powers and to perform such acts or duties on behalf of the Corporation as the Board of Trustees may see fit, so far as may be consistent with these By-Laws, to the extent authorized or permitted by law.

Chinson\WilliamsWm Ctr for Excell Bylaws

## ARTICLE VI

### Contracts

The Board of Trustees, except as otherwise provided in these By-Laws, may authorize any officer or agent to enter into any contract or execute and deliver any instrument in the name of and on behalf of the Corporation, and such authority may be general or confined to a specific instance; and unless so authorized by the Board of Trustees, no officer, agent or employee shall have any power or authority to bind the Corporation by any contract or engagement or to pledge its credit, or render it liable pecuniarily for any purpose or to any amount.

## ARTICLE VII

### Advisory Committee

The Board of Trustees may appoint at least two (2) Trustees from their number to serve on one or more advisory committees, and at any time may appoint additional members thereto. The members of any such committee shall serve as such at the pleasure of the Board of Trustees. Such advisory committees shall advise with and aid the officers of the Corporation in all matters designated by the Board of Trustees, subject to the restrictions imposed by Code of Alabama 1975, Section 10-3A-38. Each such committee may, subject to the approval of the Board of Trustees, prescribe

Chinson\WilliamsWm Ctr for Excell Bylaws

rules and regulations for the call and conduct of meetings of the committee and other matters relating to its procedure. The members of any advisory committee shall not receive any stated salary for their services as such, but may be reimbursed for any actual expenses incurred in the performance of duties on behalf of the Corporation.

## ARTICLE VIII

### Investments

The Corporation shall have the right to retain all or any part of any securities or property acquired by it in whatever manner, and to invest and reinvest any funds held by it, according to the judgment of the Board of Trustees, without being restricted to the class of investments which a trustee is or may hereafter be permitted by law to make, or any similar restriction, provided however, that no action shall be taken by or on behalf of the Corporation if such action is a prohibited transaction or would result in the denial of the tax exemption under Section 501 of the Internal Revenue Code and its Regulations as they now exist or as they may hereafter be amended.

## ARTICLE IX

### Amendments

These By-Laws shall not be altered, amended or repealed unless by and with the consent and approval of a majority of the Trustees.

## ARTICLE X

### Exempt Activities

Notwithstanding any other provision of these By-Laws, no Trustee, officer, employee or representative of this Corporation shall take any action or carry on any activity by or on behalf of the Corporation not permitted to be taken or carried on by an organization exempt under Section 501(c)(3) of the Internal Revenue Code and its Regulations as they now exist or as they may hereafter be amended, or by any organization to which contributions are deductible under Section 170(c)(2) of such Code and Regulations as they now exist or as they may hereafter be amended.

## ARTICLE XI

### Indemnification

The Corporation shall indemnify to the fullest extent authorized or permitted by the Alabama Nonprofit Corporation Act any person, and his or her heirs, executors, administrators and legal representatives, who was, is, or is

Chinson\WilliamsWm Ctr for Excell Bylaws

threatened to be made, a party to any threatened, pending or completed action, suit or proceeding (whether civil, criminal, administrative or investigative) by reason of the fact that such person is or was a Trustee or officer of the Corporation and may provide such other indemnification to trustees, officers, employees and agents by insurance, contract or otherwise as is permitted by law and authorized by the Board of Trustees.

Chinson\WilliamsWm Ctr for Excell Bylaws

## CERTIFICATION

I, William P. Matthews, President of Bo Matthews Center of Excellence, hereby certify that the above and foregoing constitutes a true and correct copy of the original By-Laws of the Bo Matthews Center of Excellence and that all provisions are in full force and effect and have not been revoked or rescinded.

This the 16th day of December, 2001.

_William P. Matthews_

WILLIAM P. MATTHEWS

Chinson\WilliamsWm Ctr for Excell Bylaws    12

# Exhibit 4

STATE OF ALABAMA )
        :
MADISON COUNTY )



## SCRIVENER'S AFFIDAVIT

Before me, the undersigned, a Notary Public in and for the State of Alabama, At Large, this day personally appeared **Christine Sampson Hinson**, who is known to me, and who, being by me first duly sworn, did depose and say on oath as follows:

"My name is **Christine Sampson Hinson** and I am a practicing attorney in Huntsville, Madison County, Alabama.

On the 26th day of December, 2001, I prepared a Deed conveying property in Madison County. Alabama from **WILLIAM P. MATTHEWS** to **BO MATTHEWS CENTER FOR EXCELLENCE**, which Deed was filed for record with the Judge of Probate of Madison County, Alabama, in Book 2001, Page 0065.

The Grantee on said Deed in incorrect and should read as follows: "**BO MATTHEWS CENTER OF EXCELLENCE**" (should be OF instead of FOR).

This affidavit is given on the 15th day of June, 2009, and its purpose is to correct of record the above-described Deed. This correction will not affect the validity of said Deed."

*Christine Sampson Hinson*
**Christine Sampson Hinson**

STATE OF ALABAMA )
        :
COUNTY OF MADISON )

I, the undersigned authority, a Notary Public in and for the said State of Alabama at Large, hereby certify that **Christine Sampson Hinson,** whose name is signed to the foregoing affidavit and who is known to me, acknowledged before me on this day that being informed of the contents of this affidavit, she executed the same voluntarily on the day same bears date.

GIVEN under my hand and official seal this the 15th day of June, 2009.

*Elizabeth Kyle*
Notary Public:
My Commission Expires:

This instrument prepared by:
Russell S. Ormstedt
Attorney At Law
2319 Market Place, Suite A
Huntsville, Alabama 35801
(256) 536-7008

70953

STATE OF ALABAMA

BOOK 1011   PAGE 0065

STATE OF ALA. MADISON CO.

COUNTY OF MADISON

QUITCLAIM DEED

01 DEC 28 PM 3:45

THIS INDENTURE, made and entered into on this 26th day of December, 2001, by and between WILLIAM P. MATTHEWS, a married man, hereinafter referred to as 'Grantor,' and The Bo Matthews Center for Excellence, an Alabama non-profit corporation, hereinafter referred to as the 'Grantee.'

WITNESSETH

That the Grantor, for and in consideration of the sum of TEN AND NO/100 DOLLARS ($10.00), to them cash in hand paid by the Grantee, and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, has this day remised, released and forever quitclaims to said Grantee, all rights, title and interest owed, claimed or held by Grantor in and to the following described real property lying and being in the County of Madison, State of Alabama, to-wit:

SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART OF THIS INSTRUMENT AS IF SET OUT FULLY HEREIN.

SUBJECT TO RESTRICTIONS AND EASEMENTS OF RECORD.

SOURCE OF TITLE: DEED BOOK 997, PAGE 1136-1138.

NO TITLE OPINION WAS REQUESTED AND NONE WAS PERFORMED. LEGAL DESCRIPTION PROVIDED BY GRANTOR.

THE ABOVE DESCRIBED PROPERTY DOES NOT CONSTITUTE THE HOMESTEAD OF THE GRANTOR.

WITNESS my hand and seal this the _26_ day of December, 2001.

William P. Matt
WILLIAM P. MATTHEWS

4.00
7.50
1.00
.25
225.00
12.00
249.75

STATE OF COLORADO )

COUNTY OF ADAMS )

I, the undersigned, a Notary Public, in and for said County and State, do hereby certify that on this day personally appeared before me WILLIAM P. MATTHEWS, whose name is signed to the foregoing instrument and who is known to me and acknowledged before me that he voluntarily executed the same on the day the same bears date.

THIS the _26th_ day of _Dec._, 2001.

Notary Public
My Commission Expires:

My Commission expires Aug. 10, 2004

This Instrument Prepared by:
Christine Sampson Hinson
Hinson & Hinson, P.C.
4660 Whitesburg Drive, Suite 203
Huntsville, Alabama 35802
(256) 382-5883

BOOK PAGE
1011 0066

EXHIBIT "A"
(Page 1)

All that part of the Southwest Quarter of the Northeast Quarter of Section 15, Township 3 South, Range 1 West of the Huntsville Meridian, Madison County, Alabama;

More particularly described as beginning at an iron pin on the North Right-of-Way of Stringfield Road, which is North 0 degrees 38 minutes East 25.0 feet and South 89 degrees 13 minutes East 215.84 feet from the center of said Section 15, Township 3 South, Range 1 West;

Thence from the Point of Beginning, leaving the North Right-of-Way of Stringfield Road, along the East Right-of-Way of Stringfield Road, North 0 degrees 38 minutes 10 seconds East 13.85 feet to an iron pin;

Thence leaving the East Right of way of Stringfield Road, along the North Right-of-Way of Stringfield Road, North 89 degrees 12 minutes 52 seconds West 112.40 feet to a concrete monument at the intersection of the North Right-of-Way of Stringfield Road with the East Right-of-Way of Pulaski Pike;

Thence along said intersection of Stringfield Road with Pulaski Pike, North 44 degrees 26 minutes 56 seconds West 84.73 feet to a concrete monument;

Thence along the East Right-of-Way of Pulaski Pike, North 1 degree 07 minutes 27 seconds East 350.43 feet to an iron pin;

Thence leaving the East Right-of-Way of Pulaski Pike, South 86 degrees 59 minutes 24 seconds East 346.50 feet to an iron pin;

Thence South 16 degrees 54 minutes 04 seconds East 269.60 feet to an iron pin;

Thence South 2 degrees 25 minutes 51 seconds West 163.50 feet to an iron pin on the North Right-of-Way of Stringfield Road;

Thence along the North Right-of-Way of Stringfield Road, North 89 degrees 13 minutes West 153.06 feet to the Point of Beginning and containing 2.86 acres, more or less.

SUBJECT TO a Sanitary Sewer Easement being particularly described as being 10 feet in width lying 5 feet on either side of a centerline, said centerline being described as follows: beginning at a point that is South 89 degrees 13 minutes East 40.0 feet, North 0 degrees 38 minutes East 455.20 feet and South 87 degrees 2 minutes East 20.74 feet from the center of Section 15, Township 3 South, Range 1 West of the Huntsville Meridian, Madison County, Alabama; thence from the point of beginning running South 0 degrees 38 minutes West 20.0 feet to a point.

EXHIBIT "A"
(Page 2)

BOOK PAGE

1011 0067

ALSO SUBJECT TO a Utility Easement being particularly
described as being 5.0 feet in width on the East property
line being described as follows: beginning at a point on
the North Right-of-Way of Stringfield Road, which is
North 0 degrees 38 minutes East 25.0 feet and South 03
degrees 13 minutes East 163.9 feet from the center of
Section 15, Township 3 South, Range 1 West of the
Huntsville Meridian, Madison County, Alabama; thence from
the point of beginning, North 2 degrees 25 minutes 51
seconds East 163.50 feet to a point; thence South 88
degrees 13 minutes East 5.0 feet to a point; thence South
3 degrees 25 minutes 51 seconds West 163.50 feet to a
point on the North Right-of-Way of Stringfield Road;
thence along the North Right-of-Way of Stringfield Road,
North 89 degrees 13 minutes West 5.0 feet to the point of
beginning.

## Less and Except:

All that part of Section 15, Township 3 South,
Range 1 West, in the City of Huntsville, Madison
County, Alabama more particularly described as
commencing at the center of said Section 15;

Thence North 84 Degrees 25 Minutes 05 Seconds
East, a distance of 217.22 feet to the true POINT
OF BEGINNING, said point is also located on the
North right-of-way of existing Stringfield Road;

Thence from the true point of beginning North 00
Degrees 51 Minutes 14 Seconds East, a distance of
5.70 feet to a point on the North right-of-way of
proposed Stringfield Road;

Thence along proposed right-of-way South 89
Degrees 02 Minutes 00 Seconds East, a distance of
151.25 feet to a point;

Thence South 02 Degrees 40 Minutes 57 Seconds
West, a distance of 5.86 feet to a point on the
existing North right-of-way for Stringfield Road;

Thence along existing North right-of-way
North 88 Degrees 58 Minutes 14 Seconds West, a
distance of 153.01 feet to the true POINT OF
BEGINNING.

Containing 883.08 square feet or 0.02 acres, more
or less.

# Exhibit 5

COMMERCIAL LEASE

STATE OF ALABAMA
COUNTY OF MADISON

THIS LEASE is made between **Bo and Barbara Mathews**, herein called Lessor and **Paulette Edwards** herein called the Lessee.

Lessee hereby offers to lease from Lessor the premises situated in the City of Huntsville, County of Madison, State of Alabama, described as **4000 Pulaski Pike** upon the following TERMS and CONDITIONS:

1. TERM AND RENT. Lessor demises the above premises for a term of **Thirty Six** months, commencing August 1st 2018, and terminating on July 31st 2021, for a total amount of One Hundred Thirty Six Thousand Eight Hundred Dollars ($136,800.00) payable in installments of Thirty Eight Hundred Dollars_
($3800) Dollars in advance on the first day of each month for that month's rental during the term of this lease.

All rental payments shall be made to Lessor at the address specified above.

A penalty or late charge of ten percent (10%) will be due if rent is unpaid for the period of ten (10) days from due date. A penalty or late charge of twenty percent (20%) will be due if rent is unpaid for a period of thirty (30) days from due date.

2. USE. Lessee shall use and occupy the premises for child care facility. The premises shall be used for no other purpose. Lessor represents that the premises may lawfully be used for such purpose.

3. CARE AND MAINTENANCE OF PREMISES. Lessee acknowledges that the premises are in good order and repair, unless otherwise indicated herein. Lessee shall, at his own expense and at all times, maintain the premises in good and safe condition including, plate glass, mirrors, windows, furnace filters, light bulbs, ballasts, and hardware. Lessee shall, at his own expense and at all times, also maintain the heating and cooling installations up to the sum of Five Hundred Dollars ($500.00) with Lessor paying the balance. Lessee agrees to change filters in the heating and cooling system in a timely manner. Lessee will use Lessor's choice of Repair Company for any work that may be required on HVAC system. Lessee shall surrender the same, at termination hereof, in as good condition as received, normal wear and tear accepted. Lessee shall be responsible for all repairs required, excepting the roof, exterior walls, structural foundations, and the parking lot, which shall be maintained by Lessor.

4. ALTERATIONS. Lessee shall not, without first obtaining the written consent of Lessor, make any alterations, additions, or improvements in, to or about the premises.

5. ORDINANCES AND STATUTES. Lessee shall comply with all statutes, ordinances and requirements of all municipal, state and federal authorities now in force, or which may hereafter be in force, pertaining to the premises, occasioned by or affecting the use thereof.

6. ASSIGNMENT AND SUBLETTING. Lessee shall not assign this lease or sublet any portion of the premises without prior written consent of the Lessor. Any such assignment or subletting without consent shall be void and, at the option of the Lessor, may terminate this lease.

7. ENTRY AND INSPECTION. Lessee shall permit Lessor or Lessor's agents to enter upon the premises at reasonable times and upon reasonable notice, for the purpose of inspecting the same, and will permit Lessor at any time within sixty (60) days prior to the expiration of this lease, to place upon the premises any usual "To Let" or "For Lease" signs, and permit persons desiring to lease the same to inspect the premises thereafter.

8. POSSESSION. If Lessor is unable to deliver possession of the premises at the commencement hereof, Lessor shall not be liable for any damage caused thereby, nor shall this lease be void or voidable, but Lessee shall not be liable for any rent until possession is delivered. Lessee may terminate this lease if possession is not delivered with in fifteen (15) days of the commencement of the term hereof.

9. INDEMNIFICATION OF LESSOR. Lessor shall not be liable for any damage or injury to Lessee, or any other person, or to any property, occurring on the demised premises or any part thereof, and Lessee agrees to hold Lessor harmless from any claims for damages, no matter how caused.

10. INSURANCE. Lessee, at his expense, shall maintain liability insurance including bodily injury and property damage insuring Lessee and Lessor with minimum coverage as follows: Not less than One Million Dollars ($1,000,000.00) for persons injured in one accident and not less than Five Hundred Thousand ($500,000.00) for injuries to one person. Lessee shall provide Lessor with a Certificate of Insurance showing Lessor as additional insured. The Certificate shall provide for a ten-day written notice to Lessor in the event of cancellation or material change of coverage. To the maximum extent permitted by insurance policies that may be owned by Lessor or Lessee, Lessee and Lessor, for the benefit of each other, waive any and all rights of subrogation that might otherwise exist.

11. EMINENT DOMAIN. If the premises or any part thereof or any estate therein, or any other part of the building materially affecting Lessee's use of the premises, shall be taken by eminent domain, this lease shall terminate on the date when title vests pursuant to such taking. The rent, and any additional rent, shall be apportioned as of the termination date, and any rent paid for any period beyond that date shall be repaid to Lessee. Lessee shall not be entitled to any part of the award for such taking or any payment in lieu thereof, but Lessee may file a claim for any taking of textures and improvements owned by Lessee.

12. DESTRUCTION OF PREMISES. In the event of a partial destruction of the premises during the term hereof, from any cause, Lessor shall forthwith repair the same, provided that such repairs can be made within sixty (60) days under existing governmental laws and regulations, but such partial destruction shall not terminate this lease, except that Lessee shall be entitled to a proportionate reduction of rent while such repairs are being made, based upon the extent to which the making of such repairs shall interfere with the possession of Lessee on the premises. If such repairs cannot be made with said sixty (60) days, Lessor, at his option, may make the same within a reasonable time, this lease continuing in effect with the rent proportionately abated as aforesaid, and in the event the Lessor shall not elect to make such repairs which cannot be made within sixty (60) days, this lease may be terminated at the option of either party. In the event that the building in which the demised premises may be situated is destroyed to an extent of not less than one-third of the replacement costs thereof, Lessor may elect to terminate this lease whether the demised premises be injured or not. A total destruction of the building in which the premise may be situated shall terminate this lease.

13. LESSOR'S REMEDIES ON DEFAULT. If Lessee defaults in the payment of rent, or any additional rent or assessments, or defaults in the performance of any of the other covenants or conditions hereof, Lessor may give Lessee notice of such default and if Lessee does not cure any such default within fifteen (15) days, after the giving of such notice (or if such other default is of such nature that it cannot be completely cured within such period, if Lessee does not commence such curing within such fifteen (15) days and thereafter proceed with reasonable diligence and in good faith to cure such default), then Lessor may terminate this lease on not less than thirty (30) days' notice to Lessee. On the date specified in such notice the term of this lease shall terminate, and Lessee shall then quit and surrender the premises to Lessor, without extinguishing Lessee's liability. If this lease shall have been so terminated by Lessor, Lessor may at any time thereafter resume possession of the premises by any lawful means and remove Lessee or other occupants and their effects. No failure to enforce any term shall be deemed a waiver.

14. SECURITY DEPOSIT. Lessor shall retain the security deposit of Thirty Eight Hundred Dollars ($3800) paid by Lessee as security for the performance of Lessee's obligations under this lease, including without limitation the surrender of possession of the premises to Lessor as herein provided. If Lessor applies any part of the deposit to cure any default of Lessee, Lessee shall on demand deposit with Lessor the amount so applied so that Lessor shall have the full deposit on hand at all time during the term of this lease.

15. ATTORNEY'S FEE. In case suit should be brought for recovery of the premises or for any sum due hereunder, or because of any act which may arise out of the possession of the premises, by either party, the prevailing party shall be entitled to all costs incurred in connection with such action, including a reasonable attorney's fee.

16. WAIVER. No failure of Lessor to enforce any term hereof shall be deemed to be a waiver.

17. NOTICES. Any notice which either party may or is required to give shall be given by mailing the same, postage prepaid, to Lessee at the premises, or Lessor at the address specified above, or at such other places as may be designated in writing by the parties from time to time.

2

18. HEIRS, ASSIGNS, SUCCESSORS. This lease is binding upon and inures to the benefit of the heirs, assigns and successors in interest to the parties.

19. KEYS/LOCKS. Lessees shall not change locks without prior written consent of Lessor. Lessor shall not withhold reasonable request. Any change of locks by Lessee shall be at Lessee's expense, including a key copy for Lessor, which shall be mailed to Lessor at the address specified above.

20. FIRE EXTINGUISHER. Lessee shall, at Lessee's expense, install and maintain Fire Extinguishers that satisfy local Fire Codes.

21. SUBORDINATION. This lease is and shall be subordinated to all existing and future liens and encumbrances against the property.

22. ENTIRE AGREEMENT. The foregoing constitutes the entire agreement between the parties and may be modified only by a writing signed by both parties. The following Exhibits, if any, have been made a part of this lease before the parties' execution hereof:

SIGNED the 29th day of MAY , 20 18

By: _William P. Mathews_ , Lessor
Bo Mathews

By: _Pam Edwards_ , Lessee

Witness: _____

Name of Principal Paulette Edwards

Tax ID Number or SSN of Principal ███████████

Driver's License Number AL ██████████

Former Business Address 2084 Washington Street

Business References and phone numbers _____

Witness: _____

Email Address justfourKidzllc@yahoo.com

Home Address 469 Boites Rd Toney 35773

Home and Cell Phone Numbers 256-919-5424

Emergency contact Bro. Edwards 205-835-1343

3

In re:                              )
BO MATTHEWS CENTER OF               )        Case No. 21-81371-CRJ-7
EXCELLENCE                          )
                                    )        Chapter 7
                                    )
                                    )

# **<u>EXHIBIT 11</u>**



AlaFile E-Notice

47-CV-2020-000096.00

Judge: CLAUDE E HUNDLEY III

To:  LOCKWOOD CHRISTOPHER LEA
     clockwood@wilmerlee.com

---

# NOTICE OF COURT ACTION

IN THE CIRCUIT COURT OF MADISON COUNTY, ALABAMA

WILLIAM P MATTHEWS V JUST 4 THE KIDS DAYCARE ET AL
47-CV-2020-000096.00

A court action was entered in the above case on 8/2/2021 4:13:36 PM

ORDER

[Filer: ]

Disposition:    GRANTED
Judge:          CEH

Notice Date:    8/2/2021 4:13:36 PM

DEBRA KIZER
CIRCUIT COURT CLERK
MADISON COUNTY, ALABAMA
MADISON COUNTY, ALABAMA
100 NORTHSIDE SQUARE
HUNTSVILLE, AL, 35801

256-532-3390



ELECTRONICALLY FILED
8/2/2021 4:13 PM
47-CV-2020-000096.00
CIRCUIT COURT OF
MADISON COUNTY, ALABAMA
DEBRA KIZER, CLERK

## IN THE CIRCUIT COURT OF MADISON COUNTY, ALABAMA

| | | |
|---|---|---|
| MATTHEWS WILLIAM P, | ) | |
| Plaintiff, | ) | |
| | ) | |
| V. | ) | Case No.: CV-2020-000096.00 |
| | ) | |
| JUST 4 THE KIDS DAYCARE, | ) | |
| EDWARDS PAULETTE, | ) | |
| Defendants. | ) | |

## ORDER

MOTION TO RESET HEARING FOR AUGUST 13, 2021 filed by MATTHEWS WILLIAM P is hereby GRANTED. The Motion for Partial Summary Judgment, Motion for Writ of Possession, and Motion for Disbursement of Funds is hereby set for Arguments on the 13th day of August, 2021 at 9:00 a.m. in Courtroom #5, 8th floor room #812.

**DONE this 2nd day of August, 2021.**

**/s/ CLAUDE E HUNDLEY III**
**CIRCUIT JUDGE**

UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION

In re:                        )
BO MATTHEWS CENTER OF   )      Case No. 21-81371-CRJ-7
EXCELLENCE                 )
                            )      Chapter 7
                            )
                            )

# <u>EXHIBIT 12</u>



AlaFile E-Notice

47-CV-2021-900838.00

Judge: D. ALAN MANN

To: LOCKWOOD CHRISTOPHER LEA
clockwood@wilmerlee.com

---

# NOTICE OF ELECTRONIC FILING

IN THE CIRCUIT COURT OF MADISON COUNTY, ALABAMA

JUST 4 THE KIDS DAYCARE ET AL V. BO MATTHEWS CENTER FOR EXCELLENCE
47-CV-2021-900838.00

The following matter was FILED on 8/11/2021 3:34:48 PM

Notice Date:        8/11/2021 3:34:48 PM

DEBRA KIZER
CIRCUIT COURT CLERK
MADISON COUNTY, ALABAMA
MADISON COUNTY, ALABAMA
100 NORTHSIDE SQUARE
HUNTSVILLE, AL, 35801

256-532-3390


ELECTRONICALLY FILED
8/11/2021 3:34 PM
47-CV-2021-900838.00
CIRCUIT COURT OF
MADISON COUNTY, ALABAMA
DEBRA KIZER, CLERK

## IN THE CIRCUIT COURT OF MADISON COUNTY, ALABAMA

| | |
|---|---|
| **JUST 4 THE KIDS DAYCARE and** | ) |
| **PAULETTE EDWARDS,** | ) |
| **Plaintiffs,** | ) |
| | ) |
| **Vs.** | ) **Case No.: CV21-900838** |
| | ) |
| **BO MATTHEWS CENTER FOR EXCELLENCE,)** | |
| **Defendant.** | ) |

### ORDER ON DEFENDANT'S MOTION TO DISMISS

This matter came before the Court on a Motion to Dismiss filed by the above-named

Defendant. The Court heard arguments on said motion on July 22, 2021. All parties were

represented by and through their respective counsel. After careful review of the pleadings, the

arguments of counsel and the applicable law this Court finds that motion is due to be and the

same is hereby GRANTED. All claims against the Defendant are hereby dismissed without

prejudice.

**DONE** and **ORDERED** on this the 11th day of August 2021.


/s/D. Alan Mann
D. Alan Mann
Circuit Court Judge

3/268562.2

UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION

In re:                                  )
BO MATTHEWS CENTER OF          )        Case No. 21-81371-CRJ-7
EXCELLENCE                             )
                                        )        Chapter 7
                                        )
                                        )

# **EXHIBIT 13**



AlaFile E-Notice

47-CV-2020-000096.00

Judge: CLAUDE E HUNDLEY III

To: LOCKWOOD CHRISTOPHER LEA
clockwood@wilmerlee.com

# NOTICE OF ELECTRONIC FILING

IN THE CIRCUIT COURT OF MADISON COUNTY, ALABAMA

WILLIAM P MATTHEWS V JUST 4 THE KIDS DAYCARE ET AL
47-CV-2020-000096.00

The following matter was FILED on 8/12/2021 9:14:49 PM

D001 JUST 4 THE KIDS DAYCARE
D002 EDWARDS PAULETTE
SUPPLEMENT
[Filer: MORRISON MARIELLEN]

Notice Date:     8/12/2021 9:14:49 PM

DEBRA KIZER
CIRCUIT COURT CLERK
MADISON COUNTY, ALABAMA
MADISON COUNTY, ALABAMA
100 NORTHSIDE SQUARE
HUNTSVILLE, AL, 35801

256-532-3390



ELECTRONICALLY FILED
8/12/2021 9:14 PM
47-CV-2020-000096.00
CIRCUIT COURT OF
MADISON COUNTY, ALABAMA
DEBRA KIZER, CLERK

IN THE CIRCUIT COURT FOR MADISON COUNTY, ALABAMA

| | |
|---|---|
| MATTHEWS, WILLIAM P., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | CASE NO. 47CV2020-000096-CEH |
| ) | |
| JUST 4 THE KIDS DAYCARE, et.al., ) | |
| ) | |
| Defendants. ) | |

## SUGGESTION OF BANKRUPTCY

COME NOW the Defendants, Just 4 the Kids Daycare (hereinafter the "Daycare") and Paulette Edwards (hereinafter "Edwards"), and submit to the Court notice of the filing of a Chapter 7 Involuntary Petition for Bankruptcy upon the business entity Bo Matthews Center of Excellence (hereinafter "BMCE"), also known as the Bo Mathews Center for Excellence.

The petition was filed into the United States Bankruptcy Court for the Northern District of Alabama, Northern Division on August 12, 2021 and has been given the case number BK-21-81371.

The filing of an involuntary chapter 7 petition imposes an automatic stay with regard to BMCE and affects all the assets of BMCE which come under the control of the Bankruptcy Court Trustee - this includes the real property at 4000 Pulaski Pike, Huntsville, AL and any money deposited with the Madison County Circuit Clerk's Office deposited in this matter by Edwards.

BMCE is not a party in this cause of action, however, Matthews has filed statements in which he states he represented BMCE as "agent" or "representative" in this matter - even as BMCE was not listed on the "commercial lease" and all payments by Edwards and the Daycare were made by check as instructed to Matthews and deposited in Matthews personal bank account.

Thus the money deposited is an asset of BMCE and subject to the stay imposed by the Bankruptcy Court.

Respectfully,

*/s/ Mari Morrison*

Mari Morrison (MOR099)
Attorney for Defendants
430 Ronny Lane
Springville, AL  35146
(205) 837-2771
marimorrison1@gmail.com

<u>CERTIFICATE OF SERVICE</u>

I hereby certify on this the 12th day of August, 2021, I have caused to be served a copy
of the foregoing on the attorneys of record for the Plaintiff using the electronic filing
system authorized by the State of Alabama Unified Judicial System, AlaFile.

*/s/ Mari Morrison*

Mari Morrison